**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| RURAL COMMUNITY WORKERS ALLIANCE and JANE DOE;<br><br>   *Plaintiffs*,<br><br>v.<br><br>SMITHFIELD FOODS, INC. AND SMITHFIELD FRESH MEATS CORP.,<br><br>   *Defendants*. | CIVIL ACTION NO: 20-cv06063-DKG |

**PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, A TEMPORARY RESTRAINING ORDER AND AN EMERGENCY HEARING ON THE SAME**

For the reasons stated in the attached Suggestions, Plaintiffs request an emergency preliminary injunction or, if Defendants refuse to appear, that the Court construe this motion as a request for a temporary restraining order and grant the requested relief. Moreover, Plaintiffs request that the Court schedule a hearing on this matter two days after Plaintiffs confirm service of the Complaint and these filings on Defendants, or at the Court's earliest opportunity.

Pursuant to this Court's April 20, 2020 Superseding General Order on Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease (COVID-19) ¶ 4, while this Court has continued non-emergent hearings, it will continue to schedule emergency matters. This is such a matter. Without the actions requested here, Defendants' Milan, Missouri slaughterhouse will incubate COVID-19, spreading it among its workers and the community. Thus, Plaintiffs request an Order from this Court directing that Defendants:

1

(1) Provide clean masks to all workers, contractors or inspectors who enter their Milan, Missouri slaughterhouse, and require that masks be worn at all times in public areas except when eating;

(2) Ensure social distancing throughout the slaughterhouse, including on the lines;

(3) Ensure that all workers at the slaughterhouse have the opportunity to wash their hands as needed without penalty;

(4) Provide tissues to workers throughout the slaughterhouse;

(5) Ensure high-touch surfaces in the slaughterhouse are disinfected with a suitable cleaning agent throughout the day;

(6) Change all relevant policies to meaningfully encourage workers who are diagnosed with, have symptoms of, or who believe they have been exposed to COVID-19 to take sick leave whether or not they have been seen by a healthcare provider including by eliminating the "perfect attendance" bonus, and eliminating accrual of "points" for COVID-related absences;

(7) Ensure that measures are in place for workers to obtain testing when necessary;

(8) Develop and implement a plan for contact tracing, in coordination with public health officials; and

(9) Set a date certain for Plaintiffs' experts to inspect the slaughterhouse to determine what other steps, beyond these, must be implemented.

For the reasons stated below, Plaintiffs satisfy all the requirements for the requested relief.

April 23, 2020                                        Respectfully submitted,

2

By: /s/ Gina Chiala

Gina Chiala          #59112
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone:     (816) 278-1092
Facsimile:     (816) 278-5785
Email:  ginachiala@jobsandfreedom.org

David Seligman*
Juno Turner*
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Telephone:     (720) 441-2236
Facsimile:     (303) 957-2289
Email: david@towardsjustice.org
Email: juno@towardsjustice.org

David S. Muraskin*
Karla Gilbride*
Stephanie K. Glaberson*
Public Justice
1620 L. St, NW, Suite 630
Washington, DC 20036
Telephone:     (202) 797-8600
Facsimile      (202) 232-7203
Email: dmuraskin@publicjustice.net
Email: kgilbride@publicjustice.net
Email: sglaberson@publicjustice.net

*Attorneys for Plaintiffs*

\* *will move to appear pro hac vice*

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| RURAL COMMUNITY WORKERS ALLIANCE and JANE DOE; | |
| *Plaintiffs*, | |
| v. | |
| SMITHFIELD FOODS, INC. AND SMITHFIELD FRESH MEATS CORP., | CIVIL ACTION NO: 20-cv-06063- |
| *Defendants*. | DKG |

**PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, A TEMPORARY RESTRAINING ORDER AND AN EMERGENCY HEARING ON THE SAME**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  FACTS ............................................................................................................... 3

   A.  The COVID-19 Pandemic Is a Global Health Crisis. ................................. 3

   B.  Slaughterhouses Are COVID-19 "Hot Spots." ......................................... 7

   C.  Smithfield Fails to Remedy Unsafe Conditions at the Milan Plant. .......... 8

III.  ARGUMENT .................................................................................................. 13

   A.  Plaintiffs Are Likely to Succeed On the Merits. ..................................... 14

     i.  *Plaintiffs Are Likely to Succeed On Their Public Nuisance Claim.* ........................... 14

     ii.  *Plaintiffs Are Likely to Succeed On Their Right to a Safe Workplace Claim.* ....... 15

   B.  Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief. ......................... 16

   C.  The Balance of Harms Tips Decidedly in Plaintiffs' Favor. ..................... 17

   D.  The Preliminary Injunction Is In the Public Interest. .............................. 19

IV.  CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**      **Pages(s)**

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) .................... 15

*Coteau Props. Co. v. Dep't of Interior*, 53 F.3d 1466 (8th Cir. 1995) .................... 19

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) .................... 14

*Grommet v. St. Louis Cty.*, 680 S.W.2d 246, 252 (Mo. App. E.D. 1984) .................... 15

*Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754 (9th Cir. 2004) .................... 17

*Harris v. Blue Cross Blue Shield of Mo.*, 995 F.2d 877 (8th Cir.1993) .................... 18

*Kai v. Ross*, 336 F.3d 650 (8th Cir. 2003) .................... 18

*Lee v. State*, 869 F. Supp. 1491 (D. Or. 1994) .................... 17

*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) .................... 19

*Mertzlufft v. Bunker Res. Recycling & Reclamation, Inc.*,
760 S.W.2d 592 (Mo. Ct. App. 1988) .................... 18

*Nemnich v. Stangler*, No. 91-4517, 1992 WL 178963 (W.D. Mo. Jan. 7, 1992) .................... 18

*Roth v. City of St. Joseph*, 147 S.W. 490 (Ks. Ct. App. 1912) .................... 15

*Sak v. City of Aurelia, Iowa*, 832 F.Supp.2d 1026 (N.D. Iowa 2011) .................... 19

*Smith v. W. Elec. Co.*,
643 S.W.2d 10 (Mo. Ct. App. 1982) .................... 16

*State ex rel. Schmitt v. Henson*, No. ED 107970
2020 WL 1862001 (Mo. Ct. App. Apr. 14, 2020) .................... 14

*Teamsters Local No. 120 v. Marathon Petroleum Co. LLC*,
No. 06-3431, 2006 WL 2971667 (D. Minn. Aug. 29, 2006) .................... 18

*Union Pac. R. Co. v. U.S. Envtl. Protection Agency*,
No. 10-235, 2010 WL 2560455 (D. Neb. June 24, 2010) .................... 19

*W.B. v. Crossroads Acad.-Cent. St.*,
No. 19-00682, 2019 WL 6257963 (W.D. Mo. Nov. 22, 2019) .................... 19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................... 14

*Wise v. Dep't of Transp.*,
    943 F.3d 1161 (8th Cir. 2019) ........................................................................... 14

**Rules**

Fed. R. Civ. P. 65 ..................................................................................................... 13

**Other Authorities**

*Missouri v. The People's Republic of China*,
    No. 20-99, Complaint, Dkt. No. 1 (E.D. Mo.) ................................................... 15

Restatement (Second) of Torts § 821B cmt. G ........................................................ 15

iv

## I.     INTRODUCTION

Weeks ago, workers at the Milan, Missouri slaughterhouse (the "Plant") operated by Defendants Smithfield Foods, Inc. and Smithfield Fresh Meats Corp. (collectively "Smithfield") placed the company on notice that it had taken inadequate steps to protect them and their communities from COVID-19 and implored Smithfield to act to prevent further spread of the virus. Even as evidence mounts that Smithfield's plants around the country are incubators for spread of the disease—to the detriment of their workers, the families of their workers, and the communities in which the plants operate—Smithfield still has not acted in Milan.

Plaintiffs here seek preliminary injunctive relief because they do not want to wait until what has happened at Smithfield facilities around the country happens in Milan. While Smithfield may benefit from speeding production lines and packing workers into tight spaces until there is an outbreak in Milan, its workers and the public will suffer tremendously. All of that waiting will mean infection, illness, and in some cases death. Plaintiffs are not asking this Court to shut down Smithfield. Food production is essential. All Plaintiffs ask is that Smithfield take necessary steps to guard against the spread of the disease. Currently, in contravention of unambiguous public health guidance and orders from the Centers for Disease Control and the State of Missouri, Smithfield allows people to enter and remain inside the Plant without masks. It has no social distancing plan in place: In addition to standing shoulder to shoulder on the production line, workers are crowded into hallways to clock in and out as fast as possible. Smithfield does not provide workers with additional breaks to wash their hands. In fact, Smithfield punishes workers if they stay home sick with symptoms. Smithfield is currently offering a $500 bonus to any worker who manages to not miss a shift. Smithfield offers no way for workers who fear they are ill to get tested or a system to perform contact tracing. Smithfield's callous disregard for the health and

1

safety of its employees, their families, and their communities will accelerate the spread of the virus in the Plant and then to others. Smithfield's conduct is a textbook example of a public nuisance and a violation of Missouri's right to a safe work environment.

Plaintiffs Jane Doe and the Rural Community Workers Alliance ("RCWA"), a membership organization that includes numerous workers at the Plant, ask this Court to protect their health and safety. Specifically, Plaintiffs respectfully request that this Court promptly order Smithfield to come into compliance with the Center for Disease Control's recommendations, which mirror the recommendations of occupational health specialist Dr. Robert Harrison, by instituting the following safety measures immediately:

(i)    Provide clean masks to all workers, inspectors, or contractors who enter the Plant, and require that they be worn at all times except when eating;

(ii)    Ensure social distancing throughout the Plant, including on the lines;

(iii)    Ensure that all workers at the Plant have the opportunity to wash their hands as needed without penalty;

(iv)    Provide tissues;

(v)    Ensure high-touch surfaces are disinfected with a suitable cleaning agent throughout the day;

(vi)    Change all relevant policies to meaningfully encourage workers who are diagnosed with, have symptoms of, or who believe they have been exposed to COVID-19 to take sick leave whether or not they have seen a healthcare provider, including by eliminating the "perfect attendance" bonus and eliminating accrual of "points" for COVID-related absences;

(vii)    Ensure that measures are in place for workers to obtain testing when necessary; and

(viii)    Develop and implement a plan for contact tracing, in coordination with public health officials.

It is likely that additional relief will be required to fully protect Plant workers and the larger community, and therefore Plaintiffs also request this Court set a date for Plaintiffs' experts to inspect the Plant to determine additional steps that should be taken. In the meantime, these bare minimum protections, all of which align with the CDC's guidance, must be put in place immediately. Without Court intervention, Smithfield will continue to ignore the threat to public health and place people and communities at risk.

## II.    FACTS

### A.  The COVID-19 Pandemic Is a Global Health Crisis.

Since February and continuing through the present, the COVID-19 pandemic has swept the United States as it swept the rest of the world. As of the writing of this motion, more than 2.5 million people worldwide have been diagnosed with COVID-19, and more than 170,000 people have died as a result.[1] In the United States, as of April 21, 2020, over 800,000 people had been diagnosed with COVID-19, and approximately 45,000 have died.[2] In Missouri, as of April 22, 2020, there are 6,137 cases and 208 deaths from the virus.[3] In recent days, more than two thousand Americans have died from the disease each day, making it the leading cause of death in the country.[4] COVID-19 is highly infectious and continues to spread rapidly. By the time this motion is read, these numbers will likely be woefully out of date.

---

[1] World Health Organization, Coronavirus Dashboard, available at https://covid19.who.int (last visited Apr. 22, 2020); Johns Hopkins Univ. & Med. Coronavirus Resource Center, COVID-19 Dashboard by the Ctr. for Sys. Sci. and Eng'g (CSSE) at Johns Hopkins Univ., World Map, available at https://coronavirus.jhu.edu/map.html (last visited April 22, 2020).

[2] Centers for Disease Control & Prevention, Cases of Coronavirus Disease (COVID-19) in the U.S., available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited April 22, 2020); Johns Hopkins Univ. & Med. Coronavirus Resource Center, COVID-19 Dashboard by the Ctr. for Sys. Sci. and Eng'g (CSSE) at Johns Hopkins Univ., U.S. Map, available at https://coronavirus.jhu.edu/us-map (last visited April 18, 2020).

[3] Missouri Dep't of Health & Senior Services, COVID-19 Outbreak, available at https://health.mo.gov/living/healthcondiseases/communicable/novel-coronavirus/results.php (last visited Apr. 22, 2020).

[4] *See* Adam K. Raymond, *The Rapid Increase of U.S. Coronavirus Deaths in One Chilling Graphic*, NY MAG.

The virus spreads quickly, efficiently, and often silently. When a person becomes infected with COVID-19, they do not become sick right away. More worrisome still, "epidemiologists have made the dismaying discovery that people start shedding the virus — potentially making others sick — in advance of symptoms."[5]

As the virus spreads, it kills. Worldwide, the "case-fatality rate"—the proportion of people infected with COVID-19 who die from it—has varied widely from country to country.[6] The United States' case fatality rate has been estimated at between 4 and 5 percent.[7] Although older individuals and individuals with preexisting conditions appear to be more likely to experience severe infections and therefore are more likely to die as a result,[8] people of all ages and health conditions have fallen ill, and there have been reports of deaths in every age group, including infants and children.[9]

The rapid spread and deadly nature of COVID-19 has forced drastic changes in nearly every aspect of daily life. Approximately 95 percent of Americans are now under some version of

(Apr. 17, 2020), https://nymag.com/intelligencer/2020/04/the-rapid-increase-of-u-s-coronavirus-deaths-in-one-graphic.html.

[5] Joel Achenbach, *Three months into the pandemic, here's how likely the coronavirus is to infect people*, WASHINGTON POST (Mar. 28, 2020), https://www.washingtonpost.com/health/three-months-into-the-pandemic-here-is-what-we-know-about-the-coronavirus/2020/03/28/6646f502-6eab-11ea-b148-e4ce3fbd85b5_story.html.

[6] Amy Harmon, *Why We Don't Know the True Death Rate for Covid-19*, N.Y. TIMES (Apr. 18, 2020) (citing observed rates varying from 2 percent (South Korea) to 13 percent (Italy)), https://www.nytimes.com/2020/04/17/us/coronavirus-death-rate.html.

[7] *Id.* (citing U.S. rate of 4.3 percent); Chris Mooney et al., *As U.S. Coronavirus Fatality Rate Rises To 5 Percent, Experts Are Still Trying To Understand How Deadly This Virus Is*, WASHINGTON POST (Apr. 17, 2020), https://www.washingtonpost.com/health/as-officials-plan-to-reopen-the-economy-a-key-unknown-remains-how-deadly-is-the-coronavirus/2020/04/17/0bd2f938-7e49-11ea-a3ee-13e1ae0a3571_story.html.

[8] Centers for Disease Control & Prevention, *People Who Are at Higher Risk for Severe Illness* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[9] Chris Mooney, et al., *Hundreds Of Young Americans Have Now Been Killed By The Coronavirus, Data Shows*, WASHINGTON POST, (Apr. 8, 2020), https://www.washingtonpost.com/health/2020/04/08/young-people-coronavirus-deaths; Audrey McNamara, *6-Week-Old Baby's Death Linked To Coronavirus, Believed To Be One Of The Youngest Fatalities*, CBS NEWS (Apr. 2, 2020), https://www.cbsnews.com/news/six-week-old-baby-dies-coronavirus-believed-to-be-youngest-fatality; Allison Quinn, *'We Should Grieve': Infant Becomes Youngest COVID-19 Death in Illinois*, THE DAILY BEAST (Mar. 28, 2020), https://www.thedailybeast.com/infant-becomes-youngest-coronavirus-death-in-illinois.

4

a stay-at-home order.[10] The Missouri Department of Health and Senior Services has placed the state under its own stay-at-home order, which directs Missourians to "avoid leaving their homes or places of residence."[11] When they must leave their homes to work or engage in other necessary activities, Missourians "should at all times practice social distancing."[12] "In accordance with the guidelines from the President and the CDC," the order states that "every person and business in the State of Missouri shall abide by social distancing requirements, including maintaining six feet (6') of space between individuals" except where an individual's "job duties require contact with other people closer than six feet (6')."[13]

For its part, the CDC has issued guidelines for businesses to keep their workers safe during the pandemic.[14] Those guidelines "strongly encourage[]" businesses to "coordinate with state and local health officials so timely and accurate information can guide appropriate responses."[15] CDC directs employers to reduce the spread of illness among their employees by "[a]ctively encourage[ing] sick employees to stay home"—regardless of whether those employees have a confirmed positive COVID-19 test.[16] The guidelines instruct employers to "[i]dentify where and how workers might be exposed to COVID-19 at work" and to follow OSHA guidance on how to protect workers from potential exposure at work.[17] They encourage employers to "[i]mplement

---

[10] Holly Secon & Aylin Woodward, *Map of US States That Have Issued Stay-At-Home Orders*, BUSINESS INSIDER (Apr. 7, 2020), https://www.businessinsider.com/us-map-stay-at-home-orders-lockdowns-2020-3.
[11] Missouri Dep't of Health & Senior Services, Stay At Home Order (Apr. 3, 2020), https://governor.mo.gov/priorities/stay-home-order.
[12] *Id.*
[13] *Id.*
[14] CDC, Interim Guidance for Businesses & Employers to Plan & Respond to Coronavirus Disease 2019 (COVID-19) (last updated Apr. 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html; Interim Guidance for Implementing Safety Practices for Critical Infrastructure Workers Who May Have Had Exposure to a Person with Suspected or Confirmed COVID-19 (last updated Apr. 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/critical-workers/implementing-safety-practices.html.
[15] Interim Guidance for Businesses & Employers to Plan & Respond to Coronavirus Disease 2019 (COVID-19), *supra* note 14.
[16] *Id.*
[17] *Id.*

flexible sick leave and supportive policies and practices," and to implement social distancing "if recommended by state and local health authorities." CDC provides social distancing "[s]trategies that business could use," including implementing flexible work hours (e.g., staggered shifts), increasing physical space between employees at the worksite, and ensuring limited face-to-face contact.[18] And CDC directs employers to maintain healthy work environments by implementing measures such as improving ventilation in the worksite, supporting "respiratory etiquette and hand hygiene for employees, customers, and worksite visitors," providing tissues, and routinely cleaning and disinfecting all frequently touched surfaces.[19] For workers who may have been exposed to COVID-19, CDC guidelines also encourage pre-screening employees (measuring the employee's temperature and assessing symptoms prior to them starting work) and regular monitoring (through which employees self-monitor under the supervision of their employer's occupational health program). The CDC also advises everyone to wear face coverings to protect themselves and others.[20]These strategies are an essential minimum standard, particularly to stop the spread of the virus in meat packing plants. Dr. Robert Harrison, a physician and clinical professor of medicine who serves as the  Chief of the Occupational Health Surveillance and Evaluation Program at the California Department of Public Health, emphasizes the importance, in slaughterhouses and other meat processing plants, of (1) encouraging workers with symptoms to stay home, including by eliminating policies that discourage sick leave; (2) developing a social distancing plan that is implemented throughout the Plant, including at workspaces and in hallways and break areas; (3)

---

[18] *Id.*
[19] *Id.*
[20] CDC, Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission (last updated Apr. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html; *see also* Interim Guidance for Implementing Safety Practices for Critical Infrastructure Workers Who May Have Had Exposure to a Person with Suspected or Confirmed COVID-19, *supra* note 14 (special recommendations for employees recommending face masks at all times in the workplace for 14 days after any potential exposures).

6

providing face coverings to all workers within the Plant; (4) developing a plan to decontaminate surfaces; (5) providing additional breaks and facilities for handwashing; and (6) developing a plan to test workers and perform contact tracing to identify those who have been in contact with workers who test positive.[21] Dr. Harrison explains that additional site-specific requirements may be necessary, but the above steps, all of which align with the CDC guidelines, are "essential."[22]

## B. Slaughterhouses Are COVID-19 "Hot Spots."

Without such intervention, slaughterhouses present ideal conditions for the spread of a respiratory virus like COVID-19. Plant workers and United States Department of Agriculture (USDA) inspectors work "shoulder-to-shoulder on slaughter lines and in processing facilities where carcasses are butchered."[23] During breaks and shift changes, Plant workers and USDA inspectors leaving their stations are packed together into small hallways.[24] Workers' lockers are not separated from one another, but instead are "literally stacked next to one another."[25] And the work of a slaughterhouse is "extremely strenuous," causing workers to "expel[] spittle and other bodily fluids, such as sweat" while they labor.[26]

In recent weeks, slaughterhouses have emerged as some of the country's greatest vectors for the COVID-19 disease. On April 21, 2020, the Chief Medical Officer for the State of Nebraska stated, "If there's one thing that might keep me up at night, it's the meat processing plants and manufacturing plants."[27] The Smithfield slaughterhouse in South Dakota became the country's leading COVID-19 "hot spot" because the workers there were required to stand shoulder-to-

---

[21] Declaration of Dr. Robert Harrison ("Harrison Decl.").
[22] *Id.* ¶ 22.
[23] Decl. of Anthony Corbo ("Corbo Decl.") ¶ 6; Declaration of Thomas Fritzsche ("Fritzsche Decl.") ¶¶ 6-8.
[24] Corbo Decl. ¶ 6.
[25] *Id.*
[26] Corbo Decl. ¶ 7; Fritzsche Decl. ¶ 10.
[27] Erin Duffy, *Meatpacking Plants Are Nebraska's Newest Battleground in war against coronavirus*, OMAHA WORLD-HERALD (Apr. 21, 2020), https://www.omaha.com/news/state_and_regional/meatpacking-plants-are-nebraskas-newest-battleground-in-war-against-coronavirus/article_cb30e2ab-099a-5458-b0ec-01c0d05fc9e9.html.

shoulder and not given Personal Protective Equipment.[28] Workers at Smithfield's Cudahy, Wisconsin plant raised concerns about spread of the virus after learning that Smithfield allowed them to continue working shoulder to shoulder despite knowing of infections among plant workers.[29] Colorado shut down a JBS beef slaughterhouse for similar conduct after 50 people tested positive for COVID-19, and two died.[30] On April 17, 2020, the Ogle County, Illinois Health Department ordered the Hormel Foods plant in Rochelle, Illinois, to close immediately due to an outbreak of the novel coronavirus.[31] Health officials say there are at least two dozen cases linked to the facility.[32]

### C. Smithfield Fails to Remedy Unsafe Conditions at the Milan Plant.

Smithfield is the largest employer in the Milan, Missouri area,[33] employing more than 1,000 workers at the Milan plant.[34] Other than Smithfield, the Milan area "does not offer many employment opportunities."[35] Smithfield's workers, many of whom live paycheck-to-paycheck, depend on their jobs at the Plant to support their families.[36]

As the COVID-19 pandemic spread, Smithfield Milan workers became alarmed at the lack of safety measures in their workplace and the backwards incentives Smithfield's policies seemed

---

[28] Caitlin Dickerson & Miriam Jordan, *South Dakota Meat Plant Is Now Country's Biggest Coronavirus Hot Spot*, N.Y. TIMES (Apr. 15, 2020), https://www.nytimes.com/2020/04/15/us/coronavirus-south-dakota-meat-plant-refugees.html.

[29] Lee Fang, *Employees Say Smithfield Plant In Wisconsin Concealed COVID-19 Infections, Pressured Them To Work Elbow To Elbow Without Protection*, THE INTERCEPT (Apr. 19, 2010), https://theintercept.com/2020/04/19/smithfield-foods-wisconsin-coronavirus.

[30] Vincent Del Giudice, *JBS To Shut Colorado Beef Plant Through April 24 On Outbreak*, BLOOMBERG (Apr. 13, 2020), https://www.bloomberg.com/news/articles/2020-04-13/jbs-colorado-beef-plant-will-close-for-a-time-governor-says.

[31] City of Rochelle, Press Release: Ogle County Health Department Orders Closure of Hormel's Rochelle Foods Plant Due to COVID-19 Outbreak (Apr. 17, 2020), https://www.cityofrochelle.net/news/city-news/ogle-county-health-department-orders-closure-of-hormel-s-rochelle-foods-plant-due-to-covid-19-outbreak.html.

[32] *Id.*

[33] Declaration of Axel Fuentes ("Fuentes Decl.") ¶ 26.

[34] *Id.* ¶ 34.

[35] *Id.* ¶ 26; Declaration of Jane Doe ("Doe Decl.") ¶ 20.

[36] Fuentes Decl. ¶ 26; Doe Decl. ¶¶ 20, 23.

8

geared to impose.[37] For instance, Smithfield employs a "points" system, whereby workers receive "points" if they miss a shift.[38] If a worker receives nine points in a year, he or she can be fired.[39] Under this system, employees are incentivized to go to work when they are feeling ill, or exhibiting symptoms of COVID-19, for fear of losing the jobs on which they and their families rely.[40]

On April 2, 2020, a group of seventy Milan employees sent a letter to management in which they alerted management to the unsafe working conditions in the Plant and asked for increased measures to prevent spread of the virus.[41] The workers described safety issues such as a lack of distance between workers, which leads to unavoidable physical contact in the cafeteria and hallways; the high speed of the line, which prevents workers from covering their faces if they need to cough or sneeze; a lack of masks and other personal protection equipment; and a sick-leave policy that penalizes employees who miss work for coronavirus symptoms.[42]

After receiving the workers' letter, Smithfield has *slowly* instituted a *few*, minimal safety measures. But those measures fall far short of meaningful protection for workers, and Smithfield's incentive system continues to work against public health goals, encouraging employees to come to work instead of prioritizing safety.[43] For instance, Smithfield did not give masks to any of its workers until April 16, 2020, two weeks after workers expressed their concerns about the lack of

---

[37] *See, e.g.*, Fuentes Decl., ¶¶ 7-8, Ex. A, at 11 ("We, the workers at the plant in Milan Missouri, [w]ant to express that we are very concerned about our health exposure by continuing to work at the plant, while the entire Country and World is in quarantine, because of the Covid-19."); Doe Decl. ¶¶ 17-19.
[38] Doe Decl. ¶ 19; *see also* Fuentes Decl., ¶ 8, Ex. A, at 11 ("Workers who are experiencing symptoms such as a coughing, sneezing, or even fever, . . . have not been allowed to go home or take a day off without being assigned negative points.").
[39] Doe Decl. ¶ 19; Fuentes Decl. ¶ 8.
[40] Fuentes Decl. ¶ 23.
[41] Madison McVan, *Milan Meat Processing Plant Workers Cite Unsafe COVID Conditions,* Missourian (Apr. 16, 2020), https://www.columbiamissourian.com/news/covid19/milan-meat-processing-plant-workers-cite-unsafe-covid-conditions/article_b2c655f4-7f2b-11ea-85e8-fb32c440c477.html; *see also* Fuentes Decl., Ex. A.
[42] Fuentes Decl. ¶ 8, Ex. A.
[43] *Id.* ¶¶ 9, 12-25; Doe Decl. ¶¶ 5-19, 21-22.

9

masks and protective equipment.[44] The only workers who received masks were those who divide a carcass (on the "cut floor"),[45] and they must use the same, dirty mask throughout the week.[46] As of April 16, 2020, workers who strip the animal down to a carcass (on the "kill floor") still had not received masks.[47] While more masks were distributed in subsequent days, Smithfield has suggested it may ask the workers to use the same, dirty mask, throughout the week.[48] In addition, members of the late-night sanitation crew are still in the building, including the cut floor, when Jane Doe and other workers report for their shift, and many of these sanitation workers are not wearing masks.[49]

Workers remain "shoulder-to-shoulder"—so close that they have "described the risk of cuts from their neighbors' knives."[50] Even those who work in packaging have described so "little space to move" that they "regularly bump into one another."[51]

Although "Smithfield has installed Plexiglass dividers between workers on some of the lines, it has "failed to take into account workers' varying heights, so the Plexiglas does not cover all workers' faces."[52] And, "rather than slowing the line as the workers requested so they could wipe [fluids] from their faces" when needed, workers report that "Smithfield has *increased* the line speed" at the Milan plant since closing its other plants.[53] Smithfield continues to instruct workers that missing even one piece of meat to clean one's face could result in punitive

---

[44] Fuentes Decl. ¶ 11; Doe Decl. ¶ 5 ("It is only in the last week that Smithfield began providing [workers on the 'cut side' of the plant] with surgical-style masks.").
[45] Fuentes Decl. ¶ 11.
[46] Doe Decl. ¶ 5; Fuentes Decl. ¶ 12.
[47] Fuentes Decl. ¶ 11; *see also* McVan, *supra* note 41.
[48] Doe Decl. ¶ 5; Fuentes Decl. ¶ 12.
[49] Doe Decl. ¶ 6; Fuentes Decl. ¶ 12.
[50] Doe Decl. ¶ 7; Fuentes Decl. ¶¶ 13-17.
[51] *Id.*
[52] Fuentes Decl. ¶ 16; Doe. Decl. ¶ 8.
[53] Fuentes Decl. ¶ 17; Doe. Decl. ¶ 7.

employment action.[54] Nor can the workers leave the line to safely clean their faces—Smithfield has not provided tissues or other materials for workers to wipe their faces, and it does not offer breaks for handwashing.[55] As Plaintiffs' experts explain, if Smithfield wanted to, it could slow the line to space workers and allow them to clean their hands and face.[56]

In plant areas off the line, "the workers remain crowded," with little opportunity to social distance.[57] Workers report being forced to "crowd[] into the hallway to 'clock in' and 'clock out.'[58] "Smithfield has started taking workers' temperatures before they enter the workplace, but the company allows a close line to form while workers wait to be checked."[59]

"Smithfield did expand the cafeteria and hang signs recommending distancing, but there still is not enough space for workers to sit six-feet apart" during their breaks.[60] Smithfield also "installed Plexiglas [dividers] down the center of the [cafeteria] tables, but has provided no protection for workers sitting side-by-side."[61]

What's more, Smithfield "continues to discourage workers from taking sick-leave" and staying home when needed, in direct contravention of CDC guidelines.[62] Smithfield has touted a program it is calling its "Responsibility Bonus" as part of its COVID-19 response.[63] Through the program, workers receive a bonus, which Smithfield claims will be paid "in recognition of an immense gratefulness for the dedication and performance" of its workers.[64] But signs posted at the

---

[54] Fuentes Decl. ¶ 17.
[55] Fuentes Decl. ¶¶ 18-19; Doe Decl. ¶¶ 10, 12.
[56] Corbo Decl. ¶ 10; Fritzsche Decl. ¶ 22.
[57] Fuentes Decl. ¶¶ 20-22; Doe Decl. ¶¶ 13-16.
[58] *Id.*
[59] Fuentes Decl. ¶ 21; Doe Decl. ¶ 16; *see also* Corbo Decl ¶ 10; Fritzsche Decl. ¶ 22 (explaining Smithfield could alter these conditions).
[60] Fuentes Decl. ¶ 22; *see also* Doe Decl. ¶ 14.
[61] *Id.*; *see also* Corbo Decl ¶ 10; Fritzsche Decl. ¶ 22 (explaining Smithfield could alter these conditions).
[62] Fuentes Decl. ¶¶ 23-24; Doe Decl. ¶¶ 17-19.
[63] *See, e.g.*, SmithfieldFoods, *Smithfield President & CEO on the Responsibility Bonus*, YOUTUBE (Apr. 6, 2020), https://www.youtube.com/watch?v=fAI7As7yMwQ&feature=youtu.be.
[64] SmithfieldFoods, *Our COVID-19 Response*, https://www.smithfieldfoods.com/ourcovid19response (last visited Apr. 22, 2020).

Plant in recent weeks make plain that the bonus is, in fact, a mechanism to ensure workers continue to come in to work at the Plant—even if they are sick.[65]



Fig. 1: Photo of Smithfield "Responsibility Bonus" Sign[66]

This sign, translated into English, reads as follows:

> Heroes come in many forms.
> #ThankAFoodWorker
>
> At Smithfield, we accept responsibility in everything we do. And we reward those who accept responsibility. As a show of our gratitude, you will receive a Responsibility Bonus of $500, paid the 15th of May 2020. To the members of our team who are crucial in our nation's response to COVID-19, thank you!
>
> ***Note: To qualify for the Responsibility Bonus, you must work all scheduled hours and not receive a single attendance point between 4/1/20 and 5/1/20***

---

[65] *See* Fuentes Decl. ¶ 24; Doe Decl. ¶¶ 17-18.
[66] Doe Decl. ¶ 18.

Some workers have been told that if they take a sick day not only will they lose the bonus, but they will also be assigned a "point" for each missed shift.[67] The only exception would be if Smithfield or a doctor orders the worker to stay home.[68] Such requirements are particularly cruel as Smithfield has not offered the workers an opportunity to be tested,[69] or performed contact tracing to identify which workers have come into contact with a sick individual and thus should be ordered to quarantine.[70]

## III.   ARGUMENT

The Court should exercise its discretion under Fed. R. Civ. P. 65 to grant Plaintiffs the preliminary relief they seek. Specifically, Plaintiffs move for a preliminary injunction directing Smithfield to immediately take the following actions: (1) Provide clean masks to all workers, contractors or inspectors who enter the Plant, and require that masks be worn at all times in public areas except when eating; (2) Ensure social distancing throughout the Plant, including on the lines; (3) Ensure that all workers at the Plant have the opportunity to wash their hands as needed without penalty; (4) Provide tissues; (5) Ensure high-touch surfaces are disinfected with a suitable cleaning agent throughout the day; (6) Change all relevant policies to meaningfully encourage workers who are diagnosed with, have symptoms of, or who believe they have been exposed to COVID-19 to take sick leave whether or not they have been seen by a healthcare provider including by eliminating the "perfect attendance" bonus and eliminating accrual of "points" for COVID-related absences; (7) Ensure that measures are in place for workers to obtain testing when necessary; and (8) Develop and implement a plan for contact tracing, in coordination with public health officials. Plaintiffs also request the Court set a date certain for Plaintiffs' experts to inspect the Plant to

---

[67] Fuentes Decl. ¶¶ 8, 23.
[68] *Id.*
[69] Fuentes Decl. ¶ 25.
[70] *See id.*; *see also* Doe Decl. ¶ 22; *accord* Corbo Decl. ¶ 10 (explaining Smithfield could offer paid sick leave).

13

determine what other steps, beyond these, which have been identified by the CDC and Dr. Harrison as bare minimum necessities, must be implemented.

As discussed in more detail below, Plaintiffs meet all of the Rule 65 criteria for preliminary injunction, because "[they are] likely to succeed on the merits, . . . [they are] likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [their] favor, and . . . an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Wise v. Dep't of Transp.*, 943 F.3d 1161, 1165 (8th Cir. 2019); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Because the requested relief requires no further factual development and because Smithfield appears unwilling to act on its own, Court intervention is both necessary and appropriate.

## A. Plaintiffs Are Likely to Succeed On the Merits.

### i. Plaintiffs Are Likely to Succeed On Their Public Nuisance Claim.

"A public nuisance is an offense against the public order and economy of the state and violates the public's right to life, health, and the use of property, while, at the same time annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community, or neighborhood, or of any considerable number of persons." *State ex rel. Schmitt v. Henson*, No. ED 107970, 2020 WL 1862001, at *4 (Mo. Ct. App. Apr. 14, 2020) (quoting *City of Greenwood v. Martin Marietta Materials, Inc.,* 299 S.W.3d 606, 616 (Mo. App. W.D. 2009)). Smithfield's failure to follow basic public health guidelines during the COVID-19 pandemic is a paradigmatic public nuisance, which endangers Plaintiffs and threatens the public health.

To succeed on their public nuisance claim, Plaintiffs must demonstrate that Smithfield's private action "interferes with community right of public safety." *Id.* at *1. (cleaned up). Courts in Missouri and elsewhere have long held that conduct by a private entity that is "disease-breeding" creates a public nuisance. *Roth v. City of St. Joseph*, 147 S.W. 490, 491 (Ks. Ct. App. 1912)

(affirming that public nuisance claim lies against city that allowed creation of a stagnant, disease-breeding pond on its property); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548-53 (2009) (second-hand smoke is a public nuisance because it can cause lung cancer and heart disease); *accord* Restatement (Second) of Torts § 821B cmt. g ("[T]he threat of communication of smallpox to a single person may be enough to constitute a public nuisance because of the possibility of an epidemic."). The Missouri Attorney General recently explained that the failure to follow established public health guidelines in response to COVID-19 amounts to a public nuisance. *Missouri v. The People's Republic of China*, No. 20-99, Complaint, Dkt. No. 1 ¶¶ 139-48 (E.D. Mo.). This is exactly what Smithfield has done in Milan and if it does not take the steps sought here, its Plant will continue to be a "disease-breeding" entity exacerbating the existing threat to the public health. *Roth*, 147 S.W. at 491.[71]

Plaintiffs will also establish that they will suffer a "special injury," "differing in kind and not merely in degree from the general injury to the public." *Grommet v. St. Louis Cty.*, 680 S.W.2d 246, 252 (Mo. App. E.D. 1984) (quoting *Lademan v. Lamb Constr. Co.*, 297 S.W. 184, 186[3, 4] (Mo.App.1927)). Although the public health will be affected by Smithfield's conduct through increased spread of COVID-19 and the associated impacts on hospitals and the health system at large, Plaintiff Doe suffers an increased risk of direct exposure to the virus because of Smithfield's refusal to take proper measures to protect Plant workers.[72] Likewise, Plaintiff RCWA will suffer the unique harms of diversion of resources and the increased risk of infection of its Executive Director and sole staff member, Axel Fuentes.[73]

### ii. Plaintiffs Are Likely to Succeed On Their Right to a Safe Workplace Claim.

---

[71] *See generally* Harrison Decl.
[72] Doe Decl. ¶¶ 24-25.
[73] Fuentes Decl. ¶¶ 28-36.

An employer in Missouri has a duty to use "all reasonable care to provide a reasonably safe workplace and protect the employee from avoidable perils." *Smith v. W. Elec. Co.*, 643 S.W.2d 10, 12-13 (Mo. Ct. App. 1982) (citing *Hightower v. Edwards*, 445 S.W.2d 273, 275 (Mo. 1969) (en banc)). Under Missouri law, courts can issue injunctive relief to enforce this right. In *Smith*, for instance, the employer breached this duty "by failing to exercise its control and assume its responsibility to eliminate the hazardous condition caused by tobacco smoke." *Id.* at 13. Therefore, the appellate court held, "an injunction would be an appropriate remedy" to address the "irreparable" "deterioration of [the] plaintiff's health," a "harm for which money damages cannot adequately compensate." *Id.* The court held that this was "particularly true where the harm has not yet resulted in full-blown disease or injury." *Id.*

Here, Smithfield is aware of a severe risk from COVID-19 to its slaughterhouse workers.[74] Smithfield's failure to take action has already allowed the disease to ravage its other plants,[75] and there is little reason to expect the outcome will be different at this Plant, particularly because workers are already showing symptoms. As in *Smith*, the requested injunction will remedy the avoidable peril faced by Plaintiff Doe and members of Plaintiff RWCA, before it results in "full-blown disease." *See Smith*, 643 S.W.2d at 13.

**B. Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief.**

As stated by Missouri Attorney General Eric Schmitt, "In Missouri, the impact of the virus is very real—thousands have been infected and many have died, families have been separated from dying loved ones, small businesses are shuttering their doors, and those living paycheck to

---

[74] Fuentes Decl. Ex. A.
[75] *See supra* notes 28 and 29.

16

paycheck are struggling to put food on their table."[76] Further, hundreds of slaughterhouse workers around the country—many of whom are Smithfield's own employees—have already contracted the virus and spread it through their workplaces and beyond, prompting the shutdowns of similar plants.[77] Workers have died.[78] Plaintiff Doe, Plant workers who are RCWA's members, and the broader Milan community face this same threat without Court intervention because there is a meaningful risk that the virus will spread, potentially infecting Plaintiff Doe and other Plant workers as well as members of the wider community.

There can be no doubt that "[d]eath constitutes an irreparable injury." *Lee v. State*, 869 F. Supp. 1491, 1501 (D. Or. 1994); *see also Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (risk of pain, infection, medical complications, and death deemed sufficient irreparable harm for granting of preliminary injunction). Likewise, "[T]he danger to plaintiffs' health, and perhaps even their lives, gives them a strong argument of irreparable injury." *Kai v. Ross*, 336 F.3d 650, 656 (8th Cir. 2003); *see also Harris v. Blue Cross Blue Shield of Mo.*, 995 F.2d 877, 879 (8th Cir. 1993) ("We entertain no question but that irreparable injury exist[s]" when the harm contemplated is "a life threatening illness."); *Mertzlufft v. Bunker Res. Recycling & Reclamation, Inc.*, 760 S.W.2d 592, 598 (Mo. Ct. App. 1988) (to wait "until residents of a community . . . became infected with a dread disease and thus suffered irreparable harm before injunctive relief was possible, [makes it] entirely possible that infectious and contagious diseases of epidemic proportions could follow.").

### C. The Balance of Harms Tips Decidedly in Plaintiffs' Favor.

---

[76] Press Release, Missouri Attorney General Schmitt Files Lawsuit Against Chinese Government (Apr. 21, 2020), https://ago.mo.gov/home/news/2020/04/21/missouri-attorney-general-schmitt-files-lawsuit-against-chinese-government; Tal Axelrod, *Missouri Becomes First State to Sue China Over Coronavirus Response*, THE HILL (Apr. 21, 2020), https://thehill.com/homenews/state-watch/493929-missouri-becomes-first-state-to-sue-china-over-coronavirus-response.

[77] *See supra* notes 308-31.

[78] *See supra* note 30.

17

Balancing the tremendous public health risks (and the significant strain on RCWA's meagre resources) against any economic loss Smithfield may incur as a result of implementing common-sense, CDC-recommended practices,[79] weighs plainly in Plaintiffs' favor. *See Teamsters Local No. 120 v. Marathon Petroleum Co. LLC*, No. 06-3431, 2006 WL 2971667, at *6 (D. Minn. Aug. 29, 2006) (balance of harms weighed in plaintiff's favor where"[t]he harm to the Plaintiff employees and their families is the risk to their health, whereas Defendants will incur only minimal financial risk."); *Nemnich v. Stangler*, No. 91-4517, 1992 WL 178963, at *3 (W.D. Mo. Jan. 7, 1992) (rejecting defendant's argument that estimated costs of over $8 million were greater than potential health consequences and holding that "the harm to the plaintiffs' life and health clearly outweighs any fiscal harm the [defendant] may suffer"). After all, the nation has already shut down the economy, closed schools and workplaces around the country, and otherwise taken unprecedented steps to prevent the very harm Smithfield continues to cause here—the continued spread of COVID-19.

To the extent Smithfield stands to experience any potential harm as a result of the prayed-for injunction, that harm is nothing more than the burden of complying with CDC guidelines to safeguard workers. On the other hand, the risk to Plaintiff Doe and other Smithfield workers and the public health if the preliminary injunction is not granted is grave. They risk infection with COVID-19, which not only places them at risk of serious illness and death, but also may result in their exposing families and communities to the disease. The Court need look no further than the outbreak stemming from Smithfield's Sioux Falls, South Dakota plant to understand the consequences of Smithfield's failure to act.[80] Where, as here, there is a "conflict between financial

---

[79] *See* Missouri Stay At Home Order, *supra* note 11 (incorporating federal guidelines and mandating social distancing).
[80] *See, e.g.*, Caitlin Dickerson & Miriam Jordan, *supra* note 28.

concerns and preventable human suffering," this Court should have "little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

### D. The Preliminary Injunction Is In the Public Interest.

Safeguarding the public health is in the public interest. *See Coteau Props. Co. v. Dep't of Interior*, 53 F.3d 1466, 1480-81 (8th Cir. 1995) (considering whether public health and safety will be impacted when evaluating the public interest factor); *W.B. v. Crossroads Acad.-Cent. St.*, No. 19-00682, 2019 WL 6257963, at *3 (W.D. Mo. Nov. 22, 2019) (concluding that safeguarding the public health is in the public interest); *Sak v. City of Aurelia, Iowa*, 832 F. Supp. 2d 1026, 1047 (N.D. Iowa 2011) (weighing public interest in health and safety against other public interests); *Union Pac. R. Co. v. U.S. Envtl. Protection Agency*, No. 10-235, 2010 WL 2560455, at *2 (D. Neb. June 24, 2010) (noting that public health, safety, and welfare are important to the public interest).

The preliminary injunctive relief Plaintiffs seek would promote public health, and thus is in the public interest. The safety measures Plaintiffs seek at the Smithfield plant are those recommended by public health officials and will serve not only to protect the individual workers inside that plant, but the community as a whole. Smithfield's Milan workers must interact with their community when they travel to and from work, shop for groceries, go to the doctor, and engage in other activities of daily life.[81] Where Smithfield's failure to provide safety measures creates the conditions for an outbreak inside the Plant, it also imposes that burden on the surrounding community. This burden consists not only of the predictable consequence of additional COVID-19 infections, but the added risk that the local health care system will become

---

[81] *See* Fuentes Decl. ¶ 34; Doe Decl. ¶ 24.

19

overloaded, and the scarce healthcare resources in the rural Milan community will be unavailable to its residents. Indeed, in Dr. Harrison's professional opinion, Smithfield has a "public health responsibility" to adopt the protective measures described in his declaration in order to control the spread of the pandemic in the community.[82]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request the Court enter a preliminary injunction awarding the relief requested, or, in the alternative, construe this motion as a request for a temporary restraining order and award the requested relief.

April 23, 2020                                  Respectfully Submitted,

By:  /s/ Gina Chiala
Gina Chiala                #59112
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone:    (816) 278-1092
Facsimile:    (816) 278-5785
Email:  ginachiala@jobsandfreedom.org

David Seligman*
Juno Turner*
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Telephone:    (720) 441-2236
Facsimile:    (303) 957-2289
Email: david@towardsjustice.org

---

[82] Harrison Decl. ¶ 21.

20

Email: juno@towardsjustice.org

David S. Muraskin*
Karla Gilbride*
Stephanie K. Glaberson*
Public Justice
1620 L. St, NW, Suite 630
Washington, DC 20036
Telephone:     (202) 797-8600
Facsimile      (202) 232-7203
Email: dmuraskin@publicjustice.net
Email: kgilbride@publicjustice.net
Email: sglaberson@publicjustice.net

*Attorneys for Plaintiffs*

* will move to appear pro hac vice

21