**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

RURAL COMMUNITY WORKERS ALLIANCE
and JANE DOE,

                  Plaintiffs,

     vs.

SMITHFIELD FOODS, INC. and SMITHFIELD
FRESH MEATS CORP.,

                  Defendants.

Case No. 5:20-cv-06063-DGK

**DEFENDANTS' SUPPORTING SUGGESTIONS IN SUPPORT OF
EMERGENCY MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY,
BASED ON PRIMARY JURISDICTION AND/OR *BURFORD* ABSTENTION**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   FACTS .......................................................................................................... 2

      A.    Smithfield and the Plant.................................................................... 2

      B.    Plaintiffs' Allegations and Request for Relief ........................................ 4

      C.    OSHA's Request for Information .......................................................... 5

      D.    OSHA's Role ...................................................................................... 5

      E.    Plaintiffs' Criticisms of OSHA ............................................................ 7

      F.    State and Local Public Health Authority Over COVID-19 ..................... 8

III.  ARGUMENT ................................................................................................ 10

      A.    The Court Should Dismiss or Stay This Action In Favor of OSHA's
            Primary Jurisdiction Over Workplace Safety. ...................................... 10

            1.    Legal Standard for Invoking Primary Jurisdiction Doctrine.................... 10

            2.    The Primary Jurisdiction Doctrine Applies Here....................... 12

      B.    This Court Should Abstain from Injecting Itself into Areas of Public
            Health Which Are Uniquely State Issues............................................. 15

            1.    Legal standard for *Burford* abstention. .................................... 15

            2.    The Court should abstain in favor of Missouri's Public Health
                  Agencies........................................................................ 16

IV.   CONCLUSION.............................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott*,
  954 F.3d 772 (5th Cir. 2020) ...................................................................................14

*Access Telecommunications v. Southwestern Bell Tel. Co.*,
  137 F.3d 605 (8th Cir. 1998) ...................................................................................10

*Alaska State Employees Association, Local 52 v. SOA*,
  3AN-20-056652CI ....................................................................................................14

*Asarco, LLC v. NL Indus.*,
  No. 11-00123-CV-SW-BP, 2013 U.S. Dist. LEXIS 43013 (W.D. Mo. Mar. 18,
  2013) ...................................................................................................................10, 11

*Baxley v. Jividen*,
  2020 WL 1802935 (W.D. Va. April 8, 2020) ..........................................................14

*Bilden v. United Equitable Ins. Co.*,
  921 F.2d 822 (8th Cir. 1990) ...................................................................................15

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943) .......................................................................................... *passim*

*Chlorine Inst., Inc. v. Soo Line R.R.*,
  792 F.3d 903 (8th Cir. 2015) ..............................................................................10, 11

*Colorado River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ..................................................................................................16

*Commonwealth of Pennsylvania v. Williams*,
  294 U.S. 176 (1935) ..................................................................................................15

*Davies v. Nat'l Coop. Refinery Ass'n*,
  963 F. Supp. 990 (D. Kan. 1998) ........................................................................18, 19

*Heartland Hosp. v. Strangler*,
  792 F.Supp. 670 (W.D. Mo. 1992) ...........................................................................16

*Jacobson v. Mass.*,
  197 U.S. 11 (1905) ....................................................................................................14

*Johnson v. Collins Entertainment Co., Inc.*,
  199 F.3d 710 (4th Cir. 1999) ...............................................................................15, 16

*Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*,
    864 F.2d 1033 (3d Cir. 1988)...........................................................16

*Melahn v. Pennock Insurance Inc.*,
    965 F.2d 1497 (8th Cir. 1992) ......................................................15

*Nader v. Allegheny Airlines*,
    426 U.S. 290 (1976) ...................................................................11

*Reiter v. Cooper*,
    507 U.S. 258 (1993)...............................................................10, 11

*Sierra Club v. City of San Antonio*,
    112 F.3d 789 (5th Cir. 1997) .......................................................17

*Sprint Spectrum L.P. v. AT&T Corp.*,
    168 F.Supp.2d 1095 (W.D. Mo. 2001) ...........................................11

*United States v. Western Pac. R.R. Co*,
    352 U.S. 59 (1956)....................................................................10

*Valentine v. Collier*,
    __ F.3d __, 2020 WL 1934431 (5th Cir. Apr. 22, 2020)...................14

*Wolfson v. Mutual Benefit Life Ins. Co.*,
    51 F.3d 141 (8th Cir. 1995) ........................................................15

**Statutes**

29 U.S.C. § 651 ...............................................................................5, 6

29 U.S.C. § 658(a) ...............................................................................7

Mo. Rev. Stat. Ann. § 192.005 ..............................................................9

Mo. Rev. Stat. Ann. § 192.290 ..............................................................8

**Regulations**

29 C.F.R. § 1904 .................................................................................6

29 C.F.R. § 1910 ...................................................................... *passim*

# I.    PRELIMINARY STATEMENT

Plaintiffs Rural Community Workers Alliance ("RCWA") and Jane Doe ("Plaintiffs") initiated this action on April 23, 2020 seeking extraordinary relief in the form of a mandatory injunction. In support, they have offered allegations that grossly misrepresent the substantial safety measures that Smithfield has implemented at its Milan, Missouri Plant (the "Plant"). It is not surprising that not a single Smithfield employee was willing to apply their name to this baseless lawsuit. Plaintiffs' request that this Court develop, monitor, and administer Smithfield's occupational health and safety program at the Plant is unprecedented and improper.

In any event, the Court never needs to reach the merits of the Complaint or consider Plaintiffs' overreaching request for injunctive relief. Rather, pursuant to the primary jurisdiction doctrine, the Court can—and should—dismiss or stay this suit in favor of the Occupational Health and Safety Administration's ("OSHA") regulatory authority over workplace safety issues and the Missouri Department of Health and Senior Services' ("MDHSS") jurisdiction over public health in Missouri. Even if the Court does not dismiss or stay the suit because OSHA has primary jurisdiction, there is an independent basis for dismissal under *Burford* abstention.

Indeed, OSHA is already in the process of exercising its jurisdiction at the Plant. On the day before Plaintiffs filed their Complaint in this case, OSHA sent Smithfield a "Rapid Response Investigation" requesting information regarding its COVID-19 work practices and infection at the Plant, giving Smithfield only seven days to respond. Smithfield is preparing its response for submission on April 29, and intends to cooperate fully with OSHA. The Court should defer to OSHA and its expertise to investigate and enforce any purported safety violations at the Plant. Indeed, on Sunday, April 26, 2020, OSHA and the Centers for Disease Control ("CDC") joined together and issued specific COVID-19 guidance for meat processing plants.

In addition to OSHA's oversight, the MDHSS has the authority to implement all appropriate and necessary measures to protect the public from the spread of COVID-19. And another layer of public health oversight—county public health administrators—provides further protection. Indeed, where food processing plants in Missouri have seen *actual* employee infections—as opposed to speculation about *future* infections—county public health administrators have worked closely with plants to protect employees and the public.

Public policy strongly supports the Court deferring to OSHA and MDHSS on these issues. Smithfield is an essential business critical to the nation's food supply. There are many other essential businesses operating throughout the country that are critical to the country's survival. Subjecting these entities to private lawsuits for injunctive relief, in which safety standards are determined piecemeal by plaintiffs and the courts, will result in inconsistent rulings and uncertainty for both employers and employees.

The workplace safety and public health concerns created by the novel coronavirus are both outside the conventional experience of judges and squarely within the technical and policy expertise of OSHA and MDHSS. The agencies are already responding to these concerns in real time, adapting as new facts emerge. That is not a role that a district court can or should take on. Plaintiffs are wrong to ask the Court to interpose itself between these agencies and essential businesses like Smithfield's Milan Plant. Considerations of institutional competency and prudence militate strongly in favor of a dismissal or stay on primary jurisdiction, or a dismissal based on *Burford* abstention, and the Court should grant Smithfield's Motion.

## II.  FACTS

### A.  Smithfield and the Plant

The named defendants in this action are Smithfield Foods, Inc. and its wholly owned subsidiary, Smithfield Fresh Meats Corp. (collectively, "Smithfield"). The Plant at issue is a meat

processing facility, which is an essential business that has lawfully continued to operate under the Governor of Missouri's stay at home order.[1]  The Plant and its operations constitute "critical infrastructure" pursuant to the guidelines issued by the U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency, which were adopted in Missouri's stay at home order.[2]

The Plant has voluntarily implemented substantial workplace safety measures in response to COVID-19, including providing personal protective equipment such as masks and face shields to all workers and persons who enter the building, social distancing both in common areas,, installing partitions between line workers, conducting temperature scans, providing multiple hand-sanitizer stations, implementing additional sanitation of workspaces and other areas, and encouraging workers to stay home when sick with pay and without penalty.  These measures will be further detailed in Smithfield's response to Plaintiffs' Motion for Preliminary Injunction/Temporary Restraining Order to be filed on April 29, 2020.

As of the date of this filing, there have been no confirmed diagnoses of COVID-19 at the Plant.[3]  Moreover, to Smithfield's knowledge, there have been no positive cases reported in Sullivan County (which surrounds the city of Milan).  A majority of counties adjacent to Sullivan

---

[1] Mo. Exec. Order (April 3, 2020), https://governor.mo.gov/priorities/stay-home-order, *see* **Exhibit 1**.
[2] *See id.* Item 2 (incorporating CISA's definition of "critical infrastructure"); U.S. CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, ADVISORY MEMORANDUM ON IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE (April 17, 2020), https://www.cisa.gov/sites/default/files/publications/Version_3.0_CISA_Guidance_on_Essential_Critical_Infrastruc ture_Workers_4.pdf, p. 8 (defining "critical infrastructure" employees to include "food manufacturer employees," such as those working in "livestock [and] poultry … slaughter facilities").
[The order references Version 2.0 of the guidance, which appears to be no longer publicly available, as it was removed from the CISA website after Version 3.0 was published.  A description of the update on CISA's website indicates the definitions regarding food processing plants remain unchanged.  *See* https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.]
[3] *See* MISSOURI DEPT. OF HEALTH & SENIOR SERVICES, COVID-19 OUTBREAK GUIDE, https://health.mo.gov/living/healthcondiseases/communicable/novel-coronavirus/results.php (last accessed April 27, 2020).

County also have zero positive cases to date, and the case counts are relatively low in the few adjacent counties that have reported positive cases.[4]

**B.**     <u>**Plaintiffs' Allegations and Request for Relief**</u>

Plaintiffs assert claims about Smithfield's safety practices as they relate to potential COVID-19 exposure and seek declaratory and injunctive relief. *See* Compl. However, Plaintiffs do not allege that there have been any positive diagnoses associated with the Plant, and as noted above, Smithfield is aware of none.

To be clear, this is not a suit for personal injury or wrongful death. RCWA does not allege that any of its members have contracted COVID-19 at the Plant or otherwise. Likewise, Jane Doe does not allege that she has tested positive for COVID-19. Indeed, Plaintiffs stipulate that they are not seeking money damages. Compl. at ¶ 16.

Plaintiffs seek a declaration that "Smithfield's failure to implement appropriate worker protections during the COVID-19 crisis constitutes a public nuisance under Missouri law and a violation of the right to a safe work place under Missouri law." Compl. at ¶ 123. However, the primary relief sought by Plaintiffs is a Court Order, in the form of an injunction, requiring Smithfield to adopt a list of work practices, many of which are vague and ill-defined, such as "providing sufficient personal protective equipment" and "creating and implementing a social distancing plan for the Plant" and "creating and implementing a protocol to clean surfaces." Complaint at ¶ 123. Plaintiffs also request that the Court require Smithfield to allow Plaintiffs' experts to inspect the plant to identify additional precautions that Smithfield should take. *Id.* at ¶ 123(viii). Smithfield will demonstrate in its response to Plaintiffs' Motion for Preliminary

---

[4] Compare the number of positive cases in neighboring counties (Adair - 12, Livingston - 2, Linn - 5, and Macon - 2) with other significant outbreak locations in the state (St. Louis County - 2,897, Kansas City - 500, Greene County - 83). *Id.*

Case 5:20-cv-06063-DGK    Document 29    Filed 04/27/20    Page 8 of 25

Injunction that it has already implemented all of the safety measures for which Plaintiffs' seek injunctive relief.

**C.**    <u>**OSHA's Request for Information**</u>

On the day before this case was filed, Smithfield received a request for information from OSHA regarding its COVID-19 safety practices at the Plant. *See* **Exhibit 2**. OSHA has directed Smithfield to respond to the request for information by Wednesday, April 29, 2020. *Id.* Smithfield intends to cooperate fully with OSHA in this matter.

**D.**    <u>**OSHA's Role**</u>

The Occupational Safety and Health Act, 29 U.S.C. §§ 651, *et. seq.* (the "Act"), was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). The Act authorizes "the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." *Id.* at § 651(b)(3).

OSHA is the federal agency charged with administering the Act. OSHA provides a procedure for an employee who is concerned about workplace safety to file a confidential complaint requesting that OSHA initiate an investigation into the employer's work practices.[5]

The Act provides for "an effective enforcement program." *Id.* at § 651(b)(10). The Act authorizes OSHA to inspect or investigate any place of employment in order to carry out the purposes of the Act. *Id.* at § 657. OSHA may issue a citation to an employer for any violation of the Act, including the General Duty Clause, which requires an employer to furnish "a place of employment which [is] free from recognized hazards that are causing or are likely to cause death

---

[5] *See* https://www.osha.gov/workers/file_complaint.html

or serious harm." *Id.* at § 658. Any such citation "shall fix a reasonable time for the abatement of the violation." *Id.* The Act provides for additional enforcement mechanisms if an employer does not correct a violation for which a citation has been issued. *Id.* at § 659. The Act further provides for penalties for violations and/or failure to abate. *Id.* at § 666.

The Act specifically includes procedures to address an imminent danger. *Id.* at § 662. The Act permits the Secretary of Labor to petition the court

> to restrain any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by [the Act].

*Id.* The Act authorizes an employee to file a writ of mandamus to compel the Secretary to seek such an order if the employee believes that the Secretary "arbitrarily or capriciously fails to seek relief." *Id.*[6] In such a case, OSHA is directly involved, and the court is not acting without the agency's participation.

OSHA has published "Guidance on Preparing Workplaces for COVID-19," which makes clear that the agency will use the General Duty Clause to enforce any unsafe conditions relating to COVID-19. **Exhibit 3** at 4. OSHA's General Duty Clause provides that "employers are required to provide their employees with a workplace free of recognized hazards likely to cause death or serious physical harm." *Id.* OSHA has also issued Interim Enforcement Guidance for Coronavirus Disease 2018 (issued April 13, 2020), which identifies applicable standards that may apply to COVID-19.[7] *See* **Exhibit 4.** On Sunday, April 26, 2020, the CDC and OSHA jointly issued Interim Guidance ***specific*** to the meat processing industry. *See* **Exhibit 5**.

---

[6] Plaintiffs' Opposition, which purports to provide a timeline of OSHA action, ignores these emergency procedures. Opposition at 3.
[7] These include the following:
    29 CFR § 1904, Recording and Reporting Occupational Injuries and Illness;

E.     **Plaintiffs' Criticisms of OSHA**

In Plaintiffs' Opposition to Letter Request for Extension of Time to Respond to Plaintiffs' Emergency Motion for a Preliminary Injunction (Doc. 19), Plaintiffs make several unfounded criticisms of OSHA and its response to COVID-19, to which Smithfield briefly responds below.

- Plaintiffs contend that "OSHA is hardly performing any onsite inspections," Opposition at 2-3. However, Plaintiffs do not provide any support for this statement. Whether true or not, OSHA continues to pursue its mission and is conducting aggressive investigations using electronic means and demands for information, as is evidenced by its request to Smithfield regarding the Milan Plant.

- Plaintiffs suggest that OSHA is not investigating meat processing plants. Opposition at 3. This is a red herring. Whatever OSHA's general policy is with respect to meat processing plants, it has inserted itself into safety issues at Smithfield's Milan Plant. Moreover, just yesterday, OSHA and CDC issued joint guidance regarding COVID-19 safety issues directed at meat processing facilities.

- Plaintiffs contend that OSHA may only issue a citation to "abate[]" a violation after an inspection. 29 U.S.C. § 658(a). Opposition at 3. This is patently incorrect. OSHA may seek an immediate injunction under its emergency powers, as discussed above.

---

29 CFR § 1910.132, General Requirements [Personal Protective Equipment]
29 CFR § 1910.133, Eye and Face Protection
29 CFR § 1910.134, Respiratory Protection
29 CFR § 1910.141, Sanitation
29 CFR § 1910.145, Specifications for Accident Prevention Signs and Tags
29 CFR § 1910.1020, Access to Employee Exposure and Medical Records
29 CFR § 1910.1030, Bloodborne Pathogens

- Plaintiffs contend that "even if their claims were not emergent, the wait for OSHA to act would likely be years." Opposition at 3. Again, this is incorrect. Plaintiffs cite to statutes of limitations (6 months for OSHA to issue a citation) and employer response times (15 days), which are outer limits. Moreover, Plaintiffs assume an appeals process—a process that is available in the courts is well.

F.    **State and Local Public Health Authority Over COVID-19**

While OSHA is responsible for *workplace* safety, Missouri state and local government has a corresponding responsibility for *public* safety. Missouri, like other states around the country, has implemented statewide policies to address the threat of COVID-19 exposure and transmission.

Governor Parson, through the Missouri Department of Health and Senior Services ("MDHSS"), issued a "stay-at-home" order on April 3, 2020.[8] The order includes general COVID-19 safety requirements and guidelines pertaining to individuals, as well as the operations of both essential and non-essential businesses.[9] The Governor assigned responsibility for implementing and enforcing specific COVID-19 safety measures to "all local and state health authorities." Mo. Rev. Stat. Ann. § 192.290.[10]

MDHSS continues to fulfill this responsibility, as it has issued dozens of guidance statements[11] containing specific COVID-19 safety measures, including several statements pertaining specifically to workplace safety.[12] Additionally, MDHSS and local health agencies

---

[8] Mo. Exec. Order (April 3, 2020), https://governor.mo.gov/priorities/stay-home-order, *see* **Exhibit 1**.
[9] *See id.*, Items 1-3.
[10] *See id.*, p. 2.
[11] *See* MDHSS, HEALTH ALERTS, ADVISORIES & UPDATES, https://health.mo.gov/emergencies/ert/alertsadvisories/index.php (last accessed April 26, 2020)
[12] *See, e.g.,* MDHSS, INTERIM GUIDANCE FOR IMPLEMENTING SAFETY PRACTICES FOR CRITICAL INFRASTRUCTURE WORKERS, https://health.mo.gov/emergencies/ert/ alertsadvisories/pdf/update 4920.pdf (last accessed April 26, 2020); MDHSS, COVID-19 AND RETURN TO WORK MESSAGING - EXPANDED GUIDANCE FOR CRITICAL INFRASTRUCTURE PERSONNEL INVOLVED IN THE PROVISION OF DIRECT CLIENT CARE, https://health.mo.gov/emergencies/ert/alertsadvisories/pdf/guidance41720.pdf (last accessed April 26, 2020).

have worked closely with a number of private businesses to monitor and develop their COVID-19 safety measures.[13]  MDHSS has also worked closely with federal agencies in responding to the virus,[14] and the Center for Disease Control has made itself available to assist state and local agencies in their response to health emergencies such as COVID-19.[15]

Missouri's COVID-19 response led by state and local agencies is consistent with—and in fact required by—Missouri law.  All "public health functions and programs" in Missouri must be supervised and managed by the MDHSS.  Mo. Rev. Stat. Ann. § 192.005.  Further, Missouri regulations specifically provide that the Director of MDHSS must use "the legal means necessary to control … any disease or condition listed in 19 Mo. CSR 20-20.020 which is a threat to the public health."  19 Mo. C.S.R. 20-20.040.  Listed diseases and conditions include "[o]utbreaks (including nosocomial) or epidemics of any illness, disease, or condition that may be of public health concern."  19 Mo. C.S.R. 20-20.020. That provision undoubtedly covers COVID-19.

Under MDHSS regulations, upon report of an infectious disease under Section 20-20.020, both the Director and "local health authorit[ies]" have a duty to take appropriate measures to lessen the effect of the disease:

---

[13] *See, e.g.*, JEFFERSON COUNTY HEALTH DEPARTMENT BLOG, "Jefferson County Health Department Reports COVID-19 Outbreak At Festus Manor Care Center," (April 17, 2020) http://www.jeffcohealth.org/blog/2020/4/17/jefferson-county-health-department-reports-covid-19-outbreak-at-festus-manor-care-center (noting that a nursing facility is "working closely with Jefferson County Health Department to contain the virus"); "Coronavirus Latest," KMOV4 News, (April 8, 2020) https://www.kmov.com/coronavirus-covid-latest-info-in-st-louis/article_f35c5f16-7038-11ea-9c06-f30dcb4bc9eb.html (noting that a hospital "is continuous contact with St. Charles Health Department so that they can notify individuals who may have been exposed during this time and determine a proper course of action").
[14] *See, e.g.*, Office of the Governor Press Release, "Governor Parson Gives Updates On Missouri National Guard, Department of Economic Development Efforts to Assist with COVID-19 Response," https://governor.mo.gov/press-releases/archive/governor-parson-gives-updates-missouri-national-guard-department-economic  (Mar. 31, 2020); Office of the Governor Press Release; MDHSS Press Release, "DHSS Director Williams meets at White House to discuss federal, state and local health officials' strategic alignment on COVID-19," https://health.mo.gov/news/newsitem/uuid/ffc9eb47-c189-4cc7-8a24-6130a710dbb3/dhss-director-williams-meets-at-white-house-to-discuss-federal-state-and-local-health-officials-strategic-alignment-on-covid-19 (Feb. 27, 2020).
[15] U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION, "CDC Support to Health Officials," https://www.cdc.gov/publichealthgateway/healthdepartmentresources/health-official-support.html (last accessed April 26, 2020) (noting states' 10th Amendment police powers to respond to health emergencies, and offering various means of assistance aimed to helping states to implement those powers).

-9-

(A) Inspect any premises that they have reasonable grounds to believe are in a condition conducive to the spread of the disease; . . .

(E) Establish and maintain quarantine, isolation or other measures as required;…

(G) Establish appropriate control measures which may include isolation, quarantine, disinfection, immunization, closure of establishment, notification to the public of the risk or potential risk of the disease and such information required to avoid or appropriately respond to the exposure, the creation and enforcement of adequate orders to prevent the spread of the disease and other measures considered by the department and/or local health authority as appropriate disease control measures based upon the disease, the patient's circumstances, the type of facility available, and any other available information related to the patient and the disease or infection.

19 Mo. C.S.R. 20-20.040.

### III.    ARGUMENT

**A.    The Court Should Dismiss or Stay This Action In Favor of OSHA's Primary Jurisdiction Over Workplace Safety.**

#### 1.    Legal Standard for Invoking Primary Jurisdiction Doctrine

The doctrine of primary jurisdiction applies to claims "properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). It is a "common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecommunications v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citations omitted). The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R.R. Co,* 352 U.S. 59, 63 (1956).

There is no set formula for when the doctrine applies, but "[i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)); *Asarco, LLC v. NL Indus.*, No. 11-00123-CV-SW-BP, 2013 U.S. Dist. LEXIS 43013,

*9 (W.D. Mo. Mar. 18, 2013). The two primary reasons for applying the primary jurisdiction doctrine are: (1) "to obtain the benefit of the agency's expertise and experience"; and (2) "to promote uniformity and consistency within the particular field of regulation." *Sprint Spectrum L.P. v. AT&T Corp.*, 168 F.Supp.2d 1095, 1097-98 (W.D. Mo. 2001) (citations omitted).

The doctrine of primary jurisdiction may be applied even where claims arise under state law. For example, in *Sprint Sprectrum L.P.*, the plaintiff asserted state law claims for implied contract and quantum meruit. 168 F.Supp.2d at 1099. Nevertheless, the court stayed the case in favor of an FCC proceeding because the outcome turned on the "reasonableness" of Sprint's rates, "a fact that must be proven and one which the FCC is in a better position than the Court to evaluate." *Id.* at 1099-1100; *see also Nader v. Allegheny Airlines*, 426 U.S. 290, 296-97 (1976) (observing that the D.C. Court of Appeals determined that the viability of plaintiff's common-law fraudulent misrepresentation claim would be affected by agency determination).[16]

Moreover, as the cases cited herein demonstrate, there need not be an existing agency proceeding for the court to invoke the doctrine of primary jurisdiction.[17] However, the fact that a collateral agency action is already underway weighs in favor of the court deferring to the agency process. *See Asarco*, 2013 U.S. Dist. 43013 at *14-19.

In applying the primary jurisdiction doctrine, the court has discretion whether to dismiss or stay the lawsuit pending the agency determination. *Chlorine Institute*, 792 F.3d at 913 (citing *Reiter*, 507 U.S. at 268-69). Generally, dismissal is appropriate where resolution of the deferred

---

[16] Plaintiffs' Opposition brief incorrectly argues that the primary jurisdiction doctrine cannot be applied to state law claims. Opposition at 3-4.

[17] Plaintiffs' Opposition suggests that primary jurisdiction may only be applied where there is an *existing* agency proceeding. Opposition at 2. However, the case cited, *Curran v. Bayer Healthcare*, does not stand for this proposition. It merely indicates that defendant in that case failed to identify any such proceeding. Moreover, the case on which *Curran* relies focused on whether such a proceeding is available—not whether it has already been initiated. Here, Plaintiffs have available relief through OSHA's complaint process and emergency powers.

issue will likely dispose of the entire case. *See id*. However, the Court may choose to stay the matter while the agency action proceeds. *See id*.

## 2. The Primary Jurisdiction Doctrine Applies Here.

This is a quintessential case for application of the primary jurisdiction doctrine. The issues presented by Plaintiffs' Complaint relate to workplace safety. Plaintiffs seek only declaratory and injunctive relief. Specifically, they seek a Court order requiring Smithfield to adopt a list of work practices identified by Plaintiffs to protect against the spread of COVID-19. But there is a federal agency, OSHA, with special expertise in this area. Moreover, OSHA is actively involved in investigating and enforcing COVID-19 safe work practices throughout the country. Indeed, OSHA has already contacted Smithfield using a "Rapid Response Investigation" to obtain information regarding its COVID-19 safety practices at the Plant, and Smithfield is cooperating with OSHA. The Court should defer to OSHA as to whether Smithfield's existing safety practices are sufficient to protect employee health, or whether additional measures should be implemented.[18]

Plaintiffs' request for injunctive relief implicates several specific OSHA regulations. The table below highlights <u>some</u> of the specific OSHA standards at issue:

---

[18] Plaintiffs' reference the OSHA savings clause in their Opposition. Opposition at 4. However, the savings clause relates to preemption—not primary jurisdiction. Smithfield will address the issue of OSHA preemption in its Opposition to Plaintiffs' Motion for Preliminary Injunction/Temporary Restraining Order.

| **Relief Requested in Complaint** | **OSHA Standard** |
|---|---|
| Order Smithfield to provide "sufficient personal protective equipment" Compl. ¶ 123(c)(i). | General Personal Protective Equipment (PPE), 29 CFR 1910.132<br><br>1910.132(d)<br>*Hazard assessment and equipment selection*.<br>1910.132(d)(1)<br>The employer shall assess the workplace to determine if hazards necessitate the use of personal protective equipment (PPE). If such hazards are present, or likely to be present, the employer shall:<br>1910.132(d)(1)(i)<br>Select and require the use of PPE that will protect the affected employee; |
| Order Smithfield to "create[] and implement[] a social distancing plan" Compl. ¶ 123(c)(ii). | Bloodborne Pathogens, 29 CFR 1910.1030 (which OSHA has stated provides guidance for purposes of COVID-19 safety)<br><br>1910.1030(d)(2)<br>*Engineering and Work Practice Controls*.<br>1910.1030(d)(2)(i)<br>Engineering and work practice controls shall be used to eliminate or minimize employee exposure. |
| Order Smithfield to " create[] and implement[] a protocol to clean surfaces" Compl. ¶ 123(c)(v). | Sanitation, 29 CFR 1910.141:<br><br>1910.141(a)(3)(i)<br>All places of employment shall be kept clean to the extent that the nature of the work allows. |
| Order Smithfield to "provide[] tissues"[19] Compl. ¶ 123(c)(iv). | Medical Services and First Aid, 29 CFR 1910.151<br><br>1910.151(b)<br>Adequate first aid supplies shall be readily available. |

OSHA is in the best position to assess Smithfield's COVID-19 work practices—not the Court in the first instance. Moreover, deferring to OSHA will promote uniformity, which is critical in these unprecedented times. Essential businesses that continue to operate to provide the public

---

[19] For obvious reasons, the United States Department of Agriculture would not allow production line workers to have tissues while working on the line.

and the government critical products and services should not be subject to piecemeal and inconsistent safety requirements imposed by private plaintiffs and courts.

The relief requested by Plaintiffs is truly unprecedented. Plaintiffs are asking this Court to develop, monitor, and administer Smithfield's occupational health and safety program at the Plant. Plaintiffs have appointed themselves and their "experts" the role of inspecting the Plant and making determinations about what safety procedures must be implemented. The Court is then expected to take their recommendations and fashion a ***mandatory*** injunction that will require Smithfield to implement a specific safety program, which the Court presumably will police over the course of the pandemic.

Smithfield is not aware of a single case where a court commandeered an employer's occupational safety and health program in such a manner, and Plaintiffs have cited none. Indeed, courts have refused such invitations—even in the face of the COVID-19 pandemic. For example, in *Alaska State Employees Association, Local 52 v. SOA*, 3AN-20-056652CI, the Union representing the state employees of Alaska filed suit against the state for alleged violation of the duty to provide a safe place to work and seeking injunctive relief to require the state to implement work practices to protect the employees from COVID-19. The court denied the injunction and declined to insert itself in the state's determination of how to best protect its employees and continue to provide essential services. *See* Order Regarding ASEA's Motion for a Temporary Restraining Order and Preliminary Injunction, attached as **Exhibit 6**. Courts have denied similar requests for injunctive relief that would require the court to oversee safety protocols at prisons. *Baxley v. Jividen*, 2020 WL 1802935 (W.D. Va. April 8, 2020).[20] The Court should likewise

---

[20] In *Valentine v. Collier*, __ F.3d __, 2020 WL 1934431 (5th Cir. Apr. 22, 2020), the district court granted injunctive relief related to the state prison system's response to COVID-19, but the Court of Appeals stayed the injunction pending appeal. The Court noted that the prison system's "ability to continue to adjust [their] policies [would be]

decline Plaintiffs' invitation here, and defer workplace safety issues to OSHA and its expertise, working in conjunction with the Plant.

**B.**    **This Court Should Abstain from Injecting Itself into Areas of Public Health Which Are Uniquely State Issues.**

 1.    **Legal standard for _Burford_ abstention.**

Federal courts "'should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'" *Burford v. Sun Oil Co.*, 319 U.S. 315, 334-35 (1943) (Douglas, J., concurring) (quoting *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935)); *see Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 720 (4th Cir. 1999) (holding that federal court abstention is required when states are protecting their residents' health, safety, and welfare, and "different states can arrive at different answers based on their different experiences").

A federal court may abstain from jurisdiction under the *Burford* abstention doctrine when (1) "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; and (2) "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Wolfson v. Mutual Benefit Life Ins. Co.*, 51 F.3d 141, 144 (8th Cir. 1995); *Melahn v. Pennock Insurance Inc.*, 965 F.2d 1497, 1506 (8th Cir. 1992) ("*Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of

---

significantly hampered by the preliminary injunction, which locks in place a set of policies for a crisis that defies fixed approaches." *Id*. (citing *Jacobson v. Mass*., 197 U.S. 11, 28-29 (1905); *In re Abbott*, 954 F.3d 772, 791 (5th Cir. 2020)).

complicated state laws") (quoting *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 825-26 (8th Cir. 1990)).

The application of the *Burford* doctrine does not require that a state authority have already intervened with respect to the specific matter. *See generally Johnson*. Rather, it is enough that a plaintiff may seek redress in a state court, where questions of local policy related to regulation and enforcement should be decided. *See id*. at 716 (noting that "[t]he state courts are intimately involved in [the regulatory] scheme through the adjudication of private actions and the review of administrative decisions"); *see also Heartland Hosp. v. Strangler*, 792 F.Supp. 670, 672 (W.D. Mo. 1992) ("*Burford* abstention is necessary when federal review would likely be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern'" (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976))).

Abstention is especially appropriate when the issue to be decided "lies at the heart of the state's police power" because "[f]ormulations of that power underscore the state's paramount interest in the health, welfare, safety, and morals of its citizens." *See Johnson*, 199 F.3d at 720. Otherwise, "the federal courts might adjudicate all kinds of disputes involving the most sensitive questions of state law and policy that arrive at their door . . . . This would in time endanger the independence of state policy at the core of state police power and cause friction between the federal and state systems." *Id*.

2.     **The Court should abstain in favor of Missouri's Public Health Agencies.**

The Court should exercise its discretion to abstain in this case pursuant to the *Burford* abstention doctrine. Plaintiffs are seeking to serve as private attorneys general to enforce the state of Missouri's public health law. A federal court should not insert itself into the state's public policy regarding the protection of its citizens from COVID-19 exposure and transmission, particularly when there is a substantial risk that the federal court would decide the case differently

-16-

than the state. *See Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1046 (3d Cir. 1988) (abstaining because "the risk is not insubstantial" that state agencies "would adopt a different interpretation than did the district court"). Rather, this matter should be handled by state and local public health agencies.

There is no question that the State of Missouri is already actively involved in protecting the public from COVID-19 exposure and transmission. The Governor has issued a "stay-at-home" order for this express purpose, but made the decision to permit businesses such as the Plant, which are essential to the State and nation's food supply, to continue to operate. The order specifically provided that essential businesses need not require six feet between individuals if the workers' "job duties require contact with other people closer than six feet." The injunction Plaintiffs seek requiring Plant employees to remain more than six feet apart would directly contradict the Governor's order. That is improper: "The purpose of *Burford* abstention is to discourage such federal court second-guessing of state regulatory matters." *Sierra Club v. City of San Antonio*, 112 F.3d 789, 796 (5th Cir. 1997) (vacating preliminary injunction because the district court should have abstained under *Burford*).

Moreover, the Governor assigned responsibility for implementing and enforcing specific COVID-19 safety measures to Missouri's local and state health authorities. MDHSS has embraced this responsibility, and both MDHSS and local health agencies have worked closely with a number of private businesses to monitor and develop their COVID-19 safety response. MDHSS has also worked closely with federal agencies in responding to the virus, and has the ability to invite the Centers for Disease Control to assist with state and local response as needed.

Missouri law specifically vests authority over public health matters with MDHSS, and *requires* MDHSS to use "the legal means necessary to control" a disease such as COVID-19,

"which is a threat to the public health."  19 Mo. C.S.R. 20-20.040.  Under state law, public health authorities have the duty and authority to inspect premises suspected of spreading disease, establish and maintain quarantines, and implement appropriate control measures to prevent the spread of disease.  *Id.*  Public health agencies throughout Missouri have acted on these duties and responsibilities, and there is no reason to believe they would not also do so if alerted to any threat to public health associated with the Plant.

It is entirely improper for this Court to assume responsibility for Missouri's public health law.  Plaintiffs have not asserted a federal law claim, and the federal court has no overriding interest in this matter.  If there are truly public health concerns related to the Plant (and Smithfield vehemently disputes that), then addressing those issues is a matter of state policy that can be addressed by MDHSS and the local public health authorities.  This is not the proper forum to adjudicate Missouri's public health policy.

Plaintiffs cite to examples of Smithfield and other meat processing plants being shut down in other jurisdictions.  However, in none of these examples was a state or federal court involved.  Rather, in some instances state and local public health agencies made the decision to order the plant to close pending further investigation, and in others, the plants voluntarily closed in response to requests from state government or for other reasons (e.g., Smithfield's Cudahy, Wisconsin facility that Plaintiffs cite closed because of supply chain issues – not a COVID-19 outbreak in the plant). These examples do not support the federal court's involvement in this matter.  To the contrary, they militate against it.  The Court should therefore dismiss this action pursuant to the *Burford* abstention doctrine.

## IV.    CONCLUSION

A stay or dismissal is proper here.  The principle of comity underlying primary jurisdiction and *Burford* abstention takes on heightened importance – and militates even more heavily in favor

of invoking the doctrines – where the possibility exists that the relief in the private action might conflict with the agency action. *Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997 (D. Kan. 1998) (abstaining from exercising RCRA jurisdiction in favor of the agency "charged by state law with responsibility for … protecting human health and the environment" to avoid "prospect of conflicting directives from this court as to how the contamination should be remedied"). [21]

It is not hard to imagine the chaos that would flow if courts take over the occupational health and safety programs of essential businesses around the country and appoint themselves keepers of the public health. An employee who claims an unsafe workplace already can file an OSHA complaint or seek the assistance of public health officials. If this additional avenue of court oversight of safety were opened businesses, already strapped to survive during the pandemic, would be faced with increased financial costs of litigation. A company that operates in multiple jurisdictions, such as Smithfield, would have no expectation of uniformity and could even be in a position to have inconsistent legal obligations as between OSHA and a decision from the court.

None of this is necessary. OSHA has broad powers to investigate and enforce workplace safety, and MDHSS has the necessary police power to regulate plant operation and ensure public health. This Court need not—and should not—wade into this area, and put itself in the position of policing workplace safety and directing state public health policy at the behest of a private plaintiff. The Court should grant Smithfield's Motion, and dismiss or stay this action in favor of the authority and expertise of OSHA and MDHSS.

**SMITHFIELD FOODS, INC. and
SMITHFIELD FRESH MEATS CORP.**

---

[21] The *Davies* court based its decision to abstain on both primary jurisdiction and the *Burford* abstention doctrine.

By: _/s/ Jean Paul Bradshaw II_
    Jean Paul Bradshaw II (#31800)
    Mara Cohara (#51051)
    **Lathrop GPM LLP**
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108
    Telephone:  (816) 460-5507
    Facsimile:  (816) 292-2001
    jeanpaul.bradshaw@lathropgpm.com
    mara.cohara@lathropgpm.com

    Alexandra B. Cunningham _(admitted PHV)_
    **Hunton Andrews Kurth LLP**
    Riverfront Plaza, East Tower
    951 East Byrd Street
    Richmond, Virginia 23219-4074
    Telephone:  (804) 787-8087
    Facsimile:  (804) 788-8218
    acunningham@HuntonAK.com

    Susan F. Wiltsie _(admitted PHV)_
    **Hunton Andrews Kurth LLP**
    2200 Pennsylvania Avenue, NW
    Washington, District of Columbia 20037
    Telephone:  (202) 955-1500
    Facsimile: (202) 778-2201

    _Counsel for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of the same to the following counsel of record:

Gina Chiala (#59112)
**Heartland Center for Jobs and Freedom, Inc.**
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
ginachiala@jobsandfreedom.org

David S. Muraskin *(admitted pro hac vice)*
Karla Gilbride *(admitted pro hac vice)*
Stevie K. Glaberson *(admitted pro hac vice)*
**Public Justice**
1620 L. Street, NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
dmuraskin@publicjustice.net
kgilbride@publicjustice.net
sglaberson@publicjustice.net

I hereby certify that I will send copies of the foregoing via electronic mail to Plaintiffs'

counsel who have pending motions to appear *pro hac vice*:

David Seligman *(pro hac vice pending)*
Juno Turner
**Towards Justice**
1410 High Street, Suite 300
Denver, CO 80218
Telephone: (720) 441-2236
Facsimile: (303) 957-2289
david@towardsjustice.org
juno@towardsjustice.org

***Counsel for Plaintiffs***

/s/ Jean Paul Bradshaw II
An Attorney for Defendants