# Exhibit 4

Enforcement Memos / Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19)

April 13, 2020

**MEMORANDUM FOR:**

REGIONAL ADMINISTRATORS
STATE PLAN DESIGNEES

**THROUGH:**

AMANDA EDENS
Deputy Assistant Secretary

**FROM:**

PATRICK J. KAPUST, Acting Director
Directorate of Enforcement Programs

**SUBJECT:**

Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19)

This Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19) provides instructions and guidance to Area Offices and compliance safety and health officers (CSHOs) for handling COVID-19-related complaints, referrals, and severe illness reports. The scope of this guidance covers all investigations and inspections specifically related to the workplace hazard of SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), which is the virus causing the current COVID-19 pandemic.

OSHA will continue to ensure safe and healthy conditions for America's working men and women by enforcing standards during this health crisis. In addition, heightened attention will be given to the risks posed by SARS-CoV-2. This interim response plan outlines how the agency will continue to discharge these responsibilities in the differing circumstances throughout the country.

Due to the COVID-19 outbreak, OSHA Area Offices will use their resources to fulfill mission essential functions and protect workers while also taking appropriate diligence to protect our own personnel. This Interim Enforcement Response Plan sets forth interim procedures that allow flexibility and discretion for our field offices to maximize OSHA's impact in securing safe workplaces for workers in this evolving environment. As with responding to any complaint, an examination of the facts will guide the determination of the best enforcement approach and appropriate action to take based on the employer's response.

Attached to this memorandum are specific enforcement procedures (Attachment 1); a sample employer letter for COVID-19 activities (Attachment 2); a sample hazard alert letter (Attachment 3); a sample alleged violation description for a citation under the general duty clause, Section 5(a)(1), of the Occupational Safety and Health (OSH) Act (Attachment 4); and additional references, including OSHA's prior COVID-19-related enforcement memoranda (Attachment 5).

**Background**

On January 31, 2020, the Secretary of Health and Human Services (HHS) declared the COVID-19 outbreak a public health emergency. The crisis also has been declared a national emergency by the President of the United States and a global pandemic by the World Health Organization (WHO). Currently, according to the Centers for Disease Control and Prevention (CDC), person-to-person transmission occurs during close (within 6 feet) contact with a person with COVID-19, primarily from respiratory droplets produced when an infected person coughs or sneezes. These droplets, particularly when aerosolized, can be deposited in the mouth, nose, or eyes of nearby people or be inhaled into the lungs. Airborne transmission from person-to-person over long distances is believed to be unlikely. Prudent infection control practices must be exercised to contain / mitigate the spread of COVID-19. For the latest information, please refer to OSHA's COVID-19 Safety and Health Topics page located at www.osha.gov/coronavirus.

**General Enforcement Guidance**

OSHA should investigate complaints, referrals, and employer-reported fatalities and hospitalizations to identify potentially hazardous occupational exposures and to ensure that employers take prompt actions to mitigate hazards and protect employees. Complaints received during the initial months of the outbreak describe concerns related to lack of personal protective equipment (PPE), such as respirators, gloves, and gowns. OSHA has also received complaints expressing concern about a lack of training on appropriate standards and about possible COVID-19 illnesses in the workplace. In most cases, Area Offices should process complaints from non-healthcare and non-emergency response

establishments as "non-formal phone/fax," following the non-formal complaint and referral procedures in the Field Operations Manual (FOM), CPL 02-00-163, September 13, 2019, at www.osha.gov/enforcement/directives/cpl-02-00-163. OSHA will forward complaint information deemed appropriate to federal partners with concurrent interests.

If an employer is not immediately aware of a reportable fatality, in-patient hospitalization, amputation, or loss of an eye that was the result of a work-related incident, a report to OSHA must be made within the following time period after the employer or its agent(s) learns that the reportable event was the result of a work-related incident: Eight (8) hours for a fatality, and twenty-four (24) hours for an inpatient hospitalization, an amputation, or a loss of an eye. Employers must report a fatality if it occurs within 30 days of the work-related incident. After OSHA receives an employer report of a fatality, in-patient hospitalization, amputation, or loss of an eye as a result of a work-related incident, the Area Director must determine whether to conduct an inspection or a Rapid Response Investigation (RRI). The RRI is intended to identify any hazards, provide abatement assistance, and confirm abatement. RRIs are encouraged whenever possible. For additional guidance, refer to Rapid Response Investigations Enforcement Procedures at www.osha.gov/memos/2016-03-04/revised-interim-enforcement-procedures-reporting-requirements-under-29-cfr-190439.

Prior to any inspection related to COVID-19, each area director (AD) should evaluate the risk level of exposure to SARS-CoV-2 at the workplace, and prioritize his or her resources in coordination with his or her regional offices to determine if an on-site inspection is necessary. If the AD determines an on-site inspection is warranted, CSHOs must carefully evaluate potential hazards and limit any possible exposure(s). For these inspections, ADs must maximize the use of electronic means of communication (remote video surveillance, phone interviews, email correspondences, facsimile and email transmittals of documents, video conferences, etc.), and consult with their regional solicitors when appropriate. Throughout their engagement with facilities treating a significant number of COVID-19 patients, CSHOs should take care to avoid interference with the provision of ongoing medical services.

Whenever CSHOs identify a workplace with potential for high-risk exposure to SARS-CoV-2—and determine that an inspection is warranted under this memorandum—they should immediately coordinate with their supervisors and regional office, and, if necessary, contact the Office of Occupational Medicine and Nursing (OOMN). OOMN may then serve as a liaison with relevant public health authorities, and can facilitate Medical Access Orders (MAOs) to obtain worker medical records from employers and healthcare providers.

CSHOs who believe they may have had an exposure to SARS-CoV-2 during an inspection must report the potential exposure to their supervisor and/or AD.

COVID-19 inspections will be treated as novel cases. The Directorate of Enforcement Programs (DEP) must be notified of all proposed citations and federal agency Notices that relate to a COVID-19 exposure. State Plan designees should report any COVID-19 inspections to their Regional Office.

All activity, specifically enforcement and compliance assistance, must be appropriately coded to allow for tracking and program review. This includes COVID-19 activity, which should continue to be coded in the OSHA Information System (OIS) with the specific code: **N-16-COVID-19**.

Attached is specific inspection and citation guidance for potentially applicable standards, which describe when to exercise enforcement discretion, such as for the Respiratory Protection standard, 29 CFR § 1910.134. This memorandum incorporates by reference all prior enforcement guidance memoranda issued by OSHA related to COVID-19. This memorandum will take effect immediately and remain in effect until further notice. This guidance is intended to be time-limited to this current public health crisis. Please frequently check OSHA's webpage at www.osha.gov/coronavirus for updates. If you have any questions regarding this policy, please contact the Office of Health Enforcement at (202) 693-2190.

Attachments

cc: DCSP
DTSEM
DSG

**[Correction 4/23/2020]**

## Attachment 1

## Specific Guidance for COVID-19 Enforcement

*I. Workplace Risk Levels:*

The following guidance is provided to help identify risk levels in workplace settings for purposes of prioritizing OSHA enforcement activities during the Coronavirus Disease 2019 (COVID-19) pandemic. The workplace risk levels below are from the Occupational Risk Pyramid described in the OSHA publication, *Guidance on Preparing Workplaces for COVID-19*, OSHA publication 3990), www.osha.gov/Publications/OSHA3990.pdf.

- High and very high exposure risk jobs are those with high potential for exposure to known or suspected sources of SARS-CoV-2 that occurs during specific medical, postmortem, or laboratory procedures. Workplaces considered to have job duties with high risk of exposures to COVID-19 include, but are not limited to, hospitals treating suspected and/or confirmed COVID-19 patients, nursing homes, emergency medical centers, emergency response facilities, settings where home care or hospice care are provided, settings that handle human remains,

- biomedical laboratories, including clinical laboratories, and medical transport. Aerosol-generating procedures, in particular, present a very high risk of exposure to workers. The aerosol-generating procedures for which engineering controls, administrative controls, and personal protective equipment (PPE) are necessary include, but are not limited to, bronchoscopy, sputum induction, nebulizer therapy, endotracheal intubation and extubation, open suctioning of airways, cardiopulmonary resuscitation and autopsies.
- Medium exposure risk jobs include those with frequent and/or close contact with, *i.e.*, within 6 feet of, people who may be (but are not known to be) infected with SARS-CoV-2. Workers in this risk group may have frequent contact with travelers returning from international locations with widespread COVID-19 transmission. In areas where there is ongoing community transmission, workers in this category, include, but are not limited to, those who have contact with the general public (*e.g.*, in schools, high-population-density work environments, and some high-volume retail settings).
- Lower exposure risk jobs are those that do not require contact with people known to be, or suspected of being, infected with SARS-CoV-2, nor frequent close contact with, *i.e.*, within 6 feet of, the general public. Workers in this category have minimal occupational contact with the public and other coworkers.

### II. Complaints, Referrals, and Rapid Response Investigations (RRIs):

Complaint(s) or referral(s) for any general industry, maritime, or construction operation alleging potential exposures to SARS-CoV-2 should be handled in accordance with the general procedures in Field Operations Manual (FOM) Chapter 9, *Complaint and Referral Processing*, except that this response plan modifies the FOM instruction, "the employer is notified of the alleged hazard(s) or violation(s) by telephone, fax, email, or by letter," by mandating an initial notification by phone to the employer. Additional modified procedures are listed below:

- Fatalities and imminent danger exposures related to COVID-19 will be prioritized for inspections, with particular attention given to healthcare organizations and first responders. During this outbreak, formal complaints alleging unprotected exposures to COVID-19 for workers with a high/very high risk of transmission, such as a fatality that is potentially related to exposures to confirmed or suspected COVID-19 patients while performing aerosol-generating procedures without adequate PPE in a hospital, may warrant an on-site inspection. ADs should prioritize resources and consider all relevant factors, such as whether the complainant alleges inadequate PPE due to supply issues, in determining whether to perform a non-formal phone/fax investigation instead of an on-site inspection. See Section I above for a description of other workplaces considered to have high/very risk of exposures to COVID-19.
- All other formal complaints alleging SARS-CoV-2 exposure, where employees are engaged in medium or lower exposure risk tasks (*e.g.*, billing clerks), will not normally result in an on-site inspection. In such cases, Area Offices will use the non-formal procedures for investigating alleged hazards. Inadequate responses to a phone/fax investigation should be considered for an on-site inspection in accordance with the FOM. See Attachment 2 for a sample letter for employers.
- Non-formal complaints and referrals related to COVID-19 exposures will be investigated using non-formal processing to expedite employers' attention to alleged hazards.
- Employer-reported hospitalizations will be handled using the rapid response investigation (RRI) in most cases. Refer to procedures in the OSHA Memorandum on RRIs dated March 4, 2016, for further information on RRI processing.
- In all phone/fax correspondences, Area Offices will assist employers by directing them to publicly available guidance documents on protective measures, *e.g.*, OSHA's COVID-19 webpage at www.osha.gov/coronavirus.
- Area Offices should document the status and condition of the work operations to the extent possible, noting any potentially serious hazard(s). This should include information (such as the type of process or conditions of exposure) indicative of the likelihood of exposure to SARS-CoV-2.
- Workers requesting inspections, complaining of COVID-19 exposure, or reporting illnesses may be covered under one or more whistleblower statutes. Inform them of their protections from retaliation and refer them to www.whistleblowers.gov/ for more information.

Finally, OSHA will forward complaint information deemed appropriate to federal partners with concurrent interests.

### III. Inspection Scope, Scheduling, and Procedures:

- ***Inspection Planning and Compliance Safety and Health Officer (CSHO) Training***. Facilities identified in Section I, above, as having high and very high exposure risk jobs, such as hospitals, emergency medical centers, and emergency response facilities, will typically be the focus of any inspection activities in response to COVID-19-related complaints/referrals and employer-reported illnesses. Based on information received by an Area Office, a determination whether to conduct an on-site facility inspection or open remotely by making a phone call.

  ADs or Assistant Area Directors shall ensure that CSHOs performing COVID-19-related inspections are familiar with the most recent Centers for Disease Control and Prevention (CDC) guidelines and OSHA's guidance for workplaces in which workers may have exposure to SARS-CoV-2, and that they are adequately trained through either related course work or field experience in appropriate settings. In healthcare, this might include OSHA Training Institute coursework (*e.g.*, OSHA #3360 - Healthcare) or field experience in healthcare facilities. CSHOs shall be made aware of the individual characteristics and underlying conditions that, according to CDC, increase risk for developing severe illness and complications from COVID-19. These risk factors include:

  - Being 65 years of age or older;
  - Being on immunosuppressive drug therapy or otherwise being immunosuppressed;
  - Having a history of smoking; or

- Having any of the following medical conditions: cardiovascular disease, asthma or other pulmonary disease, renal failure, liver disease, cancer, or diabetes.

CSHOs are to be provided with the necessary equipment and supplies, including decontamination supplies (*e.g.*, ordinary bleach wipes) for cleaning any equipment and materials brought on site. CSHOs should dispose of used, disposable PPE and decontamination waste at the inspection site; reusable PPE (*e.g.*, respirator facepiece) and other equipment should be cleaned on site or bagged and cleaned later. See Compliance Officer Protection section below for further guidance.

NOTE: Where inspections require coordination with other federal agencies[, such as the Centers for Medicare & Medicaid Services (CMS)] or local and state health departments, Area Offices should contact the National Office to determine potential involvement of external authorities and coordinate efforts to maximize efficiencies and maintain controls.

- **Inspection Procedures.** Inspection procedures in FOM Chapter 3 should be followed, except as modified below. CSHOs should consult OSHA directives, appendices, and other references cited in this instruction for further guidance.

  - **Opening Conference.** If the formal inspection can be conducted without accessing a location of suspected or confirmed SARS-Cov-2 exposure, then all possible steps must be taken for CSHOs to avoid such exposure. For example, opening conferences may be conducted by phone. Upon entry, when necessary, CSHOs will attempt to conduct an opening conference in a designated, uncontaminated administrative area. Healthcare facilities generally have internal infection control and employee health and safety programs that may be administered by a team or individual. As appropriate to the setting, CSHOs should ask to speak to the infection control director, safety director, and/or the health professional responsible for occupational health hazard control. Other individuals responsible for providing records pertinent to the inspection should also be included in the opening conference or interviewed early in the inspection (*e.g.*, facility administrator, training director, facilities engineer, director of nursing, human resources, etc.).

    NOTE: CSHOs may provide a copy of the OSHA Publication, *Guidance on Preparing Workplaces for COVID-19* (OSHA 3990-03 2020), or other guidance deemed appropriate.

  - **Program and Document Review.** CSHOs should take the following steps electronically or remotely (*e.g.*, via phone or online) before attempting a walkaround inspection, as appropriate to the type of facility:

    - Determine whether the employer has a written pandemic plan as recommended by the CDC.[1] If this plan is a part of another emergency preparedness plan, the review does not need to be expanded to the entire emergency preparedness plan (*i.e.*, a limited review addressing issues related to exposure to pandemics would be adequate). The evaluation of an employer's pandemic plan may be based upon other written programs and, in a hospital, a review of the infection control plan.
    - Review the facility's procedures for hazard assessment and protocols for PPE use with suspected or confirmed COVID-19 patients.
    - Determine whether the workplace has handled specimens or evaluated, cared for, or treated suspected or confirmed COVID-19 patients. This should include a review of laboratory procedures for handling specimens and procedures for decontamination of surfaces.
    - Review other relevant information, such as medical records related to worker exposure incident(s), OSHA-required recordkeeping and any other pertinent information or documentation deemed appropriate by the CSHO. This includes determining whether any employees have contracted COVID-19, have been hospitalized as a result of COVID-19, or have been placed on precautionary removal/isolation.
    - Review the respiratory protection program and any modified respirator policies related to COVID-19, and assess compliance with 29 CFR § 1910.134.
    - Review employee training records, including any records of training related to COVID-19 exposure prevention or in preparation for a pandemic, if available.
    - Review documentation of provisions made by the employer to obtain and provide appropriate and adequate supplies of PPE.
    - Determine if the facility has airborne infection isolation rooms/areas, and gather information about the employer's use of air pressure monitoring systems and any periodic testing procedures.[2] Review any procedures for assigning patients to those rooms/areas and procedures to limit access to those rooms/areas only by employees who are trained and adequately outfitted with PPE.

      NOTE: For testing procedures of isolation rooms, CSHOs should refer to the OSHA Directive, CPL 02-02-078, Enforcement Procedures and Scheduling for Occupational Exposure to Tuberculosis, June 30, 2015, Appendix B, *Testing Methods for Airborne Infection Isolation Rooms*, at, www.osha.gov/enforcement/directives/cpl-02-02-078.

    - Review procedures in place for transferring patients to other facilities in situations where appropriate isolation rooms/areas are unavailable or inoperable. Also, review procedures for transferring COVID-19 patients from other facilities.
    - Establish the numbers and placements, i.e., room assignments or designated area (cohorting) assignments, of confirmed and suspected COVID-19 patients under isolation at the time of inspection.
    - Establish the pattern of placements for confirmed and suspected COVID-19 patients in the preceding 30 days.

    Determine and document whether the employer has considered or implemented a hierarchy of controls for worker protection, *i.e.*, engineering controls, administrative controls, work practices, or PPE (including a respiratory protection program). Such documentation can be in the form of photos or design specifications.

Case 5:20-cv-06063-DGK   Document 29-4   Filed 04/27/20   Page 5 of 17

NOTE 1: The CDC currently recommends that healthcare personnel (HCP) who are providing direct care of patients with known or suspected COVID-19 implement robust infection control procedures. These include engineering controls (*e.g.*, airborne infection isolation rooms), administrative controls (*e.g.*, cohorting patients, designated HCP), work practices (*e.g.*, handwashing, disinfecting surfaces), and appropriate use of PPE, such as gloves, face shields or other eye protection, and gowns.[3]

NOTE 2: Several tools are publicly available to offer employers assistance in developing hospital preparedness plans. The CDC has developed checklists for various industries and for different types of settings. The available CDC hospital guidance is listed in Attachment 5.

- *Walkaround.* Based on information from the program and document review and interviews, CSHOs and supervisors or ADs should use professional judgment in determining which areas of the facility will be inspected (*e.g.*, emergency rooms, respiratory therapy areas, bronchoscopy suites, and morgue). CSHOs should not enter patient rooms or treatment areas while high hazard procedures are being conducted. Photographs or videotaping where practical should be used for case documentation, such as recording smoke-tube testing of air flows inside or outside an AIIR. However, **under no circumstances shall CSHOs photograph or take video of patients**, and CSHOs must take all necessary precautions to assure and protect patient confidentiality. Throughout their engagement with facilities treating a significant number of COVID-19 patients, CSHOs should take care to avoid interference with the facilities' provision of ongoing medical services.

- *Compliance Officer Protection.* ADs and Assistant Area Directors will ensure that CSHOs performing COVID-19-related inspections are familiar with the most recent CDC guidelines and OSHA's guidance for healthcare workers, and trained as mentioned above. Supervisors and CSHOs should also review ADM 04-00-002, OSHA Safety and Health Management System (SHMS), including Chapter 8, *Personal Protective Equipment*, and Chapter 19, *Bloodborne Pathogens*.[4] Consultation with the regional office is encouraged prior to beginning such inspections.

  Vaccinations for COVID-19 are currently not available. CSHOs who conduct COVID-19 inspections are encouraged to get the COVID-19 vaccinations if and when they become available. At such a time, CSHOs should check for Federal Occupational Health (FOH) facility locations within their area to obtain the vaccination(s).

  ADs and Assistant Area Directors must ensure that appropriate PPE is available for CSHOs conducting on-site activities. CSHOs should determine from the employer where donning, doffing, and decontamination can be done, as well as the location of additional PPE (if available) and decontamination waste disposal facilities, in preparation for the walkaround. COVID-19 can be contracted via person-to-person contact and respiratory droplets, so strict adherence to use of PPE is essential. The **minimum level of respiratory protection** for CSHOs is a fit-tested half-mask elastomeric respirator with at least an N95 filter. CSHOs must also be equipped, at a minimum, with goggles, disposable gloves, and disposable gowns or coveralls of appropriate size. CSHOs must also ask employers if there are any facility-imposed PPE requirements and adhere to those PPE requirements during the inspection.

- *Safety Practices during On-Site Inspections.* CSHOs shall inspect facilities in a manner that minimizes or prevents exposure (for example, view employee work tasks through an observation window). CSHOs shall avoid potential exposure to suspected or confirmed COVID-19 patients. It is not generally necessary for CSHOs to enter patient rooms or airborne isolations areas. *CSHOs shall **not** enter rooms occupied by COVID-19 patients or airborne infection isolation rooms (AIIRs) to evaluate compliance*. If CSHOs must enter a vacant AIIR, sufficient time must lapse (to allow for proper clearance of potentially infectious aerosols) before entering. (For information on clearance rates under differing ventilation conditions, see www.cdc.gov/mmwr/preview/mmwrhtml/rr5417a1.htm). Prior to entering an occupied AIIR, or a recently vacated AIIR that has not been adequately purged, a CSHO must discuss the need for entry with the AD.

  Under circumstances where CSHOs need to test a room's ventilation or air flow (*e.g.*, rooms where aerosol-generating procedures are performed), CSHOs shall, at a minimum, wear a half-mask negative-pressure respirator with at least N95 filters, goggles, and disposable gloves. If CSHOs wear full-face, negative-pressure respirators, the respirator takes the place of the goggles for the purposes of providing eye protection.

  As appropriate to the inspection, CSHOs shall conduct private interviews with affected employees in uncontaminated areas. CSHOs should practice social distancing (such as maintaining at least 6 feet of distance), if possible, while conducting interviews with employees. Another option is conducting the interview by phone, even while still on site. Interviews shall not take place in a room or area where a high-hazard procedure such as bronchoscopy, sputum induction, etc., is being or recently has been conducted.

  CSHOs must wash their hands with soap and water after each inspection or use hand sanitizers with at least 60% alcohol if handwashing facilities are not immediately available. Also, prior to leaving the site, CSHOs will decontaminate supplies and equipment using bleach wipes, and dispose of all used, disposable PPE and decontamination waste on site, or bag and clean later. CSHOs are also encouraged to wash their hands during the course of the walkaround, such as when leaving areas and after touching surfaces. CSHOs should always wash hands after removing gloves or other PPE. CSHOs should practice contamination reduction techniques, i.e., limiting surface touching, and avoiding secondary or subsequent contact, especially with their faces.

- *Applicable OSHA Standards.* Several OSHA standards may apply, depending on the circumstances of the case. CSHOs must rely on specific facts and findings of each case for determining applicability of OSHA standards.

  - 29 CFR § 1904, Recording and Reporting Occupational Injuries and Illness.
  - 29 CFR § 1910.132, General Requirements - Personal Protective Equipment.

Case 5:20-cv-06063-DGK   Document 29-4   Filed 04/27/20   Page 6 of 17

- 29 CFR § 1910.133, Eye and Face protection.
- 29 CFR § 1910.134, Respiratory Protection.
- 29 CFR § 1910.141, Sanitation.
- 29 CFR § 1910.145, Specification for Accident Prevention Signs and Tags.
- 29 CFR § 1910.1020, Access to Employee Exposure and Medical Records.
- Section 5(a)(1), General Duty Clause of the OSH Act.

NOTE: OSHA's Bloodborne Pathogens standard (29 CFR § 1910.1030) applies to occupational exposure to human blood and other potentially infectious materials that typically do not include respiratory secretions that may contain SARS-CoV-2 (unless visible blood is present). However, the provisions of the standard offer a framework that may help control some sources of the virus, including exposures to body fluids (*e.g.*, respiratory secretions) not covered by the standard.

- **Observation of hazards.** Where no violations of OSHA standards, regulations, or the general duty clause are observed or documented, CSHOs shall terminate the inspection and leave the facility.
- **Citation Guidance.** The above standards and requirements should be evaluated for high to very high occupational exposure risk as defined in this memorandum. The list is not exhaustive. Violations of OSHA standards cited under the inspection guidance in this memorandum will normally be classified as serious.
- **General Duty Clause.** If deficiencies not addressed by OSHA standards or regulations are discovered in the employer's preparedness for controlling high to very high occupational exposure risk for SARS-CoV-2, and guidance is available (*e.g.*, CDC), follow the FOM guidance for enforcing the general duty clause, including the four required elements: (1) The employer failed to keep the workplace free of a hazard to which employees of that employer were exposed; (2) The hazard was recognized; (3) The hazard was causing or was likely to cause death or serious physical harm; and, (4) There was a feasible and useful method to correct the hazard.
- Unless the case file evidence proves *all four* of the above elements, the Area Office should issue a hazard alert letter (HAL) recommending the implementation of protective measures that address SARS-CoV-2 hazards. For example, if there is no clear evidence that an employee was exposed to the virus in the workplace, then the first element is not met. See Attachment 3 for a sample HAL.
- **Use of CDC recommendations.** The most current CDC guidance should be consulted in assessing potential workplace hazards and to evaluate the adequacy of an employer's protective measures for workers. Where the protective measures implemented by an employer are not as protective as those recommended by the CDC, the CSHO should consider whether employees are exposed to a recognized hazard and whether there are feasible means to abate that hazard.
- **Citation Review.** In all cases where the AD determines that an OSHA standard has been violated or a condition exists warranting issuance of a 5(a)(1) violation for an occupational exposure to SARS-CoV-2, the proposed citation shall be reviewed with the Regional Administrator and the National Office **prior to** issuance. In unusual or complex general duty clause cases, Regional Offices should consult with their Regional Solicitor. See Attachment 4 for a sample alleged violation description (AVD).

- **Additional Guidance for Certain OSHA Standards.**
  - **Access to employee medical and exposure records.** For general guidance, CSHOs should refer to CPL 02-02-072, *Rules of Agency Practice and Procedure Concerning OSHA Access to Employee Medical Records* August 22, 2007, at www.osha.gov/enforcement/directives/cpl-02-02-072. CSHOs are encouraged to consult with OOMN for guidance if they have any questions when reviewing medical records and for obtaining MAOs, as necessary.

    A record concerning an employee's work-related exposure to SARS-CoV-2 is an employee exposure record under 29 CFR § 1910.1020(c)(5). A record of COVID-19 medical test results, medical evaluations, or medical treatment is considered an employee medical record within the meaning of 29 CFR § 1910.1020(c)(6). Medical records are to be handled in accordance with the procedures set forth at 29 CFR § 1913.10, Rules of Agency Practice and Procedure Concerning OSHA Access to Employee Medical Records.

  - **Injury/Illness Records.** CSHOs should review the employer's injury and illness records to identify any workers with recorded illnesses or symptoms associated with exposure(s) to patients with suspected or confirmed COVID-19 or other sources of SARS-CoV-2.

    For purposes of OSHA injury and illness recordkeeping, cases of COVID-19 are *not* considered a common cold or seasonal flu. The work-relatedness exception for the common cold or flu at 29 CFR § 1904.5(b)(2)(viii) does not apply to these cases. Note that OSHA is exercising enforcement discretion for the recording of COVID-19 cases outside the healthcare industry, emergency responder organizations, and correctional institutions in some situations. *See* OSHA Memorandum, *Enforcement Guidance for Recording Cases of 2019 Coronavirus Disease (COVID-19) on OSHA Injury and Illness Logs*, April 10, 2020, (www.osha.gov/memos/2020-04-10/enforcement-guidance-recording-cases-coronavirus-disease-2019-covid-19).

    Employers are responsible for recording cases of COVID-19 if all of the following requirements are met:

    - The case is a confirmed case of COVID-19, as defined by the CDC;
    - The case is ***work-related***, as defined by 29 CFR § 1904.5; and
    - The case involves one or more of the recording criteria set forth in 29 CFR § 1904.7 (*e.g.*, medical treatment, days away from work).

    NOTE: Several types of facilities in the healthcare industry are partially exempt from recordkeeping requirements under 29 CFR Part 1904 and are, therefore, not expected to maintain OSHA 300 logs.[5] CSHOs should rely on interviews and other records reviewed during the investigation at these facilities.

Case 5:20-cv-06063-DGK    Document 29-4    Filed 04/27/20    Page 7 of 17

- **Respiratory Protection Standard.** For general guidance, CSHOs should refer to CPL 02-00-158, *Inspection Procedures for the Respiratory Protection Standard*, June 26, 2014, at www.osha.gov/enforcement/directives/cpl-02-00-158.
  During an inspection, CSHOs will evaluate whether healthcare or emergency response workers, who are expected to perform very high and high risk exposure tasks, are using respirators (i.e., N95 or better).

  - Healthcare and emergency response job tasks with *high* occupational exposure risk to SARS-CoV-2 include but are not limited to: entering rooms with suspected or confirmed COVID-19 patients; attending to suspected or confirmed COVID-19 patients through close contact (within 6 feet); or transporting suspected or confirmed COVID-19 patients in enclosed vehicles.
  - Healthcare and emergency response job tasks with *very high* occupational exposure risk to SARS-CoV-2 include but are not limited to: surgery on suspected or confirmed COVID-19 patients; performing aerosol-generating procedures on these patients, such as bronchoscopy, sputum induction, nebulizer therapy, endotracheal intubation and extubation, open suctioning of airways; cardiopulmonary resuscitation on suspected or confirmed COVID-19 patients; or autopsies on suspected or confirmed COVID-19 patients.

  ***Appropriate respiratory protection is required for all healthcare personnel providing direct care for patients with suspected or confirmed cases of COVID-19.*** For additional guidance, see *COVID-19 Hospital Preparedness Assessment Tool*, www.cdc.gov/coronavirus/2019-ncov/hcp/hcp-hospital-checklist.html.

  ***Equipment Shortages.*** Because of the increased demand for N95 filtering facepiece respirators (FFRs) during the COVID-19 outbreak, and the resulting limitations on the availability of these respirators for use in protecting workers in healthcare and emergency response from exposure to the virus, the President directed the Secretary of Labor to "*consider all appropriate and necessary steps to increase the availability of respirators.*"[6]

  The outbreak is also resulting in shortages of other disposable respirators, surgical masks, and fit-testing supplies and equipment. And health services by fit-testing companies and by medical providers for respirator evaluations are severely limited.

  ***Enforcement Discretion.*** In view of these shortages and limitations, OSHA has provided specific enforcement discretion, as described below, for CSHOs enforcing the Respiratory Protection standard, 29 CFR 1910.134, during the present COVID-19 outbreak. CSHOs are to refer to the memoranda listed below (also listed in Attachment 5), and should continue to check for additional or modified guidance:

  - OSHA Memorandum, *Temporary Enforcement Guidance - Healthcare Respiratory Protection Annual Fit-Testing for N95 Filtering Facepieces During the COVID-19 Outbreak*, issued on March 14, 2020, www.osha.gov/memos/2020-03-14/temporary-enforcement-guidance-healthcare-respiratory-protection-annual-fit.
  - OSHA Memorandum - *Expanded Temporary Enforcement Guidance on Respiratory Protection Fit-Testing for N95 Filtering Facepieces in All Industries During the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 8, 2020, www.osha.gov/memos/2020-04-08/expanded-temporary-enforcement-guidance-respiratory-protection-fit-testing-n95.
  - OSHA Memorandum - *Enforcement Guidance for Respiratory Protection and the N95 Shortage Due to the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 3, 2020, www.osha.gov/memos/2020-04-03/enforcement-guidance-respiratory-protection-and-n95-shortage-due-coronavirus.
  - OSHA Memorandum - *Enforcement Guidance for Use of Respiratory Protection Equipment Certified under Standards of Other Countries or Jurisdictions During the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 3, 2020, www.osha.gov/memos/2020-04-03/enforcement-guidance-use-respiratory-protection-equipment-certified-under.

  CSHOs should assess whether the employer is making a good-faith effort to provide and ensure workers use the most appropriate respiratory protection available for exposures to SARS-CoV-2. Below is a summary of key guidance from the above memoranda. CSHOs should also consult the memoranda themselves for complete details of OSHA's enforcement policies on the Respiratory Protection standard during the outbreak. The employer's good faith efforts should be accomplished through, in this order:

  - Implementing the hierarchy of controls in an effort first to eliminate workplace hazards, then using engineering controls, administrative controls, and safe work practices to prevent worker exposures to respiratory hazards.
  - Prioritizing efforts to acquire and use equipment in the following order:
    - National Institute for Occupational Safety and Health (NIOSH)-certified equipment; then
    - Equipment certified in accordance with standards of other countries or jurisdictions except the People's Republic of China, unless equipment certified in accordance with standards of the People's Republic of China is manufactured by a NIOSH certificate holder, in accordance with OSHA's April 3, 2020 memo; then
    - Equipment certified in accordance with standards of the People's Republic of China, the manufacturer of which is not a NIOSH certificate holder, in accordance with OSHA's April 3, 2020 memo; then
    - Facemasks (*e.g.*, medical masks, procedure masks).
  - Prioritizing efforts to acquire and use equipment that has not exceeded its manufacturer's recommended shelf life before allowing workers to use equipment that is beyond its manufacturer's recommended shelf life. Equipment used beyond its manufacturer's recommended shelf life must be used in accordance with OSHA's April 3, 2020 memo.
  - Prioritizing efforts to use equipment that has not exceeded its intended service life (*e.g.*, disposable FFRs used for the first time) before implementing protocols for extended use or reuse of equipment. Extended use or reuse of equipment should follow the

Case 5:20-cv-06063-DGK    Document 29-4    Filed 04/27/20    Page 8 of 17

CDC's Strategies for Optimizing the Supply of N95 Respirators and OSHA's April 3, 2020 memo.

- Using homemade masks or improvised mouth and nose covers only, as a last resort (i.e., when no respirators or facemasks are available). Improvised masks are not personal protective equipment and, ideally, should be used with a face shield to cover the front and sides of the face. When this measure is the only resort, refer to the CDC guidance at www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/face-masks.html.

CSHOs should also confirm that workers perform a user seal check each time they don a respirator, regardless of whether it is a NIOSH-certified device or device certified under standards of other countries, and do not use a respirator on which they cannot perform a successful user seal check. *See* 29 CFR § 1910.134, Appendix B-1, *User Seal Check Procedures*.[7]

CSHOs will determine whether the employer has trained workers to understand that if the structural and functional integrity of any part of the respirator is compromised, it should be discarded, and that if a successful user seal check cannot be performed, another respirator should be tried to achieve a successful user seal check. Over time, components such as the straps, nose bridge, and nose foam material may degrade, which can affect the quality of the fit and seal. Additionally, CSHOs should assess whether the employer has trained employees on the proper sequence of procedures for donning/doffing to prevent self-contamination. *See* www.cdc.gov/niosh/npptl/pdfs/PPE-Sequence-508.pdf.

Finally, CSHOs should confirm that employers and users of personal protective equipment avoid co-mingling products from different categories of equipment. That is, NIOSH-certified equipment, equipment that was previously NIOSH-certified but that has surpassed its manufacturer's recommended shelf life, equipment certified under standards of other countries, and equipment that was previously certified under standards of other countries but that has surpassed its manufacturer's recommended shelf life, should be stored separately.

***Healthcare employers.*** When HCP perform surgical procedures on patients infected with, or potentially infected with, SARS-CoV-2 or perform or are present for procedures expected to generate aerosols or procedures where respiratory secretions are likely to be poorly controlled (*e.g.*, cardiopulmonary resuscitation, intubation, extubation, bronchoscopy, nebulizer therapy, sputum induction), CSHOs should determine whether:

- Workers are using respirators (including N95 FFRs; other FFRs; non-disposable, elastomeric respirators; or PAPRs) that are still within their manufacturer's recommended shelf life, if available, before using respirators that are beyond their manufacturer's recommended shelf life.
- Workers are using respiratory protection equipment certified exclusively in accordance with standards of the People's Republic of China and manufactured by companies that are not NIOSH approval holders only when a facemask or improvised nose/mouth cover is the only feasible alternative.
- Workers are not using expired respiratory protection equipment if respirators are available that are still within their manufacturer's recommended shelf life.

NOTE: It is reasonable for healthcare employers to reserve some NIOSH- or foreign-certified N95 FFRs or better respirators for use by healthcare workers who are expected to perform surgical procedures on patients infected with, or potentially infected with, SARS-CoV-2, or perform or are present for procedures expected to generate aerosols or procedures where respiratory secretions are likely to be poorly controlled. In such cases, and particularly when workers performing other tasks are provided with alternative equipment, employers should be able to provide a reasonable rationale for their decision to stockpile these respirators. *See also* www.cdc.gov/coronavirus/2019-ncov/hcp/respirators-strategy/contingency-capacity-strategies.html. The CDC guidance also addresses scenarios in which other crisis standards of care may need to be considered, but this enforcement guidance is not intended to cover those scenarios.

***Citation guidance:***

CSHOs should, on a case-by-case basis, exercise enforcement discretion when considering issuing citations under 29 CFR § 1910.134(d) and/or the equivalent respiratory protection provisions of other health standards in cases where:

- Other feasible measures, such as using partitions, restricting access, cohorting patients (healthcare), or using other engineering controls, work practices, or administrative controls that reduce the need for respiratory protection, were implemented to protect employees.
- The employer has made a good faith effort to obtain other appropriate, alternative FFRs, reusable elastomeric respirators, or PAPRs, including NIOSH-certified equipment or equipment that was previously NIOSH-certified but that has surpassed its manufacturer's recommended shelf life (in accordance with OSHA's April 3 memo);
- The employer has monitored their supply of N95s and prioritized their use according to CDC guidance (www.cdc.gov/coronavirus/2019-ncov/release-stockpiled-N95.html; www.cdc.gov/coronavirus/2019-ncov/hcp/respirators-strategy/index.html); and
- Surgical masks and eye protection (*e.g.*, face shields, goggles) were provided as an interim measure to protect against splashes and large droplets (note: surgical masks are ***not*** respirators and do not provide adequate protection during aerosol-generating procedures).

Case 5:20-cv-06063-DGK   Document 29-4   Filed 04/27/20   Page 9 of 17

Where the above efforts are absent and respiratory protection use is required, or voluntary use is permitted, and an employer fails to comply with fit testing, maintenance, care, and training requirements, cite the applicable provision (s) of 29 CFR § 1910.134 and/or other applicable expanded health standards as serious violations.

### *IV. Coding and Point of Contact.*

All activity, specifically enforcement and compliance assistance, will be appropriately coded in the OSHA Information System (OIS) to allow for tracking and program review. COVID-19 activities shall continue to be coded with the specific code: **N-16-COVID-19**. If you have any questions regarding these procedures, please contact the Office of Health Enforcement at (202) 693-2190.

**Attachment 2**

**Sample Employer Letter for COVID-19 Activities**

Bracketed and/or italicized comments are for OSHA compliance use only and should be removed when appropriately completed with the case-specific information.

RE: OSHA Complaint No. [ ]

Dear Employer:

On **[Date]**, the Occupational Safety and Health Administration (OSHA) received notification of alleged workplace hazard(s) at your worksite concerning **[Potential illness:** *an employee exhibiting signs and symptoms of respiratory illness, such as, fever, cough, and/or shortness of breath, possibly indicating infection by SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), which is the virus causing the current coronavirus disease 2019 (COVID-19) pandemic*.**]** or **[PPE shortage:** *employees not provided with adequate personal protective equipment (PPE), such as respiratory protection, gloves, and gowns*.**]** The specific nature of the complaint is as follows:

*<< ENTER COMPLAINT INFORMATION >>*

Currently, there is an outbreak of COVID-19, also known as Coronavirus. At this time, OSHA is prioritizing its enforcement resources, and OSHA does not intend to conduct an on-site inspection in response to the subject complaint at this time. However, because allegations of violations and/or hazards have been made, we request that you immediately investigate the alleged conditions and make any necessary corrections or modifications. Please advise me in writing, no later than **[Date Response Due]**, of the results of your investigation. You must provide supporting documentation of your findings. This includes any applicable measurements or monitoring results; photographs/video that you believe would be helpful; and a description of any corrective action you have taken or are in the process of taking, including documentation of the corrected condition.

In addition, OSHA is aware that the current pandemic has created an increaseddemand for some protective equipment, limiting availability for use in protecting workers from exposure to the virus. If this situation has prevented you from furnishing protective equipment to your employees, you should provide documentation of the efforts you have made to obtain that equipment. Please feel free to contact the office at **[AO phone]** if you have any questions or concerns. [**If the complaint is at a CMS certified facility add the following:** We are also advising you that OSHA will ~~forward complaint information deemed appropriate to federal partners with concurrent interests~~ notify the Centers for Medicare & Medicaid Services (CMS) of substantiated complaints for their consideration].

This letter is not a citation or a notification of proposed penalty which, according to the Occupational Safety and Health Act, may be issued only after an inspection or investigation of the workplace. It is our goal to assure that hazards are promptly identified and eliminated. Please take immediate corrective action where needed. Depending on the specific circumstances at your worksite, several OSHA requirements may apply to the alleged hazards at your worksite, including:

- 29 CFR § 1904, Recording and Reporting Occupational Injuries and Illness.
- 29 CFR § 1910.132, General Requirements - Personal Protective Equipment.
- 29 CFR § 1910.133, Eye and Face protection.
- 29 CFR § 1910.134, Respiratory Protection.
- 29 CFR § 1910.141, Sanitation.
- 29 CFR § 1910.145, Specification for Accident Prevention Signs and Tags.
- 29 CFR § 1910.1020, Access to Employee Exposure and Medical Records.
- Section 5(a)(1), General Duty Clause of the OSH Act.

OSHA's Bloodborne Pathogens standard (29 CFR § 1910.1030) applies to occupational exposure to human blood and other potentially infectious materials that typically do not include respiratory secretions that may contain SARS-CoV-2 (unless visible blood is present). However, the provisions of the standard offer a framework that may help control some sources of the virus, including exposures to body fluids (*e.g.*, respiratory secretions) not covered by the standard.

Information about these and other OSHA requirements can be found on OSHA's website at www.osha.gov/laws-regs.

**If we do not receive a response from you by [Date Response Due] indicating that appropriate action has been taken or that no hazard exists and why, an OSHA inspection may be conducted.** An inspection may include a review of the following: injury and illness records, hazard communication, personal protective equipment, emergency action or response, bloodborne pathogens, confined space entry, lockout/tagout, and related safety and health issues. Please also be aware that OSHA conducts random inspections to verify that corrective actions asserted by the employer have actually been taken.

OSHA's website, www.osha.gov, offers a wide range of safety and health-related guidance in response to the needs of the working public, both employers and employees. The following guidance may help employers prevent and address workplace exposures to pathogens that cause acute respiratory illnesses, including COVID-19 illness. The guidance includes descriptions of the relevant hazards, how to identify the hazards, and appropriate control measures. Additional resources are provided that address these supply issues and contain industry-specific guidance.

1. For OSHA's latest information and guidance on the COVID-19 outbreak, please refer to OSHA's COVID-19 Safety and Health Topics Page, located at www.osha.gov/coronavirus.
2. Preventing Worker Exposure to Coronavirus (COVID-19), OSHA publication 3989), www.osha.gov/Publications/OSHA3989.pdf.
3. Guidance on Preparing for COVID-19, (OSHA publication 3990), www.osha.gov/Publications/OSHA3990.pdf.
4. [Add additional links, as needed, for industry specific guidance, such as one or more of those listed in Attachment 5.]

The Centers for Disease Control and Prevention (CDC) also maintains a website that provides information for employers concerned about COVID-19 infections in the workplace. The CDC has provided specific guidance for businesses and employers at the following CDC webpage, which is updated regularly: www.cdc.gov/coronavirus/2019-ncov/community/organizations/businesses-employers.html.

- For general information and guidance on the COVID-19 outbreak, please refer to the CDC's main topic webpage at www.cdc.gov/coronavirus/2019-ncov/index.html.
- Resources for businesses and employers, www.cdc.gov/coronavirus/2019-ncov/community/organizations/businesses-employers.html.
- [Add additional links, as needed, for industry specific guidance, such as one or more of those listed in Attachment 5.]

The CDC is recommending employers take the following steps to prevent the spread of COVID-19:

- **Actively encourage sick employees to stay home**
- **Accommodate employees through social distancing or telework (if possible)**
- **Emphasize respiratory etiquette and hand hygiene by all employees**
- **Perform routine environmental cleaning**
- **Check government websites (CDC, State Department) for any travel advisories (where applicable)**
- **Plan for infection disease outbreaks in the workplace**

You are requested to post a copy of this letter where it will be readily accessible for review by all of your employees, and to return a copy of the signed Certificate of Posting (attached) to this office. In addition, you are requested to provide a copy of this letter and your response to a representative of any recognized employee union or safety committee that exist at your facility. Failure to do this may result in an on-site inspection. The complainant has been furnished a copy of this letter and will be advised of your response. Section 11(c) of the Occupational Safety and Health Act provides protection for employees against discrimination because of their involvement in protected safety and health related activity.

If you have questions regarding this issue, you may contact me at the address in the letterhead. I appreciate your personal support and interest in the safety and health of your employees.

Sincerely,

**[Enter AD name]**
Area Director

Attachment **[Certificate of Posting not included in this sample letter]**

## Attachment 3

### Sample Hazard Alert Letter for COVID-19 Inspection

NOTE: The letter below is an example of the type of letter that may be appropriate in some circumstances. It must be adapted to the specific circumstances noted in the relevant inspection. If the employer has implemented, or is in the process of implementing, efforts to address hazardous conditions, those efforts should be recognized and encouraged, if appropriate.

Bracketed and/or italicized comments are for OSHA compliance use only and should be removed when appropriately completed with the case-specific information.

Case 5:20-cv-06063-DGK   Document 29-4   Filed 04/27/20   Page 11 of 17

Dear Employer:

An inspection and evaluation of your workplace at (location) on (date) disclosed the following workplace conditions which raise concerns about the potential for employee illness(es) related to exposure to SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), which is the virus causing coronavirus disease 2019 (COVID-19).

*[Include a general description of the working conditions at issue and the nature of OSHA's concerns for settings classified as medium risk and settings classified as having potential for ongoing transmission for SARS-CoV-2 virus. Address, as applicable, any lack of feasible engineering controls, lack of PPE, inappropriate PPE, etc.*

*For example:*

*Employees performing cough induction procedures on suspected or confirmed COVID-19 patients were not provided suitable respirators for use while doing these procedures.]*

Based on the guidelines of the Centers for Disease Control and Prevention (CDC), which are listed at the end of this letter, it is recommended that you take the following precautions to materially reduce your employees' exposure to the conditions listed above [*NOTE: Use only the items on the list that are appropriate for the hazards relevant to the particular inspection*]:

1. Engineering Controls: Engineering controls are the first line of defense in worker protection. Therefore, employers should provide appropriate engineering controls, where feasible, and should train their employees in the use of those controls to ensure the protection of employees providing care to suspected or confirmed COVID-19 patients. The following are recommended controls:
   a. Use Airborne Infection Isolation Rooms (AIIRs) to reduce the spread of SARS-CoV-2 virus when performing aerosol-generating procedures such as:
      - Bronchoscopy
      - Sputum induction
      - Endotracheal intubation and extubation
      - Open suctioning of airway
      - Cardiopulmonary resuscitation
      - Autopsies
   b. Air from AIIRs should be exhausted directly outside whenever possible, and never into areas where workers or visitors congregate or pass through (*e.g.*, break areas, walkways); best practice incorporates high-efficiency particulate air (HEPA) filtration of this exhausted air.
   c. If AIIRs are not available, increase air changes and avoid unfiltered recirculation of the room air or utilize negative pressure patient enclosure devices (*e.g.*, tents or booths).
   d. Where air must be recirculated, use HEPA filtration.
   e. Use ultraviolet germicidal irradiation (UVGI) devices only in addition to HEPA filtration.
   f. Filtration systems should be on maintenance schedules, and labeled and disposed of properly.

2. Administrative Controls: Managing the transmission of infectious diseases such as COVID-19 relies heavily on the implementation of administrative controls and good work practices. Preparedness should involve planning for the implementation of administrative controls and good work practices to protect affected employees. The following are recommended controls:
   a. Develop measures to support expeditious triage and isolation (or cohorting) of suspected or confirmed COVID-19 patients to minimize unprotected employee exposure.
   b. Limit the number of persons entering isolation rooms to the minimum number necessary for patient care and support.
   c. Provide dedicated patient-care equipment for suspected or confirmed COVID-19 patients.
   d. Ensure use of appropriate Biosafety Level 2 or 3 practices and equipment in laboratory facilities that handle specimens from suspected or confirmed COVID-19 patients to reduce the spread of SARS-CoV-2 virus to laboratory workers.
   e. Limit patient transport when possible and appropriate (*e.g.*, do portable chest films at the bedside instead of transporting the patient to the Radiology department).
   f. Post signs on the entrances to AIIRs or affected procedure rooms to communicate the entry requirements necessary for worker protection.
   g. If tolerated, place facemasks on suspected or confirmed COVID-19 patients to reduce employees' exposure.
   h. Consider offering enhanced medical surveillance and screening to workers who perform the riskiest tasks or activities.

3. Personal Protective Equipment. Perform a workplace hazard assessment as required by 29 CFR § 1910.132(d) to determine the tasks that necessitate the use of personal protective equipment (PPE) such as face masks, gloves, goggles, and respirators.
   a. Provide gloves made of latex, vinyl, nitrile, or other synthetic materials, as appropriate, when there is contact with body fluids, including respiratory secretions.
   b. Assure that employees wear appropriate protective clothing (*e.g.*, an isolation gown) when it is anticipated that clothes or a uniform may get soiled with body fluids, including respiratory secretions.
   c. Use eye and face protection if sprays or splatters of infectious material are likely. Goggles and a half-face respirator, or a full-face respirator, should be worn while performing aerosol-generating procedures. Use of a full face shield in front of a respirator may also prevent bulk contamination of the respirator.

<ol start="4" type="a">
</ol>

    d. If employees are using respiratory protection, establish, implement, and maintain a written respiratory protection program as required by 29 CFR § 1910.134(c). *[The following are specific to respiratory protection use:]*

- Use National Institute for Occupational Safety and Health (NIOSH)-certified respirators that are N95 or higher. When both fluid protection (*e.g.*, blood splashes) and respiratory protection are needed, use a surgical N95 respirator that has been certified by NIOSH and cleared by the Food and Drug Administration (FDA).
- Consider NIOSH-certified elastomeric respirators (*e.g.*, cartridge respirators) for essential workers who may have to decontaminate and reuse respirators in the event that there is a shortage of disposable respirators.
- Consider NIOSH-certified powered air-purifying respirators (PAPRs) for circumstances (possibly bronchoscopy or autopsy on persons with suspected or confirmed COVID-19 disease and selected laboratory procedures) for which a level of respiratory protection that exceeds the minimum level provided by an N95 disposable respirator is necessary. Loose-fitting hooded PAPRs have the additional advantage of not requiring fit testing.

NOTE: See also OSHA's website at www.osha.gov/coronavirus for certain temporary enforcement policies for this Respiratory Protection standard during the COVID-19 pandemic.

4. Training and Information: Provide training, education, and informational materials about the risk of SARS-CoV-2 exposure associated with workers' job tasks and activities.
    a. If PPE will be used, explain why it is being used. Educate and train workers about the protective clothing and equipment appropriate to their current duties and the duties they may be asked to assume when others are absent.
    b. Explain how to use basic hygiene (*e.g.*, hand washing, covering mouth and nose with a tissue when coughing or sneezing) and social distancing precautions that will be implemented and why they are effective.
    c. Ensure materials are easily understood and available in the appropriate language and educational level for all workers.
    d. Post signs asking workers, customers, and the general public to follow basic hygiene practices.

For OSHA's latest information and guidance on the COVID-19 outbreak, please refer to OSHA's COVID-19 Safety and Health Topics page, located at www.osha.gov/coronavirus. Additionally, specific employer guidance is available (for healthcare workers, airline workers, business travelers, etc.).

1. Preventing Worker Exposure to Coronavirus (COVID-19), OSHA publication 3989), www.osha.gov/Publications/OSHA3989.pdf.
2. Guidance on Preparing for COVID-19, (OSHA publication 3990), www.osha.gov/Publications/OSHA3990.pdf.

The Centers for Disease Control and Prevention (CDC) also maintains a website that provides information for employers concerned with COVID-19 infections in the workplace. The CDC has provided specific guidance for businesses and employers at the following CDC webpage, which is updated regularly: www.cdc.gov/coronavirus/2019-ncov/community/organizations/businesses-employers.html.

1. For general information and guidance on the COVID-19 outbreak, please refer to the CDC's main topic webpage at www.cdc.gov/coronavirus/2019-ncov/index.html.
2. Strategies for conserving/optimizing the supply of respirators:
    a. www.cdc.gov/coronavirus/2019-ncov/hcp/respirator-supply-strategies.html#ppe-respiratory-protection.
    b. www.cdc.gov/coronavirus/2019-ncov/release-stockpiled-N95.html
    c. www.cdc.gov/niosh/topics/hcwcontrols/recommendedguidanceextuse.html
3. Hospital Preparedness Assessment Tool, www.cdc.gov/coronavirus/2019-ncov/downloads/hospital-preparedness-checklist.pdf. Also, for Infection Control Guidance, www.cdc.gov/oralhealth/infectioncontrol/statement-COVID.html.

You may voluntarily provide this Area Office with progress reports on your efforts to address COVID-19 hazards in your workplace. OSHA may return to your worksite to further examine the conditions noted above.

Enclosed is a list of available resources that may be of assistance to you in preventing work-related injuries and illnesses in your workplace. Additionally, general resources for compliance assistance are available at www.osha.gov/employers/. If you have any questions, please feel free to call [name and phone number] at [address].

Sincerely,


Area Director


**Attachment 4**

**Sample Alleged Violation Description (AVD) for Citing the General Duty Clause**

Case 5:20-cv-06063-DGK    Document 29-4    Filed 04/27/20    Page 13 of 17

This general alleged violation description (AVD) language below is presented as an example to assist Compliance Safety and Health Officers (CSHOs) in developing citations under the general duty clause, Section 5(a)(1), of the Occupational Safety and Health (OSH) Act. Citations should be drafted in consultation with the Regional Solicitor to reflect specific conditions found at establishments and to give notice to employers of the hazardous condition or practice cited.

> Section 5(a)(1) of the Occupational Safety and Health Act: The employer did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees, in that employees were not protected from the hazard of contracting the virus, SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), the cause of Coronavirus Disease 2019 (COVID-19).
>
> (a) (LOCATION) (DATE) (IDENTIFY SPECIFIC OPERATION/TASK(S) AND DEPARTMENTS, DESCRIBE CONDITIONS, INCLUDING EXPOSURE LEVELS) In the emergency room staffed with 35 employees, on 4/3/20: Three employees, a physician, nurse, and nursing assistant, were providing direct patient care performing a routine endotracheal intubation procedure - to a patient who was previously confirmed to be infected with SARS-CoV-2. The employer did not ensure that appropriate and available engineering controls were used to protect against infective respiratory droplets and aerosols, in that an available isolation room was not used for the procedure, thereby exposing adjacent unprotected workers to SARS-CoV-2.[8]
>
> **Note:** COVID-19 inspections are considered novel cases. The Directorate of Enforcement Programs (DEP) must be notified of all proposed citations and federal agency Notices that relate to a COVID-19 exposure.

**Attachment 5**

**Additional COVID-19-Related References**

Please see the following references and web-links for Coronavirus Disease 2019 (COVID-19)-related guidance and technical information. For subsequent updates, continue to refer to OSHA's COVID-19 Safety and Health Topics page located at www.osha.gov/coronavirus.

*OSHA Guidance:*

- Preventing Worker Exposure to Coronavirus (COVID-19), OSHA publication 3989), www.osha.gov/Publications/OSHA3989.pdf.
- Guidance on Preparing for COVID-19, (OSHA publication 3990), www.osha.gov/Publications/OSHA3990.pdf.
- OSHA Memorandum - *Temporary Enforcement Guidance - Healthcare Respiratory Protection Annual Fit-Testing for N95 Filtering Facepieces During the COVID-19 Outbreak*, March 14, 2020, www.osha.gov/memos/2020-03-14/temporary-enforcement-guidance-healthcare-respiratory-protection-annual-fit.
- OSHA Memorandum - *Expanded Temporary Enforcement Guidance on Respiratory Protection Fit-Testing for N95 Filtering Facepieces in All Industries During the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 8, 2020, www.osha.gov/memos/2020-04-08/expanded-temporary-enforcement-guidance-respiratory-protection-fit-testing-n95.
- OSHA Memorandum - *Enforcement Guidance for Respiratory Protection and the N95 Shortage Due to the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 3, 2020, www.osha.gov/memos/2020-04-03/enforcement-guidance-respiratory-protection-and-n95-shortage-due-coronavirus.
- OSHA Memorandum - *Enforcement Guidance for Use of Respiratory Protection Equipment Certified under Standards of Other Countries or Jurisdictions During the Coronavirus Disease 2019 (COVID-19) Pandemic*, April 3, 2020, www.osha.gov/memos/2020-04-03/enforcement-guidance-use-respiratory-protection-equipment-certified-under.
- OSHA Memorandum - *Enforcement Guidance for Recording Cases of Coronavirus Disease 2019 (COVID-19)*, April 10, 2020, www.osha.gov/memos/2020-04-10/enforcement-guidance-recording-cases-coronavirus-disease-2019-covid-19.
- OSHA Respiratory Protection standard, 29 CFR § 1910.134:
  - www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.134;
  - www.osha.gov/SLTC/respiratoryprotection/index.html.
- OSHA Personal Protective Equipment standard:
  - www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.132;
  - www.osha.gov/SLTC/personalprotectiveequipment/index.html.
- OSHA Sanitation standard:
- www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.141.

*U.S. Department of Health and Human Services (HHS):*

Centers for Disease Control and Prevention (CDC)/National Institute for Occupational Safety and Health (NIOSH)

- General COVID-19 information:
  www.cdc.gov/coronavirus/2019-ncov/index.html.
- Resources for businesses and employers:
  www.cdc.gov/coronavirus/2019-ncov/community/organizations/businesses-employers.html.

- Strategies for conserving/optimizing supply of respirators:
  - www.cdc.gov/coronavirus/2019-ncov/hcp/respirator-supply-strategies.html#ppe-respiratory-protection;
  - www.cdc.gov/coronavirus/2019-ncov/release-stockpiled-N95.html;
  - www.cdc.gov/niosh/topics/hcwcontrols/recommendedguidanceextuse.html.
- Hospital preparedness assessment tool:
  www.cdc.gov/coronavirus/2019-ncov/hcp/hcp-hospital-checklist.html.
- PPE burn rate calculator:
  www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/burn-calculator.html.
- Infection control guidance in healthcare settings:
  www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html.
- Clearance rates of isolation rooms under differing ventilation conditions:
  www.cdc.gov/mmwr/preview/mmwrhtml/rr5417a1.htm.
- Infection control guidance in dental settings:
  www.cdc.gov/oralhealth/infectioncontrol/statement-COVID.html.
- Cleaning and disinfection for community facilities:
  www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html?deliveryName=USCDC_10_4-DM24118.

*Assistant Secretary for Preparedness and Response (ASPR)*

- Strategic National Stockpile (SNS):
  www.phe.gov/about/sns/Pages/default.aspx.
  For further questions or information about the SNS, contact sns.ops@cdc.gov.

*Food and Drug Administration (FDA)*

- Emergency Use Authorization (EUA):
  www.fda.gov/media/135763/download.
- EUA clarification letter:
  www.fda.gov/media/136023/download.

*National Institutes of Health (NIH)/National Institute of Environmental Health Sciences (NIEHS)*

- National Clearinghouse for Worker Safety and Health Training:
  tools.niehs.nih.gov/wetp/.

*Federal Emergency Management Agency (FEMA)*

- Federal emergency for COVID-19:
  www.fema.gov/coronavirus.
- Guidance for frontline emergency responders:
  www.usfa.fema.gov/current_events/coronavirus.html.

*Environmental Protection Agency (EPA):*

- Guidance on disinfectants, water, and wastewater:
  www.epa.gov/coronavirus.

*Association for Professionals in Infection Control and Epidemiology (APIC):*

- Guidance on infection control:
  www.apic.org.

*American Dental Association (ADA):*

- Elective procedures guidance:
  www.ada.org/en/publications/ada-news/2020-archive/march/ada-recommending-dentists-postpone-elective-procedures.

*American College of Surgeons:*

- Elective surgery guidance:
  www.facs.org/about-acs/covid-19/information-for-surgeons/elective-surgery.

---

[1] *See* www.cdc.gov/coronavirus/2019-ncov/hcp/hcp-hospital-checklist.html. Back to text

[2] *Airborne Infection Isolation Room (AIIR):* A room designed to maintain Airborne Infection Isolation (AII). AIIRs are single-occupancy patient-care rooms used to isolate persons with suspected or confirmed infectious disease. Environmental factors are controlled in AIIRs to minimize the transmission of infectious agents that are usually spread from person to person by droplet nuclei associated with coughing or aerosolization of contaminated fluids. AIIRs should be maintained under negative pressure (so that air flows under the door gap into the room), at an air flow rate of 6–12 air changes per hour, and there should be direct exhaust of air from the room to the outside of the building or recirculation of air through a high-efficiency particulate air (HEPA) filter. Back to text

[3] CDC, *Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings*, at: www.cdc.gov/coronavirus/2019-ncov/infection-control/control-recommendations.html. Back to text

[4] *See* www.osha.gov/enforcement/directives/adm-04-00-002. Back to text

[5] Currently exempt are offices of physicians, freestanding ambulatory surgical and emergency centers, and medical laboratories. For the full list, see Appendix A to CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, updated January 21, 2020, at: www.osha.gov/enforcement/directives/cpl-02-00-051#APPA. Back to text

[6] *See* www.whitehouse.gov/presidential-actions/memorandum-making-general-use-respirators-available/. Back to text

[7] *User Seal Check Procedures,* at: www.osha.gov/laws-regs/ regulations/standardnumber/1910/1910.134AppB1. OSHA tutorial videos are available at: www.youtube.com/watch?v=Tzpz5fko-fg (English); www.youtube.com/watch?v=jgRKuRcTGeE (Spanish). Back to text

[8] Centers for Disease Control and Prevention (CDC), *Interim Infection Prevention and Control Recommendations for Patients with Suspected or Confirmed Coronavirus Disease 2019 (COVID-19) in Healthcare Settings*, at: www.cdc.gov/coronavirus/2019-ncov/infection-control/control-recommendations.html. Back to text

# UNITED STATES
# DEPARTMENT OF LABOR

Occupational Safety & Health Administration
200 Constitution Ave NW
Washington, DC 20210
📞 800-321-6742 (OSHA)
TTY
www.OSHA.gov

**FEDERAL GOVERNMENT**

White House
Severe Storm and Flood Recovery Assistance
Diaster Recovery Assistance
DisasterAssistance.gov
USA.gov
No Fear Act Data
U.S. Office of Special Counsel

**OCCUPATIONAL SAFETY & HEALTH**

Frequently Asked Questions
A - Z Index
Freedom of Information Act - OSHA
Read The OSHA Newsletter
Subscribe to the OSHA Newsletter
OSHA Publications
Office of Inspector General

**ABOUT THIS SITE**

Freedom of Information Act - DOL

Privacy & Security Statement

Disclaimers

Important Web Site Notices

Plug-ins Used by DOL

Accessibility Statement