# IN THE UNITED STATES DISTRICT COURT
# FOR WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RURAL COMMUNITY WORKERS ALLIANCE and JANE DOE, *Plaintiffs*, v. SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEATS CORP., *Defendants*. | Case No. 5:20-cv-06063-DGK |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO SMITHFIELD'S EMERGENCY MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1
II. FACTUAL BACKGROUND ........................................................................................... 3
III. ARGUMENT ..................................................................................................................... 5
   A. The Court Should Not Exercise Its Discretion to Apply the Primary Jurisdiction Doctrine Where the Relevant Federal Guidance Has Already Been Issued and the Only Question Is Its Enforcement, Which OSHA Has Disclaimed. ................................................ 5
      1. Plaintiffs' Claims Do Not Involve OSHA Expertise. ...................................................... 6
      2. There Are No Relevant OSHA Proceedings. .................................................................. 7
   B. The Court Should Not Exercise Its Discretion to Defer to State and County Health Departments That Expressly Embrace the Same CDC Guidance Plaintiffs Seek to Enforce. ........................................................................................................................................ 11
IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Pages(s)**

*Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934 (8th Cir. 2005) ..................................... 5, 6, 7

*Bilden v. United Equitable Ins. Co.*, 921 F.2d 822 (8th Cir. 1990) ........................................ 12

*Cameron v. Bouchard*,
    No. CV 20-10949, 2020 WL 1929876 (E.D. Mich. Apr. 17, 2020) ................................. 11

*Caranchini v. Kozeny & McCubbin, LLC*,
    No. 4:11-CV-0464-DGK, 2011 WL 5921364 (W.D. Mo. Nov. 28, 2011) ........................ 13

*Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*,
    621 F.3d 554 (6th Cir. 2010) ........................................................................................ 14

*Doe v. McCulloch*, 835 F.3d 785 (8th Cir. 2016) ......................................................................... 14

*Esshaki v. Whitmer*,
    No. 2:20-CV-10831-TGB, 2020 WL 1910154 (E.D. Mich. Apr. 20, 2020) ..................... 10

*Fraihat v. U.S. Immigration & Customs Enf't*,
    No. EDCV191546JGBSHKX, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020) ................. 10

*Heartland Hosp. v. Stangler*, 792 F. Supp. 670 (W.D. Mo. 1992) ............................................. 13

*Illinois Pub. Interest Research Grp. v. PMC, Inc. Through PMC Specialties Grp.*,
    835 F. Supp. 1070 (N.D. Ill. 1993) ................................................................................. 7

*Jackson v. City of Blue Springs*, 904 S.W.2d 324 (Mo. Ct. App. 1995) .................................... 13

*K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 133 F. Supp. 2d 1143 (W.D. Mo. 1998) ......................... 13

*Marshall v. Daniel Const. Co., Inc.*, 563 F.2d 707 (5th Cir. 1977) ............................................. 9

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992) .................................................... 15

*Meredith v. City of Winter Haven*, 320 U.S. 228 (1943) ............................................................ 12

*N.L.R.B. v. Tamara Foods, Inc.*, 692 F.2d 1171 (8th Cir. 1982) ................................................ 9

*Natural Res. Def. Council v. Metro. Water Reclamation Dist. of Greater Chi.*,
    No. 11-02937, 2016 WL 1298124 (N.D.Ill. Apr. 20, 2016) .............................................. 7

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ...................................................................................................... 13

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ............................................................ 12

*Reich v. Dayton Tire, a Div. of Bridgestone/Firestone, Inc.*,
    853 F. Supp. 376 (W.D. Okla. 1994) ............................................................. 9

*Reiter v. Cooper*, 507 U.S. 258 (1993) .................................................................... 5

*Ryan v. Chemlawn Corp.*, 935 F.2d 129 (7th Cir. 1991) .......................................... 7

*Scheurich v. Sw. Missouri Light Co.*, 84 S.W. 1003 (Mo. Ct. App. 1905) ................ 1

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14-CV-5029 NSR, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ................. 7

*Smith v. W. Elec. Co.*, 643 S.W.2d 10 (Mo. Ct. App. 1982) ................................ 2, 6

*Steel Institute of New York v. City of New York*, 716 F.3d 31 (2d Cir. 2013) .......... 6

*United States v. Morros*, 268 F.3d 695 (9th Cir. 2001) ......................................... 12

*Univ. of Maryland at Baltimore v. Peat Marwick Main & Co.*,
    923 F.2d 265 (3d Cir. 1991) ......................................................................... 13

*United Steelworkers of America v. Marshall*, 647 F.2d 1189 (D.C. Cir. 1980) ........ 6

*Whirlpool Corp. v. Marshall*, 445 U.S. 1 (1980) ...................................................... 9

*Wolfson v. Mutual Benefit Life Ins.*, 51 F.3d 141 (8th Cir. 1995) ........................... 15

**Statutes**

29 U.S.C. § 653(b)(4) ................................................................................................ 6

29 U.S.C. § 658(a) .................................................................................................... 8

29 U.S.C. § 658(c) .................................................................................................... 9

29 U.S.C. § 659(c) .................................................................................................... 9

**Other Authorities**

*Missouri v. The People's Republic of China*,
    No. 20-99, Compl., Dkt. No. 1 (E.D. Mo.) .................................................... 14

*UFCW v. USDA*, No. 19-2660, Dkt. No. 16 (D. Minn.) ........................................... 10

*UFCW v. USDA*, No. 19-2660, Dkt. No. 24 (D. Minn.) ........................................... 10

## I. INTRODUCTION

Plaintiffs seek a straightforward and uncontroversial remedy: an order from this Court that pursuant to Missouri's "stay at home" order, Defendants Smithfield Foods, Inc. and Smithfield Fresh Meats Corp. (together, "Smithfield") must operate their Milan, Missouri plant (the "Plant") consistent with Centers for Disease Control ("CDC") guidance, including guidance issued by the CDC this weekend regarding the operation of slaughterhouses and meatpacking plants during the COVID-19 pandemic, Dkt. No. 29-5 (collectively, "CDC guidance"). Consistent with the purpose of that guidance, and with the support of a range of public health experts, Plaintiffs argue that Smithfield's failure to comply with this guidance poses an urgent and ongoing threat to Plant workers, their community, and to the nation, including the food supply, which would be threatened further if the Plant experienced an outbreak like those that have emerged at other Smithfield plants.

Smithfield's Motion to Dismiss ("Smithfield Br."), Dkt. No. 29, does not argue that Plaintiffs have not pled the elements of their state law claims for public nuisance and breach of the duty to provide a reasonably safe workplace. Smithfield also does not argue they are somehow free to ignore Missouri's "stay at home" order or the CDC guidance that it incorporates. Instead, Smithfield asks this Court to step back and wait to adjudicate this case and protect public health and safety because it is possible that the federal Occupational Safety and Health Administration ("OSHA") or the Missouri Department of Health and Senior Services ("MDHSS") may, at some future point, decide to step in.

No law or doctrine prohibits this Court from addressing the urgent risks posed by Smithfield's operation of the Plant in a manner inconsistent with CDC guidance. Missouri courts have long allowed private plaintiffs to go to court to seek abatement of public nuisances that may cause harm to the public health, *Scheurich v. Sw. Missouri Light Co.*, 84 S.W. 1003, 1007 (Mo.

Ct. App. 1905), and to seek injunctions for breaches of the duty to provide a reasonably safe workplace, *Smith v. W. Elec. Co.*, 643 S.W.2d 10, 13 (Mo. Ct. App. 1982). This case is consistent with those bedrock principles of Missouri tort law. The doctrines of primary jurisdiction and *Burford* abstention do nothing to change that tradition.

There is also nothing to wait for. OSHA and MDHSS have already acted by pointing to the CDC guidelines as the standards that employers should follow to prevent further spread of COVID-19. Those standards have recently become even more specific and undeniable pursuant to recommendations issued by CDC and OSHA to protect workers at poultry and meat processing facilities from the disease. *See* Dkt. No. 29-5.[1] Plaintiffs allege that Smithfield's failure to follow those guidelines violates Missouri common law and requires injunctive relief. The Court need not defer to agencies who have said all they need to say on this matter to resolve Plaintiffs' claims. This is all the more true because neither OSHA nor the MDHSS is engaged in enforcement of the CDC guidance within the Milan plant and OSHA and Missouri's public statements establish they will not enforce these essential rules.

This litigation and the Court's Order of April 26, which required Smithfield to comply with CDC guidance pending a hearing on Plaintiffs' motion for a preliminary injunction, *see* Dkt. No. 20, have already resulted in concrete improvements at the Milan Plant. New social distancing protocols and mask-wearing requirements, announced for the first time on April 27, are already making workers and the surrounding community safer than they were before. Supplemental Declaration of Jane Doe ("Second Doe Decl.") ¶¶ 6-8. These changes also put the

---

[1] Importantly, this new guidance calls for many of the same reforms recommended in Dr. Robert Harrison's declaration in support of Plaintiffs' Motion for Preliminary Injunction. Dkt. No. 3-4.

lie to Smithfield's prior representations to the Court that they were already in compliance when Plaintiffs filed suit. Smithfield Br. 3.

There remains much more that Smithfield must do to comply with the CDC guidance and ensure the Plant can remain open without the disastrous spread of COVID-19 that has forced other plants to close. Dismissing this action now in hopes of enforcement by OSHA and/or MDHSS, when both have indicated enforcement action is *not* forthcoming, undermines basic rights and threatens the safety of the Nation. Neither law nor logic suggests such a result.

## II. FACTUAL BACKGROUND

Smithfield's argument that the Court need not order the requested relief because, so far, there are no *confirmed* cases of COVID-19 among workers at the Plant and relatively low numbers of cases in surrounding counties compared to other parts of the state misses the point. Smithfield Br. 3-4. Most importantly, "confirmed cases" is a peculiar standard on which to rely, because workers have already shown symptoms, Dkt. No. 3-5 ¶ 4 ("First Doe Decl.") (identifying at least 8 workers with symptoms), and Smithfield continues to refuse to offer the workers testing, Second Doe Decl. ¶ 13. A public health and slaughterhouse expert explains to the Court that without the relief requested here, spread of the disease in the Plant is "inevitable." *E.g.*, Declaration of Dr. Melissa Perry ("Perry Decl.") ¶¶ 9-10, 32.

Without Court intervention, Milan will likely join a long line of slaughterhouses around the country to become the source of a virus cluster. This morning, Smithfield's packing facility in Clinton, North Carolina reported two new positive cases.[2] Just this past Monday, Crete, Nebraska officials stated Smithfield's plant there would be closed because of an outbreak

---

[2] Chris Berendt, *Virus cases at Smithfield rise to seven*, THE SAMPSON INDEPENDENT (Apr. 29, 2020), https://www.clintonnc.com/news/48498/virus-casesat-smithfieldrise-to-seven.

3

(although it now appears Smithfield may be keeping that plant open despite the health and safety concerns).[3] Last week, a report examining meat and poultry plants determined that 150 such plants are located in counties that have an infection rate higher than 75% of the United States.[4] Plaintiffs filed this suit seeking solely injunctive relief to bring the Plant into compliance with existing public health guidance so that it could remain in operation, and so that the residents of the surrounding counties would not join the list of other rural areas that have turned into COVID-19 hot spots because they are home to meat processing facilities.

Plaintiffs' efforts to enforce Missouri law appear to be working already. In response to the suit, this Court Ordered Smithfield on April 26 to "comply with all guidance from CDC and other public authorities." Dkt. No. 20, at 3. Then, on April 27, a new sign appeared in the plant stating that masks must be worn at all times. Second Declaration of Axel Fuentes ("Fuentes Decl.") ¶¶ 4-5 & Ex. A. That same day, another new sign provided an updated protocol for clock-in and -out procedures to permit greater social distancing. *Id* ¶ 6; Second Doe Decl. ¶ 7.

However, Smithfield's Milan workers remain without some basic protections. They continue to stand shoulder-to-shoulder on the line. Second Doe Decl. ¶ 5. Hallways, restrooms, and break areas remain crowded, with workers "regularly closer than 6-feet apart." *Id.* ¶ 9. Smithfield has failed to provide handwashing breaks or allow workers to step off the line to blow

---

[3] Jennifer Shike, *Smithfield Foods Slows Production at Pork Plant in Crete, Nebraska,* AGWEB (Apr. 27, 2020), https://www.agweb.com/article/smithfield-foods-shutters-pork-plant-crete-nebraska.

[4] Kyle Bagenstose, Sky Chadde & Matt Wynn, *Coronavirus at meatpacking plants worse than first thought, USA TODAY investigation finds: Coronavirus closed Smithfield and JBS meatpacking plants. Many more are at risk. Operators may have to choose between worker health or meat in stores*, USA TODAY (Apr. 22, 2020), https://www.usatoday.com/in-depth/news/investigations/2020/04/22/meat-packing-plants-covid-may-force-choice-worker-health-food/2995232001/.

their noses. *Id.* ¶ 10. Smithfield's actual enforcement of its stated mask policy appears non-existent. *Id.* ¶¶ 3-4. Smithfield provides no paid sick leave and encourages workers to come in sick. *Id.* ¶¶ 12, 15. And Smithfield has not provided for testing or any system of contact tracing. *Id.* ¶ 13. These facts remain contrary to what Dr. Robert Harrison, Dr. Melissa Perry, and the CDC explain is necessary to keep the Plant from becoming an incubator for disease. *See* Declaration of Dr. Robert Harrison ("Harrison Decl."), Dkt. No. 3-4. In fact, Dr. Perry explains that immediately correcting these conditions is both practical and essential. Perry Decl. ¶¶ 8-32.

### III. ARGUMENT

**A. The Court Should Not Exercise Its Discretion to Apply the Primary Jurisdiction Doctrine Where the Relevant Federal Guidance Has Already Been Issued and the Only Question Is Its Enforcement, Which OSHA Has Disclaimed.**

Primary jurisdiction "is to be 'invoked sparingly, as it often results in added expense and delay.'" *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (quoting *Red Lake Bank of Chippewa Indians v. Barlow*, 846 F.2d 474, 477 (8th Cir. 1988)). The district court should dismiss a case and refer a matter to a federal agency pursuant to the primary jurisdiction doctrine only where "the parties would not be unfairly disadvantaged." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). This is not such a case.

Here, Jane Doe and her coworkers, including many Rural Community Workers Alliance ("RCWA") members, as well as the communities where they live, have already benefitted from the changes instituted at the Plant in response to this Court's Order. Plaintiffs would be unfairly disadvantaged if the Court withdrew its supervisory presence, which ensures that Smithfield will continue complying with applicable OSHA and CDC guidance. This is particularly the case where Smithfield relies entirely on an "informal" letter they have received from OSHA, that cannot and—based on OSHA's statements—will not result in federal enforcement. Declaration

5

of Dr. David Michaels ("Michaels Decl.") ¶¶ 13-14; Declaration of Ann Rosenthal ("Rosenthal Decl.") ¶¶ 12-14.

### 1. Plaintiffs' Claims Do Not Involve OSHA Expertise.

The Eighth Circuit explains that a core objective of this prudential doctrine is to take advantage of "agency expertise," *Alpharma*, 411 F.3d at 938, but here, Plaintiffs ask the Court to consider claims that call for judicial, not administrative, resolution. Plaintiffs' public nuisance claims seek a remedy against business operations that cause a harm to the public generally. OSHA's jurisdiction focuses on the workplace. It has no authority to promulgate standards to protect the general public. *Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31, 33 (2d Cir. 2013) ("the Act does not protect the general public, but applies only to employers and employees in workplaces"); *accord* Michaels Decl. ¶ 8; Rosenthal Decl. ¶ 5. And although Missouri's cause of action for violation of the right to a safe workplace certainly relates to occupational safety, that claim has long formed the basis for injunctive relief in court, even subsequent to the creation of OSHA in 1970. *See, e.g.*, *Smith v. W. Elec. Co.*, 643 S.W.2d 10, 12-13 (Mo. App. 1982).[5] Plaintiffs bring claims under state common law doctrines that OSHA's regulatory scheme does not displace, and there is no reason for this Court to defer to the primary jurisdiction of OSHA before resolving those claims. *See* 29 U.S.C. § 653(b)(4); *United Steelworkers of America v. Marshall*, 647 F.2d 1189, 1235-36 (D.C. Cir. 1980) (OSHA leaves "state schemes wholly intact as a legal matter"). In fact, primary jurisdiction is not applicable where plaintiffs do not seek to

---

[5] The Missouri court expressly rejected an argument that it should defer and allow OSHA to address the problem because it could not identify an "OSHA standard which would appear to cover tobacco smoke." *Smith*, 643 S.W.2d at 14. Similarly, OSHA "has not adopted a specific standard that protects employees from the risks of infectious disease like COVID-19." Michaels Decl. ¶ 10.

enforce a federal statute or regulation but bring "an independent state law cause of action for negligence and strict liability." *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 132 (7th Cir. 1991).

Allowing Plaintiffs claims to proceed will also further national "consistency"—the other rationale for primary jurisdiction—because any relevant OSHA activity has already occurred, and the Court already has the benefit of the agency's "expertise." *See Alpharma*, 411 F.3d at 938. In particular, OSHA, in conjunction with the CDC, has published detailed guidelines on how to mitigate the spread of COVID-19 in meat processing facilities. Dkt. No. 29-5 (guidance). Plaintiffs simply request that the Court require Smithfield to comply with those guidelines, as Drs. Harrison and Perry recommend. Eighth Circuit precedent instructs that courts should not defer to agencies under the primary jurisdiction doctrine when the court is asked to analyze what an agency has already done, not substitute its judgment as to what an agency might or should do in the future. *Alpharma*, 411 F.3d at 939 ("The question of whether Pennfield's BMD has been approved as safe and effective is much different from the question of whether Pennfield's BMD should be approved as safe and effective, and it is only the latter that requires the FDA's scientific expertise."); *see also Illinois Pub. Interest Research Grp. v. PMC, Inc. Through PMC Specialties Grp.*, 835 F. Supp. 1070, 1076 (N.D. Ill. 1993) (declining to defer to agency's primary jurisdiction where the court was not being asked to set standards but merely "to enforce existing standards"); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-5029, 2015 WL 2168374, at *13 (S.D.N.Y. May 7, 2015) (declining to defer to agency's primary jurisdiction where the "claims seek to hold Defendant to existing regulations, not proposed regulations").

### 2. There Are No Relevant OSHA Proceedings.

Further, there is no administrative activity to which the Court could defer—as is necessary for the primary jurisdiction doctrine to apply. *See*, *e.g.*, *Natural Res. Def. Council v.*

7

*Metro. Water Reclamation Dist. of Greater Chi.*, No. 11-02937, 2016 WL 1298124, at *4 (N.D. Ill. Mar. 31, 2016) (holding primary jurisdiction doctrine does not apply because defendant did "not identify with precision any relevant proceedings to which this Court should defer for the resolution of the question presented."). Smithfield argues that an April 22 letter from OSHA's regional administrator suggests that "OSHA is already in the process of exercising its jurisdiction at the Plant." Smithfield Br. 1. But that letter responds to a specific workplace injury that occurred on April 15 and says nothing about COVID-19. Dkt. No. 29-2. The sole reference to the virus appears in a generic COVID-19 questionnaire following a more specific questionnaire addressing the April 15 incident. *Id.*

Moreover, the April 22 letter represents an inquiry, not an inspection, and does not suggest an inspection is imminent. It is conceivable that under OSHA's regulatory regime this written exchange of information, called an investigation, could lead OSHA to request an in-person inspection. Michaels Decl. ¶¶ 15-16. However, the interim guidance OSHA has issued for its administrators during the pandemic makes this unlikely; OSHA has expressly stated its policy is *not* to inspect meat packing plants. Michaels Decl. ¶¶ 13-14; Rosenthal Decl. ¶ 13; *see also* Dkt. No. 29-4 (guidance).[6] An inspection is ***a prerequisite*** to any OSHA action that could require a workplace to abate unsafe conditions. 29 U.S.C. § 658(a); *see also* Michaels Decl. ¶ 15; Rosenthal Decl. ¶ 14. Furthermore, if such an inspection did occur, it could in turn lead to a

---

[6] Indeed, Dr. Michaels, the longest serving head of OSHA in its history, and a current scholar on its practices states that throughout the crisis "OSHA has failed to enforce any of its limited requirements that could conceivably protect meatpacking workers from illness." Michaels Decl. ¶ 8; *see also id.* ¶¶ 10, 12 (explaining OSHA's only potentially applicable standards leave their implementation to the discretion of the employer and that OSHA has not taken any steps to make them mandatory in response to COVID-19). *See also* Rosenthal Decl. ¶¶ 10-12 (stating substantially the same).

citation issued anytime in the next six months, which would then be reviewable by the independent Occupational Safety and Health Review Commission before it could be enforced. 29 U.S.C. § 658(c), 659(c); *see also* Michaels Decl. ¶¶ 16-17; Rosenthal Decl. ¶¶ 15-17.

Dr. Michaels and Anne Rosenthal, both of whom served long stints within high levels of OSHA, are of the opinion that written investigation letters like the one sent to Smithfield on April 22 rarely, if ever, lead to citations, enforcement actions, or penalties, particularly in light of OSHA's stated non-enforcement policy against meat packing plants. Michaels Decl. ¶¶ 13-16. Rosenthal Decl. ¶¶ 11-3. Michaels and Rosenthal also opine that even if the letter did lead to an inspection and to any kind of enforcement on a reasonable timeline, none of the specific OSHA standards spelled out on page 13 of Smithfield's motion would be sufficiently strong to allow OSHA to enforce the CDC guidelines, even the guidelines that OSHA has helped to promulgate. Michaels Decl. ¶¶ 10-12; Rosenthal Decl. ¶¶ 8-9.

Smithfield argues that the Department of Labor could seek an emergency injunction to enforce OSHA standards even absent an inspection, but that argument is belied by statute and Supreme Court and Eighth Circuit law. 29 U.S.C. § 662(c) (noting that the Secretary of Labor will request an injunction only in response to a recommendation from an in-person inspector); *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 8-9 (1980) (explaining that OSHA's emergency injunction process begins with an inspection); *N.L.R.B. v. Tamara Foods, Inc.*, 692 F.2d 1171, 1181 (8th Cir. 1982) (same). Furthermore, Smithfield points to no case where this power was actually used. Plaintiffs could locate only two in the entire country, neither of which was decided in the past 25 years. *Reich v. Dayton Tire, a Div. of Bridgestone/Firestone, Inc.*, 853 F. Supp. 376, 378-79 (W.D. Okla. 1994) (Secretary issued request for injunction following multiple inspections over an eleven-month period); *Marshall v. Daniel Const. Co., Inc.*, 563 F.2d 707,

710-15 (5th Cir. 1977) (noting that employee's right under OSH Act is limited to requesting an inspection, and inspector's right is limited to recommending that the Secretary seek an emergency injunction from the court in the event that dangerous conditions are found).[7]

Finally, Smithfield attempts to frighten this Court with claims that the injunctive relief Plaintiffs are seeking is "truly unprecedented" because it gives Plaintiffs' experts too much control over crafting a remedy. Smithfield Br. 14. Although some courts have declined to issue preliminary injunctive relief responding to emergency conditions caused by COVID-19, many other courts have granted such relief, even when it required detailed changes to facility operations recommended by plaintiffs and their experts. *See, e.g.*, *Fraihat v. U.S. Immigration & Customs Enf't*, No. 19-1546, 2020 WL 1932570, at *21-*29 (C.D. Cal. Apr. 20, 2020) (granting preliminary injunction mandating that ICE revisit custody determinations, including considering release for all persons in ICE detention whose age or health conditions place them at increased risk due to the COVID-19 pandemic); *Esshaki v. Whitmer*, No. 20-10831-, 2020 WL 1910154, at

---

[7] Last night, the President issued an Executive Order stating that the United States Department of Agriculture ("USDA") would be protecting worker health and safety at meat packing plants. *See* "Executive Order on Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19," The White House (April 28, 2020), https://www.whitehouse.gov/presidential-actions/executive-order-delegating-authority-dpa-respect-food-supply-chain-resources-national-emergency-caused-outbreak-covid-19/. This order does not impact these proceedings. Importantly, twice in the last six months USDA expressly disclaimed that its Food Safety and Inspection Service, which is its division that works in the plants, has *any* role to play in worker safety and thus any expertise on how to protect workers. USDA Brief, *UFCW v. USDA*, No. 19-2660, Dkt. No. 16, at 29 (D. Minn.) ("[N]or are issues of workplace safety reasonably related to FSIS's food safety mission" (citing *Dawkins ex rel. Estate of Dawkins v. United States*, 226 F. Supp. 2d 750, 757 (M.D.N.C. 2002)); USDA Reply, *UFCW v. USDA*, No. 19-2660, Dkt. No. 24, at 15 (D. Minn.) ("[W]orker safety falls outside FSIS's regulatory authority" and therefore USDA defers to OSHA). Moreover, the Executive Order references OSHA guidance—not USDA promulgating any new standard—confirming that the Court already has before it whatever expertise the government can provide.

*1 (E.D. Mich. Apr. 20, 2020) (granting preliminary injunction reducing Michigan signature requirement for inclusion on ballot by 50% in light of COVID-19 pandemic); *Cameron v. Bouchard*, No. 20-10949, 2020 WL 1929876, at *2 (E.D. Mich. Apr. 17, 2020), modified on reconsideration, No. 20-10949, 2020 WL 1952836 (E.D. Mich. Apr. 23, 2020) (granting TRO requiring jail to implement certain minimum measures to protect against spread of COVID-19, including ensuring access to no-cost soap and hand sanitizer, ensuring staff wash hands and wear PPE, conduct testing, and provide for "adequate spacing of six feet or more between people incarcerated, to the maximum extent possible, so that social distancing can be accomplished").

Here, where Plaintiffs' experts' recommendations track closely if not completely CDC guidance, including recent guidance specific to the meat processing industry, Court action will not be radical. Plaintiffs merely request the Court extend the Order it already issued and allow an inspection by Plaintiffs' designated expert to determine whether the guidelines are being followed and if additional measures may be necessary given the particular feature of the Plant. In light of the certain crisis that will result if Smithfield continues to delay protecting its workers, it is Smithfield's request the Court decline to act that is extraordinary. *See generally* Perry Decl.

**B. The Court Should Not Exercise Its Discretion to Defer to State and County Health Departments That Expressly Embrace the Same CDC Guidance Plaintiffs Seek to Enforce.**

With its primary jurisdiction argument, Smithfield suggests that the workplace safety issues at stake in this case are so uniquely committed to the expertise of federal OSHA that this Court should dismiss the matter and defer to OSHA. With its *Burford* abstention argument, Smithfield makes the entirely contradictory suggestion that the matters at stake here are so bound up with the *state* public health regulatory scheme that the federal courts should defer to the State of Missouri, its agencies, and its courts in this matter. Smithfield's self-defeating *Burford* argument provides no basis to dismiss Plaintiffs' claims.

With respect to *Burford* abstention, the Supreme Court has instructed that "federal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress" and may decline to do so only "under exceptional circumstances." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citations and internal quotations omitted). The Eighth Circuit has likewise stated "*Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 825 (8th Cir. 1990). *Burford* applies only where the state has developed a centralized "system of thorough judicial review" specific to the complex regulatory scheme at issue. *Burford v. Sun Oil Co.*, 319 U.S. 315, 325 (1943); *see also United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) (applying *Burford* abstention only when a state has consolidated all disputes regarding the regulatory scheme at issue into a single, designated court). This balancing of interests "only rarely favors abstention." *Quackenbush*, 517 U.S. at 728. Where, as here, federal court jurisdiction is conferred by diversity of citizenship, even if there were "difficult or uncertain" questions of state law (and there are not) the Supreme Court has made clear that *Burford* supplies no basis to relinquish the jurisdiction Congress has conferred. *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943).

In lieu of actually meeting the doctrine, Smithfield suggests vaguely that "this matter should be handled by state and county public health agencies." Smithfield Br. 17. But the fact that state and local health agencies have the authority, in theory, to enforce public health rules does not amount to a centralized "system for thorough judicial review" of disputes relating to the common law rights that Plaintiffs assert here. Instead, to enforce their rights, Plaintiffs must rely on their time-honored ability to petition a court, including a federal court where federal

jurisdiction otherwise lies. *See, e.g.*, *Jackson v. City of Blue Springs*, 904 S.W.2d 324, 329 (Mo. App. 1995); *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 33 F. Supp. 2d 1143, 1156 (W.D. Mo. 1998). The alternative to federal courts exercising their jurisdiction over cases like these is that these cases will go to state court where they are just as likely to be heard by courts without public health expertise in these matters and just as likely to yield inconsistent outcomes. *Compare Burford*, 319 U.S. at 326 ("To prevent the confusion of multiple review of the same general issues, the [Texas] legislature provided for concentration of all direct review of the Commission's orders in the State district courts of Travis County.").

Furthermore, although state courts may have jurisdiction to hear Plaintiffs' claims, *Burford* abstention is only appropriate "[w]here timely and adequate state-court review is available." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989); *Univ. of Maryland at Baltimore v. Peat Marwick Main & Co.*, 923 F.2d 265, 271 (3d Cir. 1991). In this case, remanding this issue to state court would require delay that Plaintiffs and the public generally cannot afford.

The Court's exercise of its jurisdiction here likewise "would [not] disrupt a state administrative process." *Heartland Hosp. v. Stangler*, 792 F. Supp. 670, 672 (W.D. Mo. 1992) (quoting *Cty of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). It may be true that public health agencies in Missouri have expertise regarding public health matters and have a responsibility for exercising public enforcement. But the "exceptional circumstances" warranting abstention apply only where the party seeking abstention can point to a specific state administrative process that will be disrupted by the federal proceedings. *Caranchini v. Kozeny &*

*McCubbin, LLC*, No. 11-0464, 2011 WL 5921364, at *5 (W.D. Mo. Nov. 28, 2011) (Kays, J.). Smithfield identifies no such process here.[8]

Assuming there was a special forum to which the Court could defer (and there is not), there is also no reason to defer as nothing in Missouri's law of public nuisance or its right to a safe workplace tort is "particularly complicated," and the Court's exercise of its jurisdiction here would not frustrate Missouri's interest in managing public health issues. *Doe v. McCulloch*, 835 F.3d 785, 788 (8th Cir. 2016) (declining to apply *Burford* abstention to question of Missouri state law). Aside from general principles of Missouri tort law, the only state law at issue here is the "stay at home" order issued by the Governor in March. That already-promulgated order provides a relatively straightforward mandate. It includes multiple references to "CDC guidance," Dkt. No. 29-1 ("stay at home" order), and makes the same recommendations regarding social distancing, even for essential businesses that must remain open, that the CDC and OSHA have emphasized in their guidance documents, including guidance documents specific to the meat processing industry, *see* Dkt. No. 29-4. An established state regime that actually relies on federal guidance, which is what Plaintiffs seek to enforce, is not a basis for *Burford* abstention.

Smithfield seeks to manufacture a complex question by pointing to language in the "stay at home" order that designates meatpacking Plants as essential operations that should stay open

---

[8] It bears mentioning that Missouri's attorney general saw no need to oforgo litigation or even to litigate in state court because of the "active[] involve[ment]" of state and local public health agencies, *See* Smithfield Br. 17. He filed a lawsuit in federal district court against the People's Republic of China, asserting Missouri common law claims of public nuisance. *Missouri v. The People's Republic of China*, No. 20-99, Compl., Dkt. No. 1 (E.D. Mo.). The chief law enforcement officer of the state properly concluded that the federal interests in "in affording foreign litigants a neutral forum for the adjudication of state law claims against them" outweigh any state law interests regarding coherent application of its public nuisance doctrine. *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 568 (6th Cir. 2010).

14

and suggesting Plaintiffs' request that Smithfield provide for social distancing would prevent Smithfield from operating. Smithfield Br. 17. Not so. Plaintiffs do not seek to close the Plant. Smithfield and its workers can continue operations while complying with social distancing requirements. In fact, that may be the *only* way that Smithfield can operate the Plant safely. Dr. Perry, an occupational health and safety professor and past president of the American College of Epidemiology, states that in her professional opinion, workers on meat production lines must stand at least six feet apart in order to perform their jobs safely during the current pandemic. If they do not, disease *will* spread in the Plant and into the surrounding community. Perry Decl. ¶¶ 9-13 ("Without social distancing, it is my expert opinion that the spread of COVID-19 in slaughterhouses and meat packing plants is inevitable."). Requiring social distancing in this case, therefore, would not be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *Wolfson v. Mutual Benefit Life Ins.*, 51 F.3d 141, 144 (8th Cir. 1995). Smithfield fails "to prove that the exercise of federal jurisdiction would in any way frustrate the state's interests on the facts of this case" as is necessary for *Burford* abstention. *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1507 (8th Cir. 1992).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Smithfield's motion to dismiss.

April 29, 2020                    Respectfully Submitted,

By: /s/ David S. Muraskin
David S. Muraskin (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
Stephanie K. Glaberson (*pro hac vice*)
Public Justice
1620 L. St, NW, Suite 630
Washington, DC 20036
Telephone:   (202) 797-8600
Facsimile     (202) 232-7203
Email: dmuraskin@publicjustice.net
Email: kgilbride@publicjustice.net

Gina Chiala              #59112
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone:    (816) 278-1092
Facsimile:     (816) 278-5785
Email:  ginachiala@jobsandfreedom.org

David Seligman (pro hac vice)
Juno Turner(pro hac vice)
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Telephone:    (720) 441-2236
Facsimile:     (303) 957-2289
Email: david@towardsjustice.org
Email: juno@towardsjustice.org
***Attorneys for Plaintiffs***