In the United States District Court
Western District of Missouri

RURAL COMMUNITY WORKERS
ALLIANCE and JANE DOE,

*Plaintiffs*,

v.

SMITHFIELD FOODS, INC. and SMITHFIELD
FRESH MEATS CORP.,

*Defendants*.

### Declaration of Ann Rosenthal

I, Ann Rosenthal, declare as follows:

1. From 1988 until June, 2018, I worked as a managing attorney in the Office of the United States Solicitor of Labor, Division of Occupational Safety and Health. At the time of my retirement in 2018, I was Associate Solicitor for Occupational Safety and Health, the chief lawyer for the Occupational Safety and Health Administration ("OSHA").

2. My experience at OSHA included providing legal advice on both enforcement and regulatory activities, as well as managing OSHA litigation in Federal district and appellate courts and before the Occupational Safety and Health Review Commission. My office was a necessary participant in all of OSHA's activities in these areas, and was required to approve its relevant policies.

3. Drawing on that background and experience I state as follows.

4. OSHA has extremely limited tools to protect slaughterhouse and meat packing workers during the COVID-19 pandemic and, based on my observation, OSHA has not been using even those tools.

1

5. Moreover, OSHA has no authority to cite employers who fail to protect members of the community from infectious disease.

6. The Occupational Safety & Health Act imposes two types of duties on employers. Employers are required to comply with OSHA standards. 29 U.S.C. § 654(a)(2). And, employers are required to comply with the OSH Act's general duty clause, which requires employers to provide their employees "with employment and places of employment free from recognized hazards." 29 U.S.C. § 654(a)(1).

7. Regarding the first type of duty, no OSHA standard addresses the risk of infectious diseases like COVID-19.

8. To the extent any OSHA standards could conceivably protect workers from anything related to COVID-19 they are extraordinarily weak, such as those governing sanitation and housekeeping 29 C.F.R. §§ 1910.22, 141, which require minimal effort by employers to protect their workers by keeping the workers and their workplaces clean; OSHA's personal protective equipment standard 29 C.F.R. § 1910.132,134, which applies when an employer determines its employees face a "hazard." Because these standards require an employer to determine what type of protective equipment *they* think workers need, they are difficult to enforce. Several of these regulatory provisions date from the 1970s and none were drafted to protect workers from the spread of infectious diseases.

9. OSHA could theoretically issue guidance advising employers on when and how to implement these regulations during the current pandemic. It has done no more than issue non-binding statements that it believes these standards may apply. The recent

2

guidance OSHA published with the Centers for Disease Control (CDC) relating to the meatpacking industry are an example of general, non-binding statements by OSHA.

10. I have been examining OSHA's steps during the pandemic and it has taken no steps that I am aware of to enforce its standards.

11. When OSHA has not issued a standard regulating a hazard, it may rely on the general duty clause to protect employees from "recognized hazards." In the case of the COVID-19 pandemic, OSHA could announce its intent to cite employers under the general duty clause if they do not implement appropriate protective measures, such as those recommended by the Centers for Disease Control guidance and OSHA itself. To issue a general duty clause citation, OSHA must have evidence that workers are exposed to a hazard that is likely to cause death or serious physical harm, that the hazard is "recognized," either by the individual employer or by its industry, and that there is a feasible way to abate the hazard. OSHA cannot enforce the guidelines; however it can use them as evidence that the hazard which the guidelines address is "recognized," and that there are feasible methods to abate it. Currently, OSHA is not using the general duty clause to require that employers outside the health care and emergency response sectors follow such guidelines. See OSHA Interim Enforcement Response Plan for Coronavirus Disease-2019-Covid-19

12. Instead, OSHA has issued guidance advising its inspectors to exercise "enforcement discretion" when addressing complaints relating to COVID-19 outside the health care and emergency response sectors. *Ibid.; see also* OSHA Enforcement Discretion when Considering Employers Good Faith Efforts During the Covid-19 Pandemic. Based on my experience at the agency, I know that "enforcement discretion"

3

is a term OSHA uses it to describe situations where it will not take enforcement action. I interpret this guidance to mean that OSHA will not cite employers involved in food processing for violations of the OSH Act relating to COVID 19 risks.

13. Moreover, OSHA's guidance indicates that it likely will not even conduct inspections in "medium" risk facilities, such as meatpacking plants. Instead, OSHA's guidance indicates that when its Area Offices learn of potentially hazardous conditions in a meatpacking plant, they are to respond informally ("non-formal phone/fax" in OSHA parlance). This means that OSHA will notify the employer of what it has learned and ask the employer to respond. OSHA also uses the term Rapid Response Investigation (RRI) to describe this practice, but this term should not be interpreted as OSHA conducting any kind of investigation itself. OSHA's notification to the employer does not require the employer to take any action to abate hazards. In other words, these informal letters from OSHA do not impose an enforceable duty on an employer.

14. If OSHA determines that an employer's response to its informal inquiry is not adequate, OSHA may initiate an on-site inspection. I have checked OSHA's online inspection database and it shows that OSHA has not initiated an inspection at Smithfield's Milan facility. In my experience, OSHA will not cite such a facility for violations of the general duty clause or the Agency's sanitation or personal protective equipment standards without first conducting an on-site inspection.

15. OSHA citations are not issued immediately after an inspection is completed.

16. In the case of COVID 19, OSHA has advised its area offices that any proposed citations must be reviewed in the National Office before being issued. In my

4

experience from working at the agency, such National Office review means that no citations will be issued—even if OSHA finds that an employer is exposing its workers to serious risk of contracting COVID-19—for several months at least, and usually closer to six months.

17. Even if OSHA were to issue a citation several months from now, an employer has no duty to abate the hazards OSHA has identified until there is a final order of the Occupational Safety & Health Review Commission. 29 U.S.C. § 659(b). Such a final order is deemed to have been issued 15 days after OSHA issues a citation, if the employer does not contest the citation. However, if the employer contests the citations, an employer has no duty to abate the hazard OSHA has cited until proceedings before OSHRC have concluded. In my experience, OSHRC proceedings can delay abatement for several years, at least, and more than a decade at most. *See, e.g., Dayton Tire v. Secretary*, 671 F.3d 1249 (D.C. Cir. 2012).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed April 28, 2020 in Bethesda, MD.

Ann Rosenthal

April 28, 2020
Dated

5