# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RURAL COMMUNITY WORKERS ALLIANCE and JANE DOE,<br><br>*Plaintiffs,*<br><br>v.<br><br>SMITHFIELD FOODS, INC. and SMITHFIELD FRESH MEAT CORP.,<br><br>*Defendants.* | Civil Action No: 5:20-cv-6063-DGK |

## SUPPLEMENTAL DECLARATION OF TIMMY D. MESSMAN

Pursuant to 28 U.S.C. §1746, I, Timmy D. Messman, declare as follows:

1. My name is Tim Messman. I am over the age of eighteen, capable of making this Declaration, and personally acquainted with the facts herein stated. If called as a witness, I could and would competently testify to the matters stated in this Declaration.

2. This Supplemental Declaration is in follow up to my Declaration dated April 28, 2020 and is intended to update and clarify statements made in my April 28 Declaration and respond to the supplemental declarations of Plaintiff Jane Doe and Mr. Axel Fuentes.

### A. Update and Clarification of Paid Leave Policy

3. As of Tuesday, April 28, Smithfield expanded the symptoms of COVID-19 for which it instructs employees to self-monitor, and which qualify for paid leave, to reflect the CDC's revised symptoms list. Specifically, in addition to COVID-19 symptoms of fever, cough, and shortness of breath, employees are instructed to monitor for secondary symptoms of chills, repeated shaking with chills, muscle pain / extreme fatigue, headache, sore throat, and/or loss of taste or smell. Employees with a fever of 100.4 degrees Fahrenheit, cough, or shortness of breath or two or more secondary symptoms are directed to stay at home for 14 days of paid leave.

Employees taking this leave remain eligible for Smithfield's Responsibility Bonus. Smithfield issued the written version of its updated Policy for employee screening and its related Questionnaire—both of which reflect the secondary symptoms identified above—on Thursday, April 30. Both documents are attached hereto as **Exhibit 9**.

4. My April 28 Declaration stated as follows: "No employee is penalized in any way for missing work as a result of a COVID-19-related quarantine. No employee receives attendance points for missing work as a result of a COVID-19 related quarantine. Employees staying home for this purpose receive paid leave and remain eligible for Smithfield's Responsibility Bonus, regardless of whether they provide a doctor's or nurse's note." Employees considered on "COVID-19 related quarantine" include those employees who report to the Plant that they are experiencing symptoms of COVID-19. Such employees are directed to stay at home for 14 days of paid leave or until they receive (1) a negative COVID-19 test result, or (2) documentation from their physician stating that the symptoms were related to a diagnosis other than COVID-19. To be clear, *all employees who miss work for a reason related to COVID-19 are paid and remain eligible for Smithfield's Responsibility Bonus*.

### B. Responses to Certain Supplemental Assertions of Plaintiff Jane Doe and Mr. Axel Fuentes

5. On Saturday, April 25, the Plant began replacing plastic barriers in the production area. We had planned to do so since the time we hung the original plastic. This is true because some of the original plastic was dark in color and blocked light from passing through. The dark plastic was a material we had on hand and was intended to be only a temporary solution until an alternative material could be obtained. The Plant has since secured sturdier, clear plastic, which we are installing throughout the Plant. We view this as a more permanent solution than the prior plastic used.

6. Since my earlier Declaration, we have posted additional signs throughout the plant reminding employees to wear masks at all times. The signs remind employees that they are required to wear masks in all locations of the Plant—not just on the production floor.

7. The Plant distributed a memo on Monday, April 27 announcing a new policy that provides a 15-minute grace period for clocking in and expands the available time clocks for clocking in and out. These policy changes were implemented on Wednesday, April 29. Typically, employees are required to clock in and out at a particular time, using a particular clock. Under the new policy, employees (1) have a 15-minute window for clocking in, and (2) can clock in and out at any clock location. The purpose of these changes is to reduce crowding and promote distancing during clocking in and out times. The two-day delay in implementation was a result of changes to our electronic timing system that IT staff had to implement before employees could clock in or out at clocks other than their normally assigned clock.

8. On Monday, April 27, the Plant erected another tent on the lawn to expand the cafeteria seating area and further facilitate distancing during lunch and other breaks.

9. On Tuesday, April 28, the Plant reduced the number of hogs harvested each day, and as a result, reduced employee hours. These changes mean that workers spend fewer hours at the Plant each day, and distancing is improved. For some employees, this change means that they will leave the Plant before lunch, thus reducing crowding in the cafeteria.

10. To ease any burden on employees resulting from these shortened hours, the Plant will increase pay an extra $5/hour. The increased compensation will be available to any employee who takes leave as a result of COVID-19 symptoms or for any other COVID-19 related reason. The increased compensation is not available to employees who take personal days unrelated to COVID-19.

11. The Plant did not implement any of the changes identified above as a result of Plaintiffs' lawsuit. Instead, these changes are part of the Plant's continuously evolving response to COVID-19 as we comply with the President's Executive Order mandating that the Plant continue to operate, implement evolving CDC and OSHA guidelines, obtain additional materials and supplies, and identify response strategies that are tailored to our facility and the realities of meat processing operations.

12. I understand that Plaintiff Jane Doe asserts that she cannot provide her name for this lawsuit because she is aware of other employees who have sued the Plant and allegedly faced negative consequences and because she has been "harassed" by her supervisors for "rais[ing] much more minor concerns than those" raised in this lawsuit. Doe Decl. ¶ 15. Mr. Fuentes raises similar concerns on Plaintiff Jane Doe's behalf. Fuentes Decl. ¶ 13. At Smithfield, the health and safety of employees and consumers is our top priority at all times, and we believe that safety is everyone's job. We have an employee and management safety committee to raise and discuss safety improvement opportunities. We have a recognition program that rewards employees' safety improvement ideas. We have no tolerance for retaliation of any kind. The Company's no-retaliation mandate is included in numerous written policies, including our safety policies. If Plaintiff Jane Doe had been "harassed" for raising any safety concerns in the past, she could have raised this issue to management at the Plant or directly to the Company's headquarters through our hotline. In memory, the Plant has not received any complaints regarding harassment or retaliation related to safety complaints, and no one from the Milan plant has called the Company's hotline to report such complaints since the hotline was created five years ago.

13. Exhibit 9 is a true, correct, and complete copy of a document that was generated, received by, or otherwise in the custody or control of Smithfield employees in the regular course

of business. Exhibit 9 is kept in the ordinary course of the regularly conducted business of Smithfield. Exhibits 9 was created at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on May 1, 2020 at Milan, Missouri.

_____<br>
Timmy D. Messman

# Exhibit 9



**COVID-19 Protocols for Potential and Positive Exposure**
Updated: April 30, 2020

In accordance with applicable guidance, Smithfield has instituted the following protocols for employees who exhibit symptoms of COVID-19, who have been exposed to COVID-19, and employees who have tested positive for COVID-19. These protocols are effective immediately and until further notice.

### Symptoms of COVID-19
Persistent Dry Cough
Fever*
Difficulty breathing

Or a combination of 2 or more of the following symptoms:
Chills
Repeated shaking with chills
Muscle pain / extreme fatigue
Headache
Sore Throat
Loss of taste or smell

\* a fever is a body temperature of 100.4 degrees Fahrenheit/38 degrees Celsius or higher
More information: https://www.cdc.gov/coronavirus/2019-ncov/about/symptoms.html)

### A. Every Smithfield facility will:
- Designate a room that can be used to isolate an individual with COVID-19 symptoms.
- Designate a trained individual (the "Designated Individual") for each shift.
    - If the location has a nurse onsite or in the area, the nurse will be the Designated Individual. If there is no nurse, the HR leader or that person's designee will be the Designated Individual.
    - A Designated Individual must be present at all times when the facility is occupied.

### B. If an Employee shows symptoms of COVID-19:
- The Designated Individual will:
    1. Supply the Employee with a mask to cover their nose or mouth (if no mask is available, provide tissues or cloth) and place the Employee in the designated isolation room alone. (Note: corporate and sales locations will send the Employee home instead of to the isolation room.)
    2. Provide the Employee with the COVID-19 Questionnaire to complete.
    3. Call with Employee from outside the isolation room to perform the Questionnaire Assessment.
    4. After the Employee has left the isolation room, ensure that the room is cleaned and disinfected.

- Questionnaire Assessment:
    1. Review the Employee Questionnaire with the Employee.
    2. "Close Contact" is defined by the CDC as:
        a. Being within approximately 6 feet (2 meters) of a person with COVID-19 for 10 minutes or more. Close contact can occur while caring for, living with, visiting, or sharing a healthcare waiting area with a person with COVID-19; or
        b. Direct contact with infectious secretions of a person with COVID-19 (for example, being coughed on).
    3. When asking about travel in the last 14 days, refer to the most up to date travel restrictions from the CDC website: https://www.cdc.gov/coronavirus/2019-ncov/travelers/index.html
    4. If ANY answer to a question on the Employee Questionnaire is YES, immediately: *note: to be sent out for symptoms, an employee only needs to display one (1) of the core symptoms, (fever, cough, shortness of breath), but would need to display two (2) or more of the expanded symptoms to be placed on quarantine.
        a. Send the Employee home with instructions to quarantine for 14 days and not to return to the facility for any reason during quarantine (ask the Employee if he or she is well enough to drive home or if we can help arrange for assistance or transportation).
        b. Ask the Employee to identify any other employee with whom they may have had "close contact" in the 2 days prior to the start of symptoms. Identify the Employee's department/area/line and include anyone within 6 feet.
        c. Encourage the Employee to seek a medical evaluation and to immediately contact us if they test positive for COVID-19. Tell them the CDC recommends they call their physician and let them guide them to the appropriate place for testing and procedure. They should not go to an Urgent Care/Walk-in facility or Emergency Room.

**C. If an Employee has been exposed to a person being tested for COVID-19 due to exposure or symptoms:**
- The Designated Individual will ask the Employee if he or she is experiencing any COVID-19 symptoms:
    1. If yes: follow the steps in **Section B** of this protocol.
    2. If no, but the person being tested lives in the Employee's household, is an intimate partner of Employee, or is a person to whom Employee has provided care in the last 14 days: send the Employee home until the tests results are back.

**\*\* NOTE:** If the person being tested is asymptomatic and is not being tested due to close contact exposure, but rather is being tested as part of widespread community testing (such as an open drive thru testing site that is open to anyone wanting to be tested), the employee can continue to work as long as they remain asymptomatic.

- If the test results are:
    1. Negative: the Employee may return to work.
    2. Positive: refer to **Section D**.

Note that a diagnosis of a coronavirus strain OTHER than COVID-19 is not a positive COVID-19 test and does not require quarantine. Any other strain is considered the common flu.
https://www.cdc.gov/coronavirus/general-information.html

### D. If an Employee had close contact with a person who tested positive for COVID-19:
- The Designated Individual will ask the Employee if he or she is experiencing any COVID-19 symptoms:
    1. If yes: follow the steps in **Section B** of this protocol.
    2. If no, but the person being tested lives in the Employee's household, is an intimate partner of Employee, or is a person to whom Employee has provided care in the last 14 days:
        a. send the Employee home with instructions to quarantine for 14 days and not to return to the facility for any reason during quarantine.
        b. <u>If the employee remains asymptomatic</u>, no further action is required, and the Employee can return to work at the end of the 14-day period. If the Employee develops symptoms, refer to **Section B**.

### E. If an Employee tests positive for COVID-19:
- If the Employee is at home: Place the Employee on 14-day quarantine and tell the Employee not to return to the facility for any reason during quarantine. Gather the information for the Employee Questionnaire via phone.

- If the Employee is at work: Isolate the Employee and immediately arrange for him or her to go home. Provide the Employee with the Employee Questionnaire and gather the information needed via phone after the Employee has left the facility. Ensure that the isolation room is cleaned and disinfected.

- In both instances: Ask the Employee to identify any other employee with whom they may have had "close contact" in the 2 days prior to the start of symptoms. Identify the Employee's department/area/line and include anyone within 6 feet.

- If the Employee has been out of the facility for more than 7 days:
    1. Speak to each person on the "close contact" list and go through the Employee Questionnaire.
    2. If any person on the "close contact" list is experiencing any COVID-19 symptoms, follow the steps in **Section B** of this protocol.
    3. Persons on the "close contact" who are not experiencing symptoms can continue to work but must self-monitor for COVID-19 symptoms. If they experience symptoms they should not report to work and must contact HR immediately.

- If the Employee has been in the facility in the last 7 days:
    1. All employees on the "close contact" list should be sent home with instructions to quarantine for 14 days and not to return to the facility for any reason during the quarantine.
    2. <u>If the employee on the "close contact" list remains asymptomatic</u>, no further action is required and he or she can return to work at the end of the 14-day period.
    3. <u>If the employee on the "close contact" list develops symptoms</u>, refer to **Section B** and stay quarantined until all requirements for returning after quarantine are satisfied.

**F. Returning to work after quarantine:**
- If the Employee has symptoms of COVID-19, the Employee can return to work if ALL of the following are satisfied:
    1. 14-day quarantine is over;
    2. No continuing symptoms of COVID-19;
    3. No fever for at least 72 hours from the last use of fever-reducing medication; *AND*
    4. At least 7 days have passed since symptoms first appeared.
- If the Employee was quarantined for symptoms of COVID-19, but was diagnosed with another condition and has a release to return to work OR they were tested for COVID-19 and the results were negative, the Employee can return to work in FEWER than 14 days if all of the following are satisfied:

    1. No continuing symptoms of COVID-19;
    2. No fever for at least 72 hours from the last use of fever-reducing medication; *AND*
    3. At least 7 days have passed since symptoms first appeared.

- If the Employee is diagnosed with COVID-19, the Employee can return to work if ALL of the following are satisfied:
    1. No continuing symptoms of COVID-19;
    2. No fever for at least 72 hours from the last use of fever-reducing medication;
    3. At least 7 days have passed since symptoms first appeared; *AND*
    4. A medical professional has provided a return to work note.

**<u>Definitions Used in this Guidance</u>**

**Self-monitoring** means people should monitor themselves for fever by taking their temperatures twice a day and remain alert for dry cough or difficulty breathing. If they feel feverish or develop measured fever, dry cough or difficulty breathing during the self-monitoring period, they should self-isolate, limit contact with others, and seek advice by telephone from a healthcare provider or their local health department to determine whether medical evaluation is needed.

**Isolation** means the separation of a person or group of people known or reasonably believed to be *infected with a communicable disease and potentially infectious* from those who are not infected to prevent spread of the communicable disease. Isolation for public health purposes may be voluntary or compelled by federal, state or local public health order.

**Close contact** is defined as:

a) being within approximately 6 feet (2 meters) of a COVID-19 case for a prolonged period of time; close contact can occur while caring for, living with, visiting or sharing a healthcare waiting area or room with a COVID-19 case
*– or –*
b) having direct contact with infectious secretions of a COVID-19 case (e.g., being coughed on)

**Prolonged Period** in general means a lengthy or extended period of time. In a work situation is means that you may have worked next to them, took your breaks with them, ate lunch with them, shared a ride to work or home with them, had a face-to-face conversation with them for 10 minutes or more, or have had physical contact with them.

**Quarantine** in general means the separation of a person or group of people reasonably believed to have been *exposed to a communicable disease*, from others who have not been so exposed, to prevent the possible spread of the communicable disease.



**COVID-19 Employee Questionnaire**
Updated: April 28, 2020

In response to government precautions concerning COVID-19, we have instituted additional screening to assess the risk of potential COVID-19 spread in our workplace. Please take a moment to complete the following questionnaire.

- Have you or someone living in your household recently returned from international travel within the past 14 days?     **Yes \_\_\_\_  No \_\_\_\_**

    If yes, which region(s)? _____

    When did you return to the United States? _____

Note: Reference the [CDC website](#) for an up to date list of these regions.

- Are you currently experiencing any of the following symptoms? **Yes \_\_\_\_ No \_\_\_\_**
  **\*Check all that apply**

  **Primary symptoms:**

  ○ Persistent dry cough?

  ○ Fever over 100.4 degrees Fahrenheit or higher?

  ○ Difficulty breathing or shortness of breath?

  **Expanded Symptoms:**

  ○ Chills?

  ○ Repeated shaking with chills?

  ○ Muscle Pain / Extreme Fatigue?

  ○  Headache?

  ○ Sore Throat?

  ○ Loss of Taste or Smell?

- Do you live with someone in the same household, have a spouse/intimate partner or have you been providing care to someone currently being tested for COVID-19 or that has been diagnosed with COVID-19?                                                          **Yes \_\_\_\_  No \_\_\_\_**

- Have you been in "close contact", within 6 feet for a prolonged period\* of time, of a person who has been formally diagnosed with COVID-19 in the last 14 days?  **Yes \_\_\_  No \_\_\_**

If you answered "Yes" to any of the above questions, please provide a list of all employees with whom you have been in **close contact** for a **prolonged period** in the 2 days prior to the start of symptoms. **Close contact** means being within approximately six feet of a coworker for a prolonged period of time. **Prolonged period** means greater than 10 minutes of face-to-face contact.

_____

_____

_____

_____

_____

_____

_____

By signing below, you acknowledge that you have answered all questions completely and honestly to the best of your knowledge.

_____   _____
Employee ID#                              Employee Phone Number

_____   _____
Emergency Contact                         Emergency Contact Phone Number

_____   _____
Employee Name Printed                     Employee Signature

_____
Date