**IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| RURAL COMMUNITY WORKERS ALLIANCE and JANE DOE; <br><br> *Plaintiffs*, <br> v. <br><br> SMITHFIELD FOODS, INC. AND SMITHFIELD FRESH MEATS CORP., <br><br> *Defendants*. | Case No. 5:20-cv-06063-DGK |

## **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO RECONSIDER**

Contrary to Smithfield's insistence, nothing about the relief requested by Plaintiffs is "extraordinary." Dkt. No. 54, at 2. All Plaintiffs request is that this Court stay this case for 90 days as opposed to dismissing it. That modest stay will allow Plaintiffs to promptly return to court to pursue their state law claims if OSHA continues to fail to address dangerous risks posed by Defendants' forcing their employees to work under conditions likely to contribute to the spread of COVID-19 among the workers and the general public. Especially as re-openings around the country cause an increase in cases—including an approximate 10% increase in Missouri this week as compared to the prior week[1]—it is essential that judicial forums remain available for holding accountable the minority of businesses that flout public health guidance to the detriment of their workers and the communities in which those businesses operate.[2]

---

[1] *See* Missouri COVID-19 Dashboard, http://mophep.maps.arcgis.com/apps/MapSeries/index.html?appid=8e01a5d8d8bd4b4f85add006f9e14a9d.

[2] Notably, in recent weeks at least two courts have ordered injunctive relief in cases alleging similar public nuisance claims to those alleged here based on employers' failures to follow

Plaintiffs' motion points to ample "newly discovered evidence" that supports reconsideration. *Weitz Co., LLC v. MH Washington, LLC*, No. 06-0559-CV-W-DGK, 2009 WL 10672551, at *1 (W.D. Mo. Aug. 12, 2009) (Kays, J.). As explained below, abundant new evidence, including Smithfield's own pleadings, demonstrates that Smithfield will not voluntarily take the steps Plaintiffs and the CDC have identified are necessary to safely operate the Milan, Missouri plant, including allowing for social distancing and proper hygiene in the workplace. Therefore, it should be no surprise that testing has confirmed the spread of the disease at the Milan Plant. Smithfield is violating its common law responsibilities to its workers and the public, and those violations are causing an ongoing harm.

Furthermore, each day that passes without OSHA acting to address the workplace dangers at issue reinforces the conclusion that requiring Plaintiffs to engage in the OSHA process may have been unwarranted. At any moment, the record may become sufficient for Plaintiffs to convince the Court that further delay is improper and dangerous. Dismissal and the concomitant delays associated with re-filing will "unfairly disadvantage[]" Plaintiffs. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). Under these conditions, the Supreme Court has held that a stay, rather than dismissal, is the appropriate course of action when a court defers to the primary jurisdiction of an administrative agency. *Id.*

Smithfield admits its objections to Plaintiffs' motion do not truly derive from law or equity, but rather its fear that if this case remains active, it will continue to be "in the news"—

---

public health guidance in the operation of their businesses. *See Hernandez v. VES McDonald's,* No. RG20064825 (Cal. Sup. Ct., June 22, 2020) (Application Re: Temporary Restraining Order Granted in Part), Ex. A ("*Hernandez*"); *Massey vs. McDonald's Corporation*, Case 2020CH04247 (Ill. Cir. Ct., June 24, 2020) (Order Granting in Part Plaintiffs' Emergency Motion for Preliminary Injunction), Ex. B ("*Massey*").

and Smithfield hopes to avoid that bad press. Dkt. No. 54, at 2. But a multinational company's fear of exposure for its misconduct is no reason to delay its workers' ability to protect themselves and their families.

### A. Smithfield Continues to Flout Public Health Guidance, Contributing to the Spread of COVID-19.

Newly discovered evidence demonstrates that Smithfield is continuing to flout public health guidance. Plaintiffs previously documented for this Court that Smithfield has ignored the uniform recommendation among public health officials to space workers six feet apart and provide them additional breaks so they can care for their personal hygiene. *See*, *e.g.*, Dkt. No. 48, at 4-5. And Smithfield has previously acknowledged it was making no such efforts. *Id.*

Smithfield's latest filing doubles down on these admissions, insisting it should be allowed to address COVID-19 with "testing" after the fact, rather than implementing measures to stop workers from contracting the disease in the first place. Dkt. No. 54, at 7-8; *see also* Dkt. No. 54-1 (Smithfield's latest declaration failing to identify any steps taken to space workers on the production line, or provide breaks). Newly discovered documents confirm Smithfield's statements are not posturing, but company policy. Specifically, recently revealed emails show that Smithfield's Chief Executive Officer complained to the Nebraska Governor that "Social distancing is a nicety that makes sense only for people with laptops."[3]

At the same time, evidence continues to demonstrate the spread of the virus at the Plant. Dr. Melissa Perry, who submitted an expert declaration in support of Plaintiffs' motion for a

---

[3] Michael Grabell, Claire Perlman & Bernice Yeung, *Emails Reveal Chaos as Meatpacking Companies Fought Health Agencies Over COVID-19 Outbreaks in Their Plants*, ProPublica (June 12, 2020), https://www.propublica.org/article/emails-reveal-chaos-as-meatpacking-companies-fought-health-agencies-over-covid-19-outbreaks-in-their-plants.

preliminary injunction, explained to the Court that spread of COVID-19 in the Milan Plant was "inevitable" unless Smithfield ensured six feet of space between its workers. Dkt. No. 35-2 ¶ 10. The Court concluded that this testimony was grounded in "good-faith speculation," not "evidence-based conclusion." Dkt. No. 51, at 10. But we now know that holding was premature. Plaintiffs documented in their Motion to Reconsider that less than two weeks after this Court dismissed Plaintiffs' request for spacing and breaks, COVID-19 was raging in Smithfield's Milan Plant. Dkt. No. 53, at 2-3. As of June 18, 2020, Sullivan County, where many of the Milan Plant workers live, continued to report among the highest rates of COVID-19 cases in Missouri.[4] Another recent article highlighted that Adair and Sullivan Counties—the two counties where Smithfield workers live and work—"each have more than 100 cases, while their neighboring counties are in the single digits."[5]

One of this Court's reasons for concluding that Plaintiffs had not established an immediate risk of irreparable harm in their preliminary injunction motion was its observation that, at that point, there were "no confirmed cases of COVID-19" at the Plant. Dkt 51 at 20. Other courts around the country have rejected this Court's analysis and concluded that the risk of future infection with COVID-19 based on an employer's failure to follow public health guidance presents an immediate risk of irreparable harm. *See* Ex. B, *Massey*, at 32-33. But the Court need not revisit its prior determination. Based on the high number of infections currently at the Plant,

---

[4] Samuel Stebbins, *Counties in Every State With the Highest Number of COVID-19 Cases*, (June 18, 2020), https://247wallst.com/special-report/2020/06/18/counties-in-every-state-with-the-highest-number-of-covid-19-cases-5/6/.

[5] Jonathan Ahl, *Concentrated Outbreaks In Rural Areas Are Fueling Missouri's Coronavirus Increases*, St. Louis Public Radio (June 23, 2020), https://news.stlpublicradio.org/post/concentrated-outbreaks-rural-areas-are-fueling-missouri-s-coronavirus-increases.

4

there should be no question *now* that Plaintiffs, their families, and their community face an immediate risk of harm. Staying this case as opposed to dismissing it will allow Plaintiffs to return to court promptly to vindicate their rights under Missouri law if OSHA fails to act promptly.

### B. OSHA's Delay Reinforces that Its Purported Expertise Is No Basis for Declining to Adjudicate Plaintiffs' State Law Claims

As Smithfield concedes, following this Court's Order dismissing their case, Plaintiffs quickly filed an "imminent danger complaint" with OSHA, as this Court recommended. Dkt. No. 54, at 1. But over a month later, with infections continuing to spread throughout the Milan area, OSHA has issued no citation in response to the complaint and has not yet interviewed workers as part of its investigation. Indeed, in response to thousands of complaints it has received regarding insufficient COVID-19 safety measures across the nation, OSHA has issued only a single citation, against a Georgia nursing home.[6] This slow response suggests that this Court's reasons for deferring to the agency should be reconsidered. At the very least, it further counsels in favor of the Court retaining jurisdiction over the case to allow for prompt adjudication of Plaintiffs' state law rights.

The Court suggested that OSHA could be sued for acting "arbitrarily or capriciously" if it does not mandate safety improvements promptly under a provision about which there are no reported cases. *Id.* at 17. But in this case, the agency has delayed in even creating an administrative record that would support an "arbitrary and capricious" challenge. OSHA has not yet interviewed workers for the Milan Plant to understand their working conditions despite

---

[6] Bruce Rolfsen, *First Virus-Related OSHA Citation Goes to Georgia Nursing Home*, https://news.bloomberglaw.com/safety/first-virus-related-osha-citation-goes-to-georgia-nursing-home (last visited June 27, 2020).

5

indicating an intention to do so shortly after the complaint was filed on May 18. There are no reported cases involving workers challenging OSHA for failing to address imminent dangers under 29 U.S.C. § 662(d), but even an "arbitrary and capricious" challenge were available to Plaintiffs, its potential availability provides no reason for the Court to dismiss the case as opposed to staying it, particularly in light of all of the other factors supporting stay as opposed to dismissal.

To support its deference to OSHA, the Court also emphasized the need for national "uniform[ity]" in regulating meat packing plants. Dkt. No. 51, at 16. But OSHA now has stated that uniformity is *not* its goal. As Smithfield explains, OSHA recently successfully defended its right to regulate slaughterhouses under its "general duty" clause. Dkt. No. 54, at 6 n.3. In those filings, OSHA suggested it needed to operate in a piecemeal manner—rather than create a uniform national standard—to preserve its "flexibility to adapt its advice" to each individual circumstance. Gov. Resp. Br. *In re AFL-CIO*, No. 20-1158, at 32-33 (D.C. Cir.). While the Court feared that if it "ruled on whether the Plant is complying with the Joint Guidance, this ruling would be binding on Smithfield but no other meat-processing facilities," Dkt. No. 51, at 16, that is precisely the type of relief OSHA has now declared is desirable.

Moreover, OSHA's capacity to respond to hazards posed to meatpacking workers by COVID-19 remains unclear, while the scope of its authority to protect the broader community is limited. Smithfield is unable to point to a single instance in which OSHA has acted to protect slaughterhouse workers against COVID-19, and can offer nothing more than its *ipse dixit* that OSHA has the authority to protect the broader community from the spread of virus at a slaughterhouse. In fact, OSHA has no such authority. *Steel Inst. of New York v. City of New York*, 716 F.3d 31, 33 (2d Cir. 2013). And while Plaintiffs wait for OSHA to act, this Court's

6

order prevents them from having their state law public nuisance claims heard—claims that do seek to protect the broader community from Defendants' conduct at the Plant. For these reasons, another court has already refused to follow this Court's decision to invoke "primary jurisdiction" and defer to OSHA where worker and community health are at stake. *Massey v. McDonalds Corp.*, No. 2020CH04247 (Ill. Cir. Ct.) (decision from the bench). That court went on to order a preliminary injunction in favor of Plaintiffs. *See* Ex. B., *Massey*.

Finally, Smithfield's claim that the Executive Order on meatpacking increases the need for deference, Dkt. No. 54 at 5, is absurd. USDA now includes the following exchange in its frequently asked questions guide on COVID-19: "Q: Can a county health department or state government shut down an . . . establishment [regulated under the executive order]? A: Yes, and FSIS will follow state and local health department decisions."[7] If slaughterhouses can be shut down by state or county ordinance, they can also be subject to the established common law rules under which we all operate.

\* \* \*

Plaintiffs have attempted to abide by this Court's decision to defer to OSHA. However, the basis for that decision, as well as the Court's suggestion that Smithfield's failure to space its workers and provide them breaks does not necessitate injunctive relief, now rest on the shakiest of foundations. This Court should stay this action for 90 days, during which time Plaintiffs can present additional evidence regarding the ongoing threat of harm and the violation of Plaintiffs rights under state law. If at the end of that period, deference to OSHA's purported "primary jurisdiction" remains appropriate, the Court can dismiss the action. But dismissal now will only

---

[7] USDA, *Food Supply Chain*, https://www.usda.gov/coronavirus/food-supply-chain (last visited June 30, 2020).

7

delay Plaintiffs from bringing important information to the Court's attention. As the virus that causes COVID-19 continues to spread throughout Sullivan County and the rest of Missouri, Plaintiffs cannot afford further delay.

June 30, 2020  Respectfully Submitted,

By: /s/ David S. Muraskin
David S. Muraskin (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
Stephanie K. Glaberson (*pro hac vice*)
Public Justice
1620 L. St, NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net
Email: kgilbride@publicjustice.net
Email: sglaberson@publijustice.net

Gina Chiala         #59112
Heartland Center
for Jobs and Freedom, Inc.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email: ginachiala@jobsandfreedom.org

David Seligman (*pro hac vice*)
Juno Turner (*pro hac vice*)
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Telephone: (720) 441-2236
Facsimile: (303) 957-2289
Email: david@towardsjustice.org
Email: juno@towardsjustice.org
***Attorneys for Plaintiffs***